John L. Runft, Esq. (ISB No. 1059)
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

James M. Manley, Esq. (CO No. 40327)
(*pro hac vice application filed concurrently*)
Steven J. Lechner, Esq. (CO No. 19853)
(*pro hac vice application filed concurrently*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and ALAN C. BAKER, | Case No. |
| Plaintiffs, | |
| v. | **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| U.S. ARMY CORPS OF ENGINEERS, *et al.*, | |
| Defendants. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

SUMMARY OF ARGUMENT ............................................................. 1

FACTUAL BACKGROUND ................................................................ 3

ARGUMENT ....................................................................................... 5

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ............... 6

      A.     Defendants' Ban On Possession Of Firearms In A Tent Is
           Unconstitutional ............................................................... 6

      B.     Defendants' Ban On Carrying Firearms Is Unconstitutional ............. 10

           1.     The text of the Second Amendment protects the right to
                   carry ................................................................... 10

           2.     State courts have long rejected total bans on carrying
                   firearms ............................................................... 11

           3.     Founding era English law rejected total bans on
                   carrying firearms ................................................ 12

           4.     Numerous Federal courts have recognized the right to
                   carry ................................................................... 14

      C.     Defendants' Ban Is Unconstitutional Because It Is Not
           Narrowly Tailored ........................................................... 15

II.     PLAINTIFFS ARE SUFFERING IRREPARABLE HARM ....................... 18

III.    THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR
       BECAUSE DEFENDANTS COULD SUFFER ONLY ILLUSORY
       HARM .................................................................................. 19

IV.    GRANTING AN INJUNCTION IS IN THE PUBLIC INTEREST,
       GIVEN THE IMPORTANT CONSTITUTIONAL RIGHTS AT
       STAKE .................................................................................. 19

V.      THE WAIVER OF BOND IS APPROPRIATE .................................... 20

CONCLUSION .................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ............................................................... 1, 5

*Alward v. State,*
    912 P.2d 243 (Nev. 1996) ..................................................................... 9

*Andrews v. State,*
    50 Tenn. 165 (1871).............................................................................. 11

*Baca v. Moreno,*
    936 F. Supp. 719 (C.D. Cal. 1996) ...................................................... 20

*Barahona-Gomez v. Reno,*
    167 F.3d 1228 (9th Cir. 1999) .............................................................. 20

*Bateman v. Perdue,*
    881 F. Supp. 2d 709 (E.D.N.C. 2012) ................................................. 14, 16

*Bonidy v. U.S. Postal Service,*
    2013 WL 3448130 (D. Colo. 2013) ...................................................... 14, 16

*City of Las Vegas v. Moberg,*
    485 P.2d 737 (N.M. Ct. App. 1971) ..................................................... 11

*Conservation Congress v. U.S. Forest Service,*
    ___ F.3d ___, 2013 WL 2631449 (9th Cir. 2013) ............................... 6

*DiGiacinto v. Rector & Visitors of George Mason Univ.,*
    704 S.E.2d 365 (Va. 2011).................................................................... 17

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) .............................................................................. *passim*

*Doe v. Pittsylvania County, Va.,*
    842 F. Supp. 2d 927 (W.D. Va. 2012) ................................................. 20

*Eng Fung Jem v. United States,*
    281 F.2d 803 (9th Cir. 1960) ................................................................ 8

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ................................................................ *passim*

*Float-Rite Park v. Village of Somerset,*
    629 N.W.2d 818 (Wis. Ct. App. 2001) ............................................................ 9

*GeorgiaCarry.Org, Inc. v. Georgia,*
    764 F. Supp. 2d 1306 (M.D. Ga. 2011) ........................................................ 15, 17

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) .................................................................................... 16

*Goodman v. City of Kansas City,*
    906 F. Supp. 537 (W.D. Mo. 1995) ............................................................. 16

*Haley v. State,*
    696 N.E.2d 98 (Ind. Ct. App. 1998) ............................................................ 9

*In re Brickey,*
    70 P. 609 (Idaho 1902) ............................................................................ 11, 12

*Initiative and Referendum Institute v. U.S. Postal Service,*
    417 F.3d 1299 (D.C. Cir. 2005) .................................................................. 16, 18

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012) ......................................................................... 15

*Kellogg v. City of Gary,*
    562 N.E.2d 685 (Ind. 1990) ........................................................................ 11

*Kyllo v. United States,*
    533 U.S. 27 (2001) ..................................................................................... 8

*Lakewood v. Pillow,*
    501 P.2d 744 (Colo. 1972) .......................................................................... 11

*Martin v. Struthers,*
    319 U.S. 141 (1943) ................................................................................... 16

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010) ....................................................................... 10, 15, 18

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) .................................................................. 14, 16

*Miller v. United States,*
    357 U.S. 301 (1958) ................................................................................... 9

iii

*Muscarello v. United States,*
    524 U.S. 125 (1998)............................................................................. 10

*National Wildlife Federation v. National Marine Fisheries Service,*
    422 F.3d 782 (9th Cir. 2005) ........................................................... 6

*Nunn v. State,*
    1 Ga. 243 (1846) ............................................................................. 11, 12

*People v. Nakamura,*
    62 P.2d 246 (Colo. 1936) ................................................................ 11

*People v. Zerillo,*
    189 N.W. 927 (Mich. 1922) ........................................................... 11

*Peruta v. San Diego,*
    758 F. Supp. 2d 1106 (S.D. Cal. 2010) ......................................... 15

*People of State of Cal ex rel. Van de Kamp v. Tahoe Regional Planning Agency,*
    766 F.2d 1319 (9th Cir. 1985) ....................................................... 20

*Preminger v. Principi,*
    422 F.3d 815 (9th Cir. 2005) ......................................................... 19

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992)......................................................................... 16

*Republic of the Philippines v. Marcos,*
    862 F.2d 1355 (9th Cir. 1988) ....................................................... 6

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ....................................................... 3, 19

*Sammartano v. First Judicial District Court,*
    303 F.3d 959 (9th Cir. 2002) ......................................................... 3, 18

*Simpson v. State,*
    13 Tenn. 356 (1833).......................................................................... 13, 14

*State v. Christian,*
    274 P.3d 262 (Or. Ct. App. 2012) ................................................. 13

*State ex rel. City of Princeton v. Buckner,*
    377 S.E.2d 139 (W.Va. 1988).......................................................... 11

*State v. Huntly,*
     25 N.C. 418 (N.C. 1843)............................................................    13, 14

*State v. Pruss,*
     181 P.3d 1231 (Idaho 2008)......................................................    1, 9

*State v. Reid,*
     1 Ala. 612 (1840) ...................................................................    11, 12

*United States v. Basher,*
     629 F.3d 1161 (9th Cir. 2011) ................................................    7

*United States v. Chester,*
     628 F.3d 673 (4th Cir. 2010) ..................................................    8

*United States v. Engstrum,*
     609 F. Supp. 2d 1227 (D. Utah 2009)......................................    16

*United States v. Gooch,*
     6 F.3d 673 (9th Cir. 1993) ......................................................    7, 8

*United States v. Masciandaro,*
     638 F.3d 458 (4th Cir. 2011) ..................................................    15, 17

*United States v. Sandoval,*
     200 F.3d 659 (9th Cir. 2000) ..................................................    7, 8, 9

*Ward v. Rock Against Racism,*
     491 U.S. 781 (1989)................................................................    16

*Warsoldier v. Woodford,*
     418 F.3d 989 (9th Cir. 2005) ..................................................    18

*Western Watersheds Project v. U.S. Fish and Wildlife Service,*
     2013 WL 3270363 (D. Idaho 2013)..........................................    6

*Winter v. National Resources Defense Council,*
     555 U.S. 7 (2009)...................................................................    1, 5, 6

**Constitutional Provisions**

U.S. Const. amend. I .......................................................................    8, 11, 15, 18

U.S. Const. amend. II .......................................................................    *passim*

U.S. Const. amend. IV .....................................................................    7–9, 11, 15

v

**Statutes**

I.C. § 18-3301 ................................................................................................ 19

18 U.S.C. § 930 ............................................................................................... 17

**Rules**

Fed. R. Civ. P. 65 ........................................................................................... 20

**Regulations**

36 C.F.R. § 2.4 ............................................................................................... 17

36 C.F.R. § 327.13 ......................................................................................... 1–5, 7

36 C.F.R. § 327.26 ......................................................................................... 19

**Other Authorities**

Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure (2013) ............................................................................................................. 6, 18

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. REV. 1443 (2009) .............................................................................................. 12

James Bishop, Note, *Hidden or on the Hip: The Right(s) to Carry After* Heller, 97 CORNELL L. REV. 907 (2012) ..................................................................... 12

Janet Knopp, *State Constitutions and the Right to Bear Arms*, 7 OKLA. CITY U. L. REV. 177 (1982) ....................................................................................... 13

William Blackstone, *Commentaries on the Laws of England* (1753) ...................... 13

## SUMMARY OF ARGUMENT

"Many people utilizing public lands in Idaho carry firearms for hunting, protection, or simply recreational shooting." *State v. Pruss*, 181 P.3d 1231, 1236 (Idaho 2008). Plaintiffs are among those who ordinarily carry firearms for personal protection while utilizing Idaho's public lands, consistent with their Second Amendment rights. However, Defendants' ban on functional firearms on any water resources development project administered by the Chief of Engineers ("Corps-administered public lands") makes this exercise of constitutional rights unlawful.

Issuance of a preliminary injunction to abate Defendants' functional firearms ban is appropriate here because: (1) Plaintiffs are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. National Resources Defense Council*, 555 U.S. 7, 20 (2009). The Ninth Circuit has articulated an alternate formulation of the *Winter* test, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either test, Plaintiffs are entitled to a preliminary injunction.

Plaintiffs are likely to succeed on the merits of their two claims because: (1) The Second Amendment protects Plaintiffs' right to possess a functional firearm in a tent on Corps-administered public lands; and (2) the Second Amendment protects Plaintiffs' right to carry a functional firearm on Corps-administered public lands. Corps regulations unconstitutionally prohibit law-abiding individuals from possessing a functional firearm for self defense on any Corps-administered public lands. 36 C.F.R. § 327.13. The regulation provides:

(a) The possession of loaded firearms, ammunition, loaded projectile firing devices, bows and arrows, crossbows, or other weapons is prohibited unless:

> (1) In the possession of a Federal, state or local law enforcement officer;

> (2) Being used for hunting or fishing as permitted under § 327.8, with devices being unloaded when transported to, from or between hunting and fishing sites;

> (3) Being used at authorized shooting ranges; or

> (4) Written permission has been received from the District Commander.

(b) Possession of explosives or explosive devices of any kind, including fireworks or other pyrotechnics, is prohibited unless written permission has been received from the District Commander.

*Id.*

Plaintiffs are likely to succeed on the merits because Defendants' firearms ban violates both the "keep" and "bear" aspects of the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 584 (2008). Because the ban does not allow a law-abiding individual to keep a functional firearm in a tent, the ban directly conflicts with the central holding of *Heller*. 554 U.S. at 629 ("[H]andguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid."). Moreover, the Second Amendment explicitly guarantees the right to bear firearms for self-defense. *Id.* at 584 ("At the time of the founding, as now, to 'bear' meant to 'carry.'"). The Second Amendment's protection of the right to carry is consistent with the English tradition of protecting the right of law-abiding citizens to carry arms for peaceable purposes, including self-defense. *Id.* at 593–94. Moreover, the Supreme Court has indicated approval for the majority view adopted by State courts that outright bans on the carrying of firearms are unconstitutional. *Id.* at 611–14. Numerous federal courts have applied that rule post-*Heller*.

Defendants' ban effects a broad prohibition on law-abiding citizens' right to keep and bear arms for self-defense on all Corps-administered public lands, and because the ban does not even allow safe carriage in a vehicle, even driving through Corps-administered public lands with a functional firearm locked in the glove compartment would violate the ban.  The ban is thus not tailored to compelling government interests.  Accordingly, Plaintiffs are likely to succeed on the merits; at the very least, they have raised serious questions going to the merits and the constitutional dimension of their claims tips the balance of hardships sharply in their favor.

The ongoing deprivation of Plaintiffs' Second Amendment rights constitutes irreparable injury.  *See Sammartano v. First Judicial District Court, in and for County of Carson City,* 303 F.3d 959, 973–74 (9th Cir. 2002).  Because Plaintiffs raise a substantial constitutional claim, no further showing of irreparable injury is necessary.  *Id.*  The balance of equities tips in Plaintiffs' favor because Defendants' only possible injuries are "entirely speculative and in any event may be addressed by more closely tailored regulatory measures."  *Ezell v. City of Chicago,* 651 F.3d 684, 710 (7th Cir. 2011).  It is obvious that the public interest is served by requiring strict adherence to the Constitution, which is all that Plaintiffs request here.  *See Rodriguez v. Robbins,* 715 F.3d 1127, 1146 (9th Cir. 2013).  For these reasons, as further demonstrated below, Plaintiffs are entitled to a preliminary injunction.

## FACTUAL BACKGROUND

Plaintiffs live in western Idaho and recreate on Corps-administered public lands there. Both Plaintiffs are licensed to carry a firearm for personal protection and ordinarily carry a firearm for that purpose.  But for Defendants' active enforcement of 36 C.F.R. § 327.13, *see* Feb. 19, 2010, Email of Michael Ensch (Exhibit 1), Plaintiffs would possess a functional firearm on Corps-administered public lands.

Mr. Baker is a NRA-Certified Home Firearm Safety, Personal Protection In The Home, Rifle, Pistol, and Shotgun Instructor, as well as a Utah-certified Concealed Firearms Instructor. Declaration of Alan C. Baker ¶ 3 (Exhibit 2).  He has concealed handgun licenses from the States of Idaho, Utah, Oregon, and Arizona.  *Id.*  He regularly camps and hunts in Idaho and has plans to camp on Corps-administered public lands in the Walla Walla District, including the Dent Acres Campground at Dworshak Dam and Reservoir and the Macks Creek Park Campground at Lucky Peak Lake.  *Id.* ¶¶ 6, 8, 11, 12.  He regularly carries a handgun for self-defense. *Id.* ¶ 5.

On March 22, 2013, Mr. Baker secured a reservation for a campsite at Dent Acres Campground for May 31, 2013 to June 2, 2013.  *Id.* ¶ 8.  On April 22, 2013, Mr. Baker's counsel contacted District Commander Kelley to request that he recognize Mr. Baker's right to bear arms pursuant to 36 C.F.R. § 327.13(a)(4).  *Id.* ¶ 9.  Given Mr. Baker's scheduled trip to Dent Acres, he requested a response to his letter within 30 calendar days of its delivery to District Commander Kelley.  *Id.*  To date, Mr. Baker has received no response.  *Id.* ¶ 10.  On May 31, 2013, Mr. Baker camped at Dent Acres as planned, but could not exercise his right to keep and bear arms due to Defendants' active enforcement of 36 C.F.R. § 327.13.  *Id.* ¶ 11.  Mr. Baker has reservations to camp at the Corps-administered campground at Macks Creek Park from September 27, 2013, to September 29, 2013.  *Id.* ¶ 12.

Ms. Morris regularly carries a handgun for self-defense.  Declaration of Elizabeth E. Morris ¶ 5 (Exhibit 3).  Due to threats and physical attacks made against her by a former neighbor, the Nez Perce County Sheriff issued Ms. Morris an emergency license to carry a concealed handgun in 2012.  *Id.* ¶ 3.  Ms. Morris uses Corps-administered public lands near the Snake River in Lewiston, Idaho, to boat with friends, she regularly walks Corps-administered paths in the area with her dog and/or her family, and she must travel across Corps-administered

4

land to reach Hells Gate State Park. *Id.* ¶ 8. These Corps-administered public lands are in the Walla Walla District and include the Lower Granite Lake Greenbelt Trail, Swallows Park, the Lewiston Levee Parkway, and the Lewiston Levee Recreation Trail. *Id.* ¶ 9. She also frequents Dworshak Reservoir and the surrounding areas to hike. *Id.* ¶ 10. She has considered camping at Dworshak Reservoir, but has decided not to because Corps regulations make it unlawful for her to possess a functional firearm while camping. *Id.* ¶ 11. In summer 2012, she used Corps-administered public lands approximately 1–2 times a week. *Id.* ¶ 12. She has done exactly the same in summer 2013 and plans to continue to do so in the future. *Id.* ¶ 13.

On June 10, 2013, Ms. Morris's counsel contacted District Commander Kelley to request that he recognize Ms. Morris's right to bear arms pursuant to 36 C.F.R. § 327.13(a)(4). *Id.* ¶ 16. Given Ms. Morris's practice of regularly recreating on Corps-administered public lands during the summertime, she requested a response to her letter within 30 calendar days of its delivery to District Commander Kelley. *Id.* ¶ 16. To date, Ms. Morris has received no response. *Id.* ¶ 17. Having received no response from the Corps, on August 5, 2013, Plaintiffs filed the instant action seeking declaratory and injunctive relief to remedy Defendants' unconstitutional deprivation of their right to keep and bear arms.

## ARGUMENT

Issuance of a preliminary injunction is appropriate here because: (1) Plaintiffs are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also Alliance for the Wild Rockies*, 632 F.3d at 1135 ("serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction . . . .").

5

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs must "establish[] a probability of success on the merits." *Conservation Congress v. U.S. Forest Service*, ___ F.3d ___, 2013 WL 2631449, *4 (9th Cir. 2013) (citing *Winter*, 555 U.S. at 20, 22).  Although "[t]he courts use a bewildering variety of formulations of the need for showing some likelihood of success . . . [a]ll courts agree that plaintiff must present a prima facie case *but need not show that he is certain to win*."  11A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2948.3 (2013) (emphasis added).  Here, Plaintiffs are "only obligated to show 'a fair chance of success'" on the merits to meet this standard.  *National Wildlife Federation v. National Marine Fisheries Service*, 422 F.3d 782, 794 (9th Cir. 2005) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)).  This burden is met "by raising substantial questions as to whether" Defendants have violated the Constitution.[1]  *Id.*  Because Defendants' ban is contrary to the Supreme Court's landmark decision in *Heller*, 554 U.S. at 584, 628–29, this burden is met.

### A.   Defendants' Ban On Possession Of Firearms In A Tent Is Unconstitutional.

Plaintiffs' first claim seeks relief from Defendants' deprivation of the constitutional right to keep a functional firearm in a dwelling, namely a tent.  Compl. ¶¶ 46–50.  The central holding of *Heller* concerns the constitutionality of possessing functional firearms in a dwelling:  "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning [handguns] from the home . . . would fail constitutional muster."  *Heller*, 554 U.S. at 628–29 (footnote omitted).

---

[1] This formulation is from a line of cases that pre-date *Winter*; however, it remains good law. *Western Watersheds Project v. U.S. Fish and Wildlife Service*, 2013 WL 3270363, *4 (D. Idaho 2013) ("In the absence of any express overruling, . . . the Court will assume that line of cases is still good law, and will apply it here.").

Like the law struck down in *Heller*, Defendants' ban makes it unlawful for individuals to possess functional firearms for self-defense.  The narrow exceptions to the ban—allowing possession of firearms for hunting and target shooting—do nothing to address the right at the core of the Second Amendment: the right of self-defense.  *See* 36 C.F.R. § 327.13(a)(2)–(3).  As in *Heller*, no amount of interest balancing can save Defendants' ban because "no other enumerated constitutional right['s] . . . core protection has been subjected to a freestanding 'interest-balancing' approach." *Heller*, 554 U.S. at 634;  *Ezell*, 651 F.3d at 703.  Because Defendants' ban does not allow a law-abiding individual to keep a functional firearm in a dwelling, the ban directly conflicts with the central holding of *Heller*.  554 U.S. at 628–29.

A tent is a temporary dwelling to which the full protections of the Bill of Rights apply, including the Second Amendment.  "A tent is comparable to a house, apartment, or hotel room because it is a private area where people sleep and change clothing." *United States v. Basher*, 629 F.3d 1161, 1169 (9th Cir. 2011).  Even though a tent is not typically a permanent residence, it is well established that a tent's impermanence makes it no less a dwelling for constitutional purposes.  The Ninth Circuit has repeatedly held that a tent is a place, like a permanent home, where Fourth Amendment rights are at their zenith. *United States v. Gooch*, 6 F.3d 673 (9th Cir. 1993); *United States v. Sandoval*, 200 F.3d 659 (9th Cir. 2000).  Likewise, the Second Amendment is at its zenith in the home. *Heller*, 554 U.S. at 635 ("[W]hatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). *Heller* makes clear that the Second Amendment protects an expectation of security in a home, *Heller*, 554 U.S. at 629–30, the same way the Fourth Amendment protects an expectation of privacy.  Also like the Second Amendment, "at the very core of the Fourth Amendment stands the right of a man to

retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quotation omitted); *Heller*, 554 U.S. at 635. Therefore, these Fourth Amendment cases reinforce the conclusion that Defendants' ban violates the central holding of *Heller* regarding keeping firearms in a home for self-defense. *Cf. United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) ("[W]e agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment.").

In *Gooch*, the Ninth Circuit held that the Fourth Amendment's prohibition on unreasonable searches and seizures applied to a person who was legally camping in a tent at a public campground. 6 F.3d at 677. The district court had suppressed a firearm discovered after a warrantless search of a tent and held that the tent was a non-public place, requiring the government to obtain a warrant in order to effectuate a lawful arrest or search. *Id.* at 676. The Ninth Circuit affirmed, based on the legitimate expectation of privacy common to tents and permanent homes. *Id.* at 676–78. The Ninth Circuit explained, "[t]he fact that a tent may be moved, alone, is not enough to remove the Fourth Amendment protections. . . . [T]ents are protected under the Fourth Amendment like a more permanent structure." *Id.* at 677. Indeed, "campers could reasonably assert a legitimate, though temporary, interest in their privacy even in this short-term 'dwelling.'" *Id.* at 678 (citing *Eng Fung Jem v. United States*, 281 F.2d 803, 805 (9th Cir. 1960) ("The hotel room in question was appellant's dwelling. That he lived there for but several days is of no consequence . . . . The right to privacy must be accorded with equal vigor both to transient hotel guests and to occupants of private, permanent dwellings.")).

The Ninth Circuit reiterated its conclusion that the core protections of the Bill of Rights apply to tents pitched on public lands in *United States v. Sandoval*, 200 F.3d 659 (9th Cir. 2000). In that case, the court explained that a person camping without authorization on land managed by

the Bureau of Land Management did not lose his Fourth Amendment rights because the camper

nevertheless had a reasonable expectation of privacy in his tent. *Id*. at 660–661.

The Ninth Circuit is not alone in recognizing that the Bill of Rights protects a tent or

temporary dwelling. *See, e.g., State v. Pruss*, 181 P.3d 1231, 1234 (Idaho 2008); *Alward v.*

*State*, 912 P.2d 243, 249 (Nev. 1996) *overruled on other grounds by Rosky v. State*, 111 P.3d 690

(Nev. 2005); *Float-Rite Park v. Village of Somerset*, 629 N.W.2d 818, 824 (Wis. Ct. App. 2001);

*Haley v. State*, 696 N.E.2d 98, 101 (Ind. Ct. App. 1998).  In *Pruss*, the Idaho Supreme Court

analyzed the constitutionality of a warrantless search of a "hooch," a frame structure

camouflaged with tree branches enclosing an ordinary tent.  *Id*. at 1233.  The court used strong

language to describe the inviolability of the structure, affirming the suppression of a firearm

discovered in a warrantless search of the hooch.  *Id*. at 1234.  Specifically, it explained that

"[t]he respect for the sanctity of the home does not depend upon whether it is a mansion or hut,

or whether it is a permanent or temporary structure."  *Id*.  This conclusion was based on *Miller v.*

*United States*, 357 U.S. 301, 307 (1958), where the Court observed:

> The poorest man may in his cottage bid defiance to all the forces of the Crown.  It
> may be frail; its roof may shake; the wind may blow through it; the storm may
> enter; the rain may enter; but the King of England cannot enter—all his force
> dares not cross the threshold of the ruined tenement!

*Id*. (quoting *The Oxford Dictionary of Quotations* 379 (2d ed. 1953)).

Because a tent is a dwelling for constitutional purposes, Defendants' ban runs headlong

into the central holding of *Heller* when it prohibits individuals from keeping a functional firearm

in a tent.  Therefore, Plaintiffs are likely to succeed on the merits of their first claim for relief.

**B.     Defendants' Ban On Carrying Firearms Is Unconstitutional.**

**1.     The text of the Second Amendment protects the right to carry.**

Plaintiffs' second claim seeks relief from Defendants' deprivation of the constitutional right to carry a functional firearm—openly, concealed, and in a vehicle—on Corps-administered public lands.  Compl. ¶¶ 51–55.  *Heller* addressed Second Amendment rights within a dwelling, and its holding therefore does not bear directly on the question of carrying a firearm on public lands.  *See* 554 U.S. at 635 ("But since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any more than *Reynolds v. United States*, our first in-depth Free Exercise Clause case, left that area in a state of utter certainty." (citation omitted)).  Nevertheless, the Court's detailed historical analysis of the Second Amendment necessarily defined the phrase "bear arms."  *Id.* at 584–86. The Court concluded in no uncertain terms that, "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'"  *Id.* at 584.  The Court applied this common historical understanding of the term "bear" to conclude that the Second Amendment protects the "individual right to possess and carry weapons in case of confrontation."  *Id.* at 592.  The Court adopted Justice Ginsburg's definition of the phrase "to bear arms," offered in *Muscarello v. United States*, 524 U.S. 125, 143 (1998):

> Surely a most familiar meaning is, as the Constitution's Second Amendment . . . indicate[s]: "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person."

*Heller*, 554 U.S. at 584 (internal citations omitted) (omissions in original).  The Court made clear that the right to "possess and carry weapons in case of confrontation" is at the core of the Second Amendment.  *Id.* at 592.  In *McDonald v. City of Chicago*, the Court confirmed that the right protected is "fundamental to *our* scheme of ordered liberty."  130 S. Ct. 3020, 3050 (2010)

(emphasis in original).  Therefore, the Second Amendment is not "a second-class right, subject to

an entirely different body of rules than the other Bill of Rights guarantees." *Id.* at 3045.

**2.      State courts have long rejected total bans on carrying firearms.**

*Heller*'s reliance on a number of 19th century state court decisions offers further

guidance about the right to carry.  These cases stand for the proposition that if one manner of

carrying a firearm is restricted, some other means of carrying must be preserved.  These cases are

of particular importance because "the Second Amendment, like the First and Fourth

Amendments, codified a pre-existing right" that can only be understood in light of the "historical

background." *Heller*, 554 U.S. at 592.  The Court explored some of these cases in *Heller*:

> In *Nunn v. State*, [1 Ga. 243, 251 (1846)] the Georgia Supreme Court struck down
> a prohibition on carrying pistols openly (even though it upheld a prohibition on
> carrying concealed weapons).  In *Andrews v. State*, [50 Tenn. 165, 187 (1871)]
> the Tennessee Supreme Court likewise held that a statute that forbade openly
> carrying a pistol "publicly or privately, without regard to time or place, or
> circumstances," violated the state constitutional provision (which the court
> equated with the Second Amendment).  That was so even though the statute did
> not restrict the carrying of long guns.  *See also State v. Reid*, 1 Ala. 612, 616–617
> (1840) ("A statute which, under the pretence of regulating, amounts to a
> destruction of the right, or which requires arms to be so borne as to render them
> wholly useless for the purpose of defence, [sic] would be clearly
> unconstitutional").

*Id.* at 629.  Thus, the Court indicated its approval of the longstanding principle that bans on

carrying firearms outside the home, or regulations that amount to bans, violate the right to keep

and bear arms.  As the Court's discussion above illustrates, this proposition has long been

accepted by state courts.  *See, e.g., Kellogg v. City of Gary*, 562 N.E.2d 685, 694 (Ind. 1990);

*State ex rel. City of Princeton v. Buckner*, 377 S.E.2d 139, 144 (W.Va. 1988); *Lakewood v.

Pillow*, 501 P.2d 744, 745 (Colo. 1972); *City of Las Vegas v. Moberg*, 485 P.2d 737, 738 (N.M.

Ct. App. 1971); *People v. Nakamura*, 62 P.2d 246, 247 (Colo. 1936); *People v. Zerillo*, 189

N.W. 927, 928 (Mich. 1922); *In re Brickey*, 70 P. 609, 609 (Idaho 1902).

11

Thus, the right to carry may not be rendered nugatory, as Defendants have done here by banning functional firearms; however, governments may have leeway to regulate how a person exercises the right to carry. For example, the Second Amendment might tolerate a ban on concealed carry, so long as the right to carry openly were not denied. *See In re Brickey*, 70 P. at 609 ("The legislature may, as expressly provided in our state constitution, regulate the exercise of this right [to carry], but may not prohibit it."); *Nunn*, 1 Ga. at 251 (holding concealed weapons ban valid so long as it does not impair the right to bear arms "altogether"); *Reid*, 1 Ala. at 616–17 (observing that a regulation that amounts to a total ban would be "clearly unconstitutional"). Logically, the inverse is also true; i.e., a government might ban open carry, so long as concealed carry were allowed. *See* James Bishop, Note, *Hidden or on the Hip: The Right(s) to Carry After Heller*, 97 CORNELL L. REV. 907, 920 (2012) ("If concealed carry and open carry are in fact equal alternative outlets for the same indivisible right, then a state can ban or burden one so long as it allows the other."). What government *may not do* is what Defendants have done here: imposing a clearly unconstitutional regulation that prohibits the bearing of arms altogether.[2]

### 3.       Founding era English law rejected total bans on carrying firearms.

Long recognized in State law, the right to carry arms for self-defense has even deeper roots extending as far back as 17th century England. *Heller*, 554 U.S. at 592–93 ("By the time of the founding, the right to have arms had become fundamental for English subjects.") Blackstone illustrates the sort of reasonable regulation that the Second Amendment tolerates:

---

[2] The 19th century cases approving concealed carry restrictions reflect a cultural preference for "open, manly, and chivalrous" carrying of arms. Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. REV. 1443, 1523 (2009). Those cultural mores have shifted; "[t]oday, open carrying is uncommon, and many law-abiding people naturally prefer to carry concealed (in the many states where it is legal)." *Id.* The constitutional principle remains the same: total carry bans are unconstitutional.

banning not the simple act of carrying weapons, but rather targeting mal intent.  One law

Blackstone cites is a poaching regulation prohibiting bearing arms while in disguise:

> [B]y the statute, to appear armed in any open place by day, or night, with faces
> blacked or otherwise disguised, or (being so disguised) to hunt, wound, kill, or
> steal any deer, to rob a warren, or to steal fish, is felony without benefit of clergy.
> I mention this offence in this place, not on account of the damage thereby done to
> private property, *but of the manner in which that damage is committed; namely,*
> *with the face blacked or with other disguise*, to the breach of the public peace and
> the terror of his majesty's subjects.

William Blackstone, 4 *Commentaries on the Laws of England* *143–44 (1753) (citations

omitted) (emphasis added).  Of course, this case has nothing to do with poaching or wearing a

disguise.  Nevertheless, Blackstone illustrates the sort of minimal reasonableness that regulations

of the right to bear arms must meet; by linking the benign and protected act of carrying arms

with some form of mal intent or bad action, a reasonable fit is achieved between the

governmental purpose and the regulation.  This is in contrast to Defendants' ban, which

indiscriminately sweeps both constitutionally protected and unprotected conduct into its ambit.

Blackstone also focuses on the Statute of Northampton, which prohibited "riding or going

armed with dangerous or unusual weapons."  *Id.* at *148.  Like the poaching statute discussed

above, it was targeted at "go[ing] armed 'malo animo' (with evil intent) or 'to terrify the King's

subjects.'"  Janet Knopp, *State Constitutions and the Right to Bear Arms*, 7 OKLA. CITY U. L.

REV. 177, 202 n.105 (1982) (quoting *Rex v. Knight*, 87 Eng. Rep. 75, 90 Eng. Rep. 330 (KB

1686)).  Early decisions of the State courts confirm that the Statute of Northampton was targeted

at preventing affray, i.e., engaging in armed terror.  *State v. Huntly*, 25 N.C. 418, 422–23 (N.C.

1843); *Simpson v. State*, 13 Tenn. 356, 359–60 (1833).  This is also the modern understanding.

*See, e.g., State v. Christian*, 274 P.3d 262, 286 (Or. Ct. App. 2012).  Moreover, even if the

Statute of Northampton—or any other aspect of English law—could be read as prohibiting the

peaceable carrying of firearms, constitutional protections for the right to bear arms have "completely abrogated" any such prohibitions. *Simpson*, 13 Tenn. at 359; *Huntly*, 25 N.C. at 422. Thus, English law did not protect the right to carry for evil purposes, but the earliest understanding of the right to bear arms illustrates why Defendants' policy of extinguishing the right of peaceable citizens to carry firearms for self-defense violates the Second Amendment.

### 4.    Numerous Federal courts have recognized the right to carry.

The rule that bans on the carrying of firearms by law-abiding individuals violate the right to keep and bear arms has been applied post-*Heller* by numerous federal courts. *See, e.g., Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). In *Moore*, the Seventh Circuit echoed the Supreme Court's conclusion that the Second Amendment protects the right to carry: "To speak of 'bearing' arms within one's home would at all times have been an awkward usage. A right to bear arms thus implies a right to carry a loaded gun outside the home." *Id.* at 936. Indeed, the Seventh Circuit described the right to carry as reflecting what *Heller* described as the Second Amendment's core: "To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald.*" *Id.* at 937. Foreshadowing the facts of this case, the Seventh Circuit also observed that:

> A woman who is being stalked . . . is more vulnerable to being attacked while walking to or from her home than when inside. She has a stronger self-defense claim to be allowed to carry a gun in public than the resident of a fancy apartment building . . . has a claim to sleep with a loaded gun under her mattress.

*Id*; *see also Bonidy v. U.S. Postal Service*, 2013 WL 3448130, *6 (D. Colo. 2013) ("[A]s applied to . . . the parking lot . . . the USPS [firearms ban] is not substantially related to the government's public safety interest. It is an unconstitutional burden on Mr. Bonidy's freedom under the Second Amendment."); *Bateman v. Perdue*, 881 F. Supp. 2d 709, 714 (E.D.N.C. 2012) ("[T]he Second Amendment right to keep and bear arms, 'is not strictly limited to the home environment

14

but extends in some form to wherever those activities or needs occur.'") (quoting *United States v. Masciandaro*, 638 F.3d 458, 468 (4th Cir. 2011) (Niemeyer, J., writing separately)); *GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1319 (M.D. Ga. 2011), *aff'd*, 687 F.3d 1244 (11th Cir. 2012); *Peruta v. San Diego*, 758 F. Supp. 2d 1106, 1114 (S.D. Cal. 2010), *appeal docketed*, No. 10-56971 (Dec. 14, 2010); *see also Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) ("[T]he Court's analysis suggests[ ] . . . that the Amendment must have some application in the very different context of the public possession of firearms.  Our analysis proceeds on this assumption." (footnote omitted)).

Thus, although the Supreme Court has not weighed in on the full contours of the right to carry, it is clear from *Heller* and the cases applying it that the Second Amendment explicitly guarantees the right to carry firearms for self-defense.  554 U.S. at 584.  *McDonald* teaches that this right is fundamental, like the rights protected by the First and Fourth Amendments.  130 S. Ct. at 3050.  Moreover, the Court has indicated approval for the majority view that bans on the carrying of firearms are unconstitutional, consistent with the English tradition of protecting the right of law-abiding citizens to carry arms for peaceable purposes, including self-defense. Numerous federal courts have applied that rule post-*Heller*.  Thus, core conduct protected by the Second Amendment is infringed by Defendants' firearms ban because it is a broad prohibition on the possession and carrying of firearms "in case of confrontation." *Heller*, 554 U.S. at 629. Accordingly, Plaintiffs are likely to succeed on the merits of their second claim for relief.

    **C.**    **Defendants' Ban Is Unconstitutional Because It Is Not Narrowly Tailored.**

Defendants' prohibition on functional firearms in tents is directly contrary to the Court's holding in *Heller*, and Defendants' ban on carrying firearms outside of a tent plainly conflicts with the Second Amendment's "core lawful purpose of self-defense." *Heller*, 554 U.S. at 630;

*Moore*, 702 F.3d at 937.  Therefore, Defendants' ban is presumed unconstitutional and the only way the ban can be justified is if Defendants can prove that the ban is narrowly tailored to serve a compelling government interest.  *See Ezell*, 651 F.3d at 708 ("[A] severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end."); *Bateman*, 881 F. Supp. 2d at 715 ("[T]he court finds that the statutes at issue here are subject to strict scrutiny."); *United States v. Engstrum*, 609 F. Supp. 2d 1227, 1231–32 (D. Utah 2009) (same); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial."); *but see Bonidy*, 2013 WL 3448130, *6 (holding gun ban unconstitutional under intermediate scrutiny).  Defendants cannot prove that their ban is "narrowly tailored to serve a compelling governmental interest" and "is necessary to serve the asserted [compelling] interest." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992).  Defendants' ban is not tailored because "a substantial portion of the burden . . . does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).

Defendants' ban effects a broad prohibition on law-abiding citizens' right to keep and bear arms for self-defense.  Because the ban extends to firearms carried in vehicles, the burden on the Second Amendment is not just on Corps-administered public lands, but everywhere a law-abiding individual travels before and after.  Such a "broadscale prohibition" on constitutionally protected conduct is by definition not narrowly tailored. *Initiative and Referendum Institute v. U.S. Postal Service*, 417 F.3d 1299, 1315 (D.C. Cir. 2005); *see, e.g., Martin v. Struthers*, 319 U.S. 141, 145–146 (1943) (striking down ban on all door-to-door solicitation); *Goodman v. City of Kansas City*, 906 F. Supp. 537, 539 (W.D. Mo. 1995) (striking down prohibition on display of political bumper stickers in a parking lot controlled by the City).

16

A more narrowly tailored regulation might survive constitutional scrutiny, but Defendants' firearms ban incorporates no moderating limitations. *Cf. Masciandaro*, 638 F.3d at 474 (quoting *Heller*, 554 U.S. at 592) ("[B]y permitting [National Park] patrons to carry unloaded firearms within their vehicles, [36 C.F.R.] § 2.4(b) leaves largely intact the right to 'possess and carry weapons in case of confrontation.'"); *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011) ("Individuals may still carry or possess weapons on the open grounds of GMU . . . ."); *GeorgiaCarry.Org*, 764 F. Supp. 2d at 1320 ("[T]he statute would allow [the plaintiff CEO of the Tabernacle] to keep a firearm in his office if he obtained permission from security or management personnel of the Tabernacle and kept it secured or stored as directed.").

Defendants' ban is also broader than most other regulations of firearms on federal property, which allow law-abiding citizens to possess firearms in some capacity. For example, 18 U.S.C. § 930 strikes a balance between the need for security in federal courthouses—evidenced by the robust security in place throughout those buildings—and the constitutional right to carry. Possession of a firearm "in a Federal court facility" is prohibited. 18 U.S.C. § 930(e)(1). But on other federal property, Congress protected "the lawful carrying of firearms . . . incident to hunting or other lawful purposes." 18 U.S.C. § 930(d)(3).[3] Likewise, the National Park Service regulation addressed in *Masciandaro*, 36 C.F.R. § 2.4(b), left "largely intact the right to 'possess and carry weapons in case of confrontation.'" 638 F.3d at 474 (quoting *Heller*, 554 U.S. at 592). Defendants' ban is not nearly so narrow as 18 U.S.C. § 930 or 36 C.F.R. § 2.4(b), because it prohibits all functional firearms, with no concern for self-defense.

---

[3] The statute also explicitly recognizes the federal courts' inherent authority to regulate the courthouse and punish for contempt any violations of court rules. 18 U.S.C. § 930(f).

Defendants' ban fails to account for the qualitative difference between a gun possessed with criminal intent and a gun possessed for lawful purposes. *Heller*, 554 U.S. at 636 (Stevens, J., dissenting). The former is an appropriately targeted evil; the latter is a fundamental constitutional right. *McDonald*, 130 S. Ct. at 3050. Yet, Defendants' ban is not tailored to account for these dramatic distinctions between protected and unprotected conduct. Defendants can still regulate firearms on Corps-administered property, "but the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636. One of the choices removed is "a broadscale prohibition against" lawful possession of firearms for self-defense. *Initiative and Referendum Institute*, 417 F.3d at 1315. The Constitution will not countenance Defendants' broadscale approach to Second Amendment rights, any more than it allows a similarly unnuanced approach to the First Amendment. *See id*.

## II.   PLAINTIFFS ARE SUFFERING IRREPARABLE HARM.

"When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2948.1 (2013). Indeed, "[u]nder the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Sammartano*, 303 F.3d at 973–74; *Warsoldier v. Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005) (same). Because Plaintiffs raise substantial constitutional claims, no further showing of irreparable injury is necessary. *See Ezell*, 651 F.3d at 699 (Like the First, "[t]he Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. Infringements of this right cannot be compensated by damages.").

18

### III.    THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR BECAUSE DEFENDANTS COULD SUFFER ONLY ILLUSORY HARM.

The harm to Plaintiffs' constitutional rights in the absence of a preliminary injunction far outweighs any illusory harm to Defendants that could result from this Court insisting on adherence to the Second Amendment.  Any harms Defendants might imagine are "entirely speculative and in any event may be addressed by more closely tailored regulatory measures." *Ezell*, 651 F.3d at 710.  In the absence of Defendants' ban, the laws of the State of Idaho would govern Corps-administered lands, *see* 36 C.F.R. § 327.26(a), and those laws should serve the public health and safety as well as they do in the rest of the State.  *See* I.C. § 18-3301, *et seq.*  On the other side of the scale, Plaintiffs have established a genuine likelihood that the Constitution is violated every day Defendants' ban is in effect.  The balance of equities favors Plaintiffs.

### IV.    GRANTING AN INJUNCTION IS IN THE PUBLIC INTEREST, GIVEN THE IMPORTANT CONSTITUTIONAL RIGHTS AT STAKE.

It is obvious that the public interest is served by requiring strict adherence to the Constitution.  *Rodriguez*, 715 F.3d at 1146 ("It stands to reason that the public interest also benefits from a preliminary injunction that ensures that federal statutes are construed and implemented in a manner that avoids serious constitutional questions."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").  The Supreme Court has held that the Second Amendment protects the right to possess and carry firearms for self-defense, and numerous federal courts have recognized such a right.  Plaintiffs have established that Defendants' firearm ban runs afoul of those constitutional protections.  Accordingly, a preliminary injunction is in the public interest.

## V.       THE WAIVER OF BOND IS APPROPRIATE.

This Court has discretion to waive the security requirements of Fed. R. Civ. P. 65(c) or require only a nominal bond. *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999). Where a preliminary injunction would merely require compliance with the Constitution, no bond is required. *Doe v. Pittsylvania County, Va.,* 842 F. Supp. 2d 927, 937 (W.D. Va. 2012) (fixing the bond at zero dollars where injunction merely required compliance with the Constitution); *Baca v. Moreno,* 936 F. Supp. 719, 738 (C.D. Cal. 1996) (waiving bond because "to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public affected by the policy"). Plaintiffs are seeking only to vindicate their constitutional rights and to this end they are represented pro bono. Also, because Plaintiffs have demonstrated a high likelihood of success on the merits, a bond waiver is appropriate. *People of State of Cal ex rel. Van de Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1326 (9th Cir. 1985), *amended on other grounds,* 775 F.2d 998 (9th Cir. 1985). Therefore, it would be appropriate to waive the bond requirement or to set bond at a nominal amount.

## <u>CONCLUSION</u>

As demonstrated by the foregoing, this Court should preliminarily enjoin Defendants' ban on law-abiding individuals possessing functional firearms on Army Corps of Engineers-administered public lands for the purpose of self-defense. At a minimum, this Court should preliminarily enjoin Defendants' ban on Plaintiffs' possession of functional firearms on Army Corps of Engineers-administered public lands for the purpose of self-defense.

DATED this 5th day of August 2013.

      Respectfully submitted,

      /s/ John L. Runft
      John L. Runft, Esq.
      Runft and Steele Law Offices, PLLC
      1020 West Main Street, Suite 400
      Boise, Idaho 83702
      (208) 333-8506
      (208) 343-3246 (facsimile)
      jrunft@runftsteele.com

      James M. Manley, Esq.
      (*pro hac vice application filed concurrently*)
      Steven J. Lechner, Esq.
      (*pro hac vice application filed concurrently*)
      Mountain States Legal Foundation
      2596 South Lewis Way
      Lakewood, Colorado 80227
      (303) 292-2021
      (303) 292-1980 (facsimile)
      jmanley@mountainstateslegal.com

      Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of August, 2013, I filed the foregoing

electronically through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

None.

AND I FURTHER CERTIFY that on such date I served the foregoing on the following

nonCM/ECF Registered Participants in the manner indicated:

Via certified mail, return receipt requested, addressed as follows:

U.S. Army Corps of Engineers
441 G Street NW
Washington, D.C.  20314-1000

John McHugh
Secretary of the Army
101 Army Pentagon
Washington, D.C.  20310-0101

Lieutenant General Thomas Bostick
Commanding General and Army Chief of Engineers
Headquarters, Army Corps of Engineers
441 G Street NW
Washington, D.C.  20314

Colonel John S. Kem
Northwestern Division Commander
1125 NW Couch Street, Ste. 500
Portland, OR  97209

Lieutenant Colonel Andrew D. Kelly
Walla Walla District Commander and District Engineer
U.S. Army Corps of Engineers
201 North 3rd Avenue
Walla Walla, Washington  99362

                                        /s/ John L. Runft
                                        John L. Runft, Esq.