James M. Manley, Esq. (CO No. 40327)
(*admitted pro hac vice*)
Steven J. Lechner, Esq. (CO No. 19853)
(*admitted pro hac vice*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

John L. Runft, Esq. (ISB No. 1059)
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and ALAN C. BAKER, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ARMY CORPS OF ENGINEERS, *et al.*, <br><br> Defendants. | Case No. 3:13-CV-00336-BLW <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ................................................................................ 1

I.     PLAINTIFFS SEEK A PROHIBITORY INJUNCTION ............................ 1

II.     PLAINTIFFS ARE SUFFERING IRREPARABLE HARM IN THE
ABSENCE OF PRELIMINARY RELIEF ................................................ 2

     A.     The Length Of Time The Violation Has Been Ongoing Does
Not Weigh Against Preliminary Relief.............................................. 2

     B.     A Colorable Constitutional Claim Constitutes Irreparable Harm ...... 5

III.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ............... 8

     A.     Defendants' Ban On Possession Of Firearms In A Tent Is
Contrary To The Supreme Court's Landmark Decision In
*Heller* ............................................................................... 9

     B.     The Second Amendment Protects The Right to Carry ..................... 11

         1.     This Court is bound by the Supreme Court's decisions
in *Heller* and *McDonald* ......................................... 12

         2.     State courts have struck down firearm bans on public
property........................................................................ 12

         3.     Blackstone is instructive of the historic understanding
of the Second Amendment..................................................... 13

         4.     Federal case law supports the right to carry........................... 14

     C.     Defendants' Ban Effects A Broad Prohibition On Law-Abiding
Citizens' Right To Keep And Bear Arms For Self-Defense.............. 16

     D.     The Second Amendment Applies To Corps-Administered
Public Lands...................................................................... 18

IV.     IT IS NOT IS IN THE PUBLIC INTEREST FOR DEFENDANTS TO
VIOLATE THE CONSTITUTION ............................................... 20

CONCLUSION...................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*ACLU v. City of Las Vegas*,
   13 F. Supp. 2d 1064 (D. Nev. 1998) .............................................................. 2

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ........................................................................ 2

*Anderson v. United States*,
   612 F.2d 1112 (9th Cir. 1979) ........................................................................ 1

*Bateman v. Perdue*,
   881 F. Supp. 2d 709 (E.D.N.C. 2012) ............................................................ 14–16

*Bonidy v. U.S. Postal Service*,
   2013 WL 3448130 (D. Colo. 2013) ................................................................ 14, 15

*City of Las Vegas v. Moberg*,
   485 P.2d 737 (N.M. Ct. App. 1971) ............................................................... 12

*Clark v. Library of Congress*,
   750 F.2d 89 (D.C. Cir. 1984) ......................................................................... 4, 5

*Coeur d'Alene Tribe of Idaho v. Idaho*,
   42 F.3d 1244 (9th Cir. 1994) ......................................................................... 5

*Conservation Congress v. U.S. Forest Service*,
   720 F.3d 1048 (9th Cir. 2013) ....................................................................... 8, 11, 15

*Dex Media West, Inc. v. City of Seattle*,
   790 F. Supp. 2d 1276 (W.D. Wash. 2011) ..................................................... 5

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ........................................................................................ *passim*

*Dugan v. Rank*,
   372 U.S. 609 (1963) ........................................................................................ 4

*Engquist v. Oregon Dept. of Agr.*,
   553 U.S. 591 (2008) ........................................................................................ 19

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ......................................................................... *passim*

*Freedman v. Maryland*,
　　380 U.S. 51 (1965) ................................................................. 17

*GeorgiaCarry.Org, Inc. v. Georgia*,
　　764 F. Supp. 2d 1306 (M.D. Ga. 2011) ................................. 14, 19

*Hickman v. Block*,
　　81 F.3d 98 (9th Cir. 1996) ...................................................... 4

*Hodge v. Service Machine Co.*,
　　438 F.2d 347 (6th Cir. 1971) ................................................... 3

*Hohe v. Casey*,
　　868 F.2d 69 (3rd Cir. 1989) .................................................... 7

*In re Brickey*,
　　70 P. 609 (Idaho 1902) ........................................................... 13

*Initiative and Referendum Institute v. U.S. Postal Service*,
　　417 F.3d 1299 (D.C. Cir. 2005) .............................................. 19

*ISKCON Miami, Inc. v. Metropolitan Dade County*,
　　147 F.3d 1282 (11th Cir. 1998) .............................................. 19

*Johnson v. Tompkins*,
　　13 F. Cas. 840, 850 (CC Pa. 1833) ......................................... 9

*Kachalsky v. County of Westchester*,
　　701 F.3d 81 (2d Cir. 2012) ..................................................... 6, 14

*Kyllo v. United States*,
　　533 U.S. 27 (2001) ................................................................. 10

*Lakewood v. Pillow*,
　　501 P.2d 744 (Colo. 1972) ...................................................... 13

*Larson v. Domestic and Foreign Corp.*,
　　337 U.S. 682 (1949) ............................................................... 4

*Legal Aid Soc. of Hawaii v. Legal Services Corp.*,
　　961 F.Supp. 1402 (D. Hawaii 1997) ....................................... 1

*Lisa Frank, Inc. v. Impact Intern., Inc.*,
　　799 F. Supp. 980 (D. Ariz. 1992) ........................................... 2

*Lydo Enterprises, Inc. v. City of Las Vegas,*
    745 F.2d 1211 (9th Cir. 1984) ....................................................... 3

*Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.,*
    372 F.2d 18 (3rd Cir. 1966) ......................................................... 3

*Malone v. Bowdoin,*
    369 U.S. 643 (1962) ...................................................................... 4

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
    571 F.3d 873 (9th Cir. 2009) ....................................................... 1

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010) .................................................................. 11

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ....................................................... 14, 15

*National Wildlife Federation v. National Marine Fisheries Service,*
    422 F.3d 782 (9th Cir. 2005) ....................................................... 6

*Nordyke v. King,*
    681 F.3d 1041 (9th Cir. 2012) ..................................................... 20

*Nordyke v. King,*
    644 F.3d 776 (9th Cir. 2011) ....................................................... 20

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.,*
    762 F.2d 1374 (9th Cir. 1985) ..................................................... 3

*People v. Nakamura,*
    62 P.2d 246 (Colo. 1936) ............................................................. 13

*People v. Zerillo,*
    189 N.W. 927 (Mich. 1922) ........................................................ 13

*Peruta v. San Diego,*
    758 F. Supp. 2d 1106 (S.D. Cal. 2010) ....................................... 14

*Playboy Enterprises, Inc. v. Netscape Communications Corp.,*
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) ......................................... 3

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ...................................................................... 16

*Republic of the Philippines v. Marcos,*
  862 F.2d 1355 (9th Cir. 1988) ........................................ 7

*Sammartano v. First Judicial District Court,*
  303 F.3d 959 (9th Cir. 2002) ........................................ 5, 8, 21

*Sanders County Republican Cent. Committee v. Bullock,*
  698 F.3d 741 (9th Cir. 2012) ........................................ 6, 8

*Siegel v. LePore,*
  234 F.3d 1163 (11th Cir. 2000) ........................................ 7

*Silveira v. Lockyer,*
  312 F.3d 1052 (9th Cir. 2002) ........................................ 4

*State ex rel. City of Princeton v. Buckner,*
  377 S.E.2d 139 (W.Va. 1988) ........................................ 13

*TVA v. Hill,*
  7 U.S. 153 (1978) ........................................ 6

*Thalheimer v. City of San Diego,*
  645 F.3d 1109 (9th Cir. 2011) ........................................ 6, 21

*United States v. Chester,*
  628 F.3d 673 (4th Cir. 2010) ........................................ 11, 16, 19

*United States v. Engstrum,*
  609 F. Supp. 2d 1227 (D. Utah 2009) ........................................ 16

*United States v. Gooch,*
  6 F.3d 673 (9th Cir. 1993) ........................................ 10

*United States v. Kokinda,*
  497 U.S. 720 (1990) ........................................ 18

*United States v. Marzzarella,*
  614 F.3d 85 (3d Cir. 2010) ........................................ 14, 19

*United States v. Masciandaro,*
  638 F.3d 458 (4th Cir. 2011) ........................................ 14, 19

*United States v. One 1961 Red Chevrolet Impala,*
  457 F.2d 1353 (5th Cir. 1972) ........................................ 3, 4

*United States v. Reese,*

27 F.3d 792, (10th Cir. 2010) ......................................................... 14, 16

*United States v. Sandoval,*
    200 F.3d 659 (9th Cir. 2000) ...................................................... 10

*United States v. Sams,*
    521 F.2d 421 (3rd Cir. 1975) ...................................................... 3

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) ...................................................... 13, 19

*United States v. Williams,*
    616 F.3d 685 (7th Cir. 2010) ...................................................... 13, 19

*Valeo Intellectual Property, Inc. v. Data Depth Corp.,*
    368 F. Supp. 2d 1121 (W.D. Wash. 2005) ................................... 2

*Versluis v. Town of Haskell,*
    154 F.2d 935 (10th Cir. 1946) .................................................... 3, 4

*Warsoldier v. Woodford,*
    418 F.3d 989 (9th Cir. 2005) ...................................................... 5

*Winter v. National Resources Defense Council,*
    555 U.S. 7 (2009) ....................................................................... 2

*Working Washington v. Central Puget Sound Regional Transit Authority,*
    2013 WL 3487561 (9th Cir. 2013) .............................................. 1

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................ *passim*

U.S. Const. amend. II ........................................................................... *passim*

U.S. Const. amend. IV .......................................................................... *passim*

**Statutes**

5 U.S.C. § 702 ...................................................................................... 4, 5

28 U.S.C. § 2401(a) ............................................................................. 3–5

**Regulations**

32 C.F.R. § 1903 .................................................................................. 18

32 C.F.R. § 234 ................................................................................. 18

36 C.F.R. § 327.13 ............................................................................ *passim*

**<u>Other Authorities</u>**

Blacks Law Dictionary (7th ed. 1999) ............................................... 5

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443 (2009) ......................................................................... 18

Holmes, Jr., Oliver Wendell, The Common Law (1881) ......................... 11

William Blackstone, *Commentaries on the Laws of England* (1753) ....... 13

## ARGUMENT

Plaintiffs, by and through their undersigned attorneys, respectfully respond to Defendants' Memorandum In Opposition To Plaintiffs' Motion For Preliminary Injunction (Doc. 18) ("Opp'n").

## I.      PLAINTIFFS SEEK A PROHIBITORY INJUNCTION.

Plaintiffs challenge the constitutionality of Defendants' firearms ban, both facially and as applied.  They seek an injunction preventing Defendants from enforcing their ban; they are not, as Defendants suggest, seeking a mandatory injunction.  Opp'n at 4.  "A mandatory injunction commands performance of certain acts whereas a prohibitory injunction prohibits the performance of certain acts."  *Legal Aid Soc. of Hawaii v. Legal Services Corp.*, 961 F.Supp. 1402, 1408 (D. Hawaii 1997) (citing *Anderson v. United States*, 612 F.2d 1112, 1114–5 (9th Cir. 1979)); *see also Working Washington v. Central Puget Sound Regional Transit Authority*, 2013 WL 3487561, *1 (9th Cir. 2013) ("Working Washington seeks a disfavored mandatory injunction that would compel Sound Transit to *take action* by posting the Advertisement . . . .") (emphasis added) (citing *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).  Plaintiffs do not ask this Court to compel Defendants to take any action.  Plaintiffs seek an injunction to *stop* Defendants from violating the Constitution.

Even if Plaintiffs had requested a mandatory preliminary injunction, it would be appropriate in this case, where the constitutional injury alleged is not "capable of compensation in damages."  *Anderson*, 612 F.2d at 1115; *see also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (Like the First, "[t]he Second Amendment protects similarly intangible and unquantifiable interests. . . . Infringements of this right cannot be compensated by damages.").

In any event, Defendants' mandatory injunction argument is of no consequence because *Winter v. National Resources Defense Council,* 555 U.S. 7, 20 (2009), sets out the test for the kind of injunction Plaintiffs seek here.  In *Winter*, "[t]he District Court entered a preliminary injunction prohibiting the Navy from using MFA sonar during its training exercises."  *Id*. at 7.  Plaintiffs seek precisely the same sort of prohibitory relief here:  stopping Defendants from enforcing their ban on law-abiding individuals possessing functional firearms on Army Corps of Engineers-administered public lands for the purpose of self-defense.  *See* Brief in Support of Plaintiffs' Motion for Preliminary Injunction ("Br. in Support") at 20.  Accordingly, Plaintiffs are entitled to a preliminary injunction because the following factors are met:  (1) Plaintiffs are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20; *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## II.   PLAINTIFFS ARE SUFFERING IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

### A.   The Length Of Time The Violation Has Been Ongoing Does Not Weigh Against Preliminary Relief.

Contrary to Defendants' suggestion, there was no unexplained delay here that would militate against a finding of irreparable harm.  Opp'n at 5–6.  The cases Defendants cite considered unexplained delays of several months between filing suit and requesting preliminary relief.  *Valeo Intellectual Property, Inc. v. Data Depth Corp*., 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (seeking preliminary injunction three months after filing complaint); *ACLU v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1083 (D. Nev. 1998) (same); *Lisa Frank, Inc. v. Impact*

*Intern., Inc.*, 799 F. Supp. 980, 1000 (D. Ariz. 1992) (same, with six month delay).[1]  No such

delay exists here.  Plaintiffs filed suit and contemporaneously requested preliminary relief.  Suit

was filed 23 calendar days (15 working days) after Defendant Kelly ignored Plaintiff Morris's

request for permission to possess a functional firearm under 36 C.F.R. § 327.13(a)(4), which

grants Defendant Kelly the authority to issue such permission.  Plaintiffs gave Defendant Kelly

ample time—30 days—to responded to their written requests pursuant to 36 C.F.R. §

327.13(a)(4) (the regulation itself provides no timeline for a response).  Br. in Support at 4–5.

Rather than respond, Defendant Kelly let the 30-day period pass and ignored both requests.  *Id.*

Having received no response, on August 5, 2013, Plaintiffs filed the instant action.

       Nor is the general statute of limitations barring actions against the United States "six

years after the right of action first accrues" a bar to Plaintiffs' facial challenge.[2]  28 U.S.C. §

2401(a); Opp'n at 3 n.2.  A cause of action does not first accrue until a plaintiff has a right to

enforce his cause.  *Versluis v. Town of Haskell*, 154 F.2d 935, 942 (10th Cir. 1946) ("[T]he

statute of limitations does not start to run on a cause of action until the plaintiff could have first

maintained the action to a successful result.") (quotation omitted); *see also United States v.

Sams*, 521 F.2d 421, 429 (3rd Cir. 1975); *United States v. One 1961 Red Chevrolet Impala*, 457

F.2d 1353, 1358 (5th Cir. 1972); *Hodge v. Service Machine Co.*, 438 F.2d 347, 349 (6th Cir.

1971); *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 21

---

[1] In the other cases Defendants cite, the courts denied preliminary injunctive relief on other
grounds.  *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985)
(holding loss of reputation not shown to be result of defendant's actions); *Lydo Enterprises, Inc.
v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984) (noting "[w]e would be loath to
withhold relief solely" because of delay and holding injunctive relief not warranted on the
merits); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 55 F. Supp. 2d 1070,
1090 (C.D. Cal. 1999) ("PEI has not demonstrated a likelihood of confusion or dilution.
Therefore, the Court finds that PEI will not suffer any irreparable harm from denial of injunctive
relief.").

[2] Defendants tacitly conceded that Plaintiffs' as-applied challenge is timely.  Opp'n at 3 n.2.

(3rd Cir. 1966).  Changes in case law that render a claim meritorious have been recognized as starting the running of a statute of limitations.  *Versluis*, 154 F.2d at 942; *One 1961 Red Chevrolet Impala*, 457 F.2d at 1358.

Defendants originally promulgated 36 C.F.R. § 327.13 in 1973, however Plaintiffs' right to keep and bear arms was not recognized until the Supreme Court decided *District of Columbia v. Heller*, 554 U.S. 570 (2008).  Prior to the decision in *Heller*, Plaintiffs' right to keep and bear arms was not recognized under Federal law.  *See Silveira v. Lockyer*, 312 F.3d 1052, 1067 (9th Cir. 2002); *Hickman v. Block*, 81 F.3d 98, 103 (9th Cir. 1996).  Thus, Plaintiffs' right of action did not accrue until 2008 and 28 U.S.C. § 2401(a) cannot bar Plaintiffs' facial challenge.

Moreover, Defendants reliance on cases deciding that 28 U.S.C. § 2401(a) applies to Administrative Procedure Act ("APA") claims is misplaced.  The APA contains a general waiver of sovereign immunity for cases involving "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  Plaintiffs here need not rely on the APA's waiver, and any limitations that attach to that waiver are irrelevant.  "It is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority."  *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984) (citing *Dugan v. Rank*, 372 U.S. 609, 621–23 (1963); *Malone v. Bowdoin*, 369 U.S. 643, 646–48 (1962); *Larson v. Domestic and Foreign Corp.*, 337 U.S. 682, 689–91 (1949)).  Because Defendants have violated the Constitution, no waiver of sovereign immunity is

necessary.[3]  *Id.*  Accordingly, the only cases Defendants cite in support of their 28 U.S.C. § 2401(a) argument regarding Plaintiffs' facial claims are inapposite.

**B.      A Colorable Constitutional Claim Constitutes Irreparable Harm.**

Plaintiffs do much more than "merely alleging constitutional injury," as Defendants suggest.  Opp'n at 7.  The Ninth Circuit has held that "[u]nder the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim."  *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973–74 (9th Cir. 2002); *Warsoldier v. Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005) (same).  As evidenced by the detailed analysis of the plaintiffs' First Amendment claims in *Sammartano*, 303 F.3d at 965–73, a colorable claim is "a claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension to or modification of the current law)."  Blacks Law Dictionary 240 (7th ed. 1999).  Plaintiffs have raised colorable claims regarding the constitutionality of Defendants' actions.  Br. in Support at 6–15; *see* Part III, *infra*.

Defendants fault Plaintiffs for citing *Sammartano* and *Warsoldier* for the "colorable claim" standard.  Opp'n at 9–10.  Defendants rely on footnoted dictum in a district court decision for the proposition that these cases have been abrogated by *Winter*.  Opp'n at 10 (citing *Dex Media West, Inc. v. City of Seattle*, 790 F. Supp. 2d 1276, 1289 n.8 (W.D. Wash. 2011)).  Defendants' sweeping condemnation of the "colorable claim" standard is wrong for a number of

---

[3] The waiver of sovereign immunity in 5 U.S.C. § 702 is in addition to the bedrock principle that no waiver of sovereign immunity is necessary for lawsuits attacking unconstitutional actions.  *Cf. Coeur d'Alene Tribe of Idaho v. Idaho*, 42 F.3d 1244, 1252 n.6 (9th Cir. 1994), *reversed in part on other grounds*, 521 U.S. 261 (1997) ("Although cases against federal officials are no longer necessary because the United States has waived its sovereign immunity to actions to quiet title, 28 U.S.C. § 2409a, the underlying principle remains valid.")

reasons, but it is enough to simply point out that the Ninth Circuit continues to apply that standard, and apply *Sammartano*'s interpretation of the individual preliminary injunction factors, post-*Winter*. *See, e.g., Sanders County Republican Cent. Committee v. Bullock*, 698 F.3d 741, 744 (9th Cir. 2012) ("When seeking a preliminary injunction in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction.").

Defendants similarly fault Plaintiffs for citing another pre-*Winter* case, *National Wildlife Federation v. National Marine Fisheries Service*, 422 F.3d 782, 794 (9th Cir. 2005), because that case dealt with the Endangered Species Act ("ESA"). Opp'n at 10–11. Defendants misread *National Wildlife Federation* in at least two important respects.

First, in *National Wildlife Federation*, the Ninth Circuit suggested that the preliminary injunction test is different in the ESA context with respect to the balance of equities. 422 F.3d at 794. According to the Ninth Circuit, this distinction is necessary because "'Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities.'" *Id.* (quoting *TVA v. Hill*, 437 U.S. 153, 194 (1978)). The interests served by the United States Constitution are at least as important as the interests served by the ESA, and so a similar balance applies here. *Cf. Thalheimer v. City of San Diego*, 645 F.3d 1109, 1129 (9th Cir. 2011) (quoting *Sammartano*, for the proposition that "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles.").

Second, Plaintiffs cited *National Wildlife Federation* for the proposition that they are "only obligated to show 'a fair chance of success'" on the merits to justify preliminary relief. Br.

in Support at 6 (citing *National Wildlife Federation*, 422 F.3d at 794 (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc))).  As the Ninth Circuit's quotation of *Marcos*, a RICO case, should make clear, this prong of the test is the same no matter the source of the claim for relief.  Thus, even if the *National Wildlife Federation* test were limited to the ESA, its description of the various prongs of that test applies beyond the ESA.

Defendants are thus left with two out-of-context quotations from out-of-circuit cases and a district court equal protection case to support their argument that a colorable constitutional claim does not constitute irreparable injury.  Opp'n at 7.  These cases do not overturn the Ninth Circuit precedent that confirms a constitutional violation of the magnitude proven by Plaintiffs causes irreparable injury.  Defendants rely on *Hohe v. Casey*, 868 F.2d 69, 73 (3rd Cir. 1989), but fail to describe the court's reasoning because it demonstrates that *Hohe* is inapposite: "Accordingly, it is the direct penalization, as opposed to incidental inhibition, of First Amendment rights [which] constitutes irreparable injury. . . . The plaintiffs' remedy, should they succeed on the merits, will consist of restitution and/or monetary damages."  Obviously, there is "direct penalization" of Second Amendment rights here, and no restitution or monetary damages can compensate for this injury.  *See Ezell*, 651 F.3d at 699.  Defendants also cite *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000), but fail to note that there was no irreparable harm in that case because there was no harm at all:  "the candidate[s]. . . are suffering no serious harm, let alone irreparable harm, because they have been certified as the winners of Florida's electoral votes . . . ."  Neither case is contrary to *Sammartano*'s "colorable claim" standard.

Fatal to Defendants' argument that a significant Second Amendment violation cannot cause irreparable injury is the Seventh Circuit's decision in *Ezell*.  The Seventh Circuit held that Second Amendment violations cause irreparable harm, because, like the First Amendment:

> The Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection.  Infringements of this right cannot be compensated by damages.

*Ezell*, 651 F.3d at 699.  Defendants' attempt to distinguish *Ezell* devolves into a discussion of the merits; they simply argue that *Ezell* should not apply because Defendants view the Second Amendment as limited to permanent homes.  Opp'n at 8–9.  This view is wrong for the reasons demonstrated below and it reveals an important admission:  Plaintiffs' irreparable injury is closely tied to their likelihood of success on the merits.  *See Sammartano*, 303 F.3d at 973–74; *Bullock*, 698 F.3d at 744.  Because Plaintiffs raise colorable constitutional claims, no further showing of irreparable injury is necessary.  *See Ezell*, 651 F.3d at 699.

## III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Defendants make much of the fact that no case has held that Defendants' ban on functional firearms in tents is unconstitutional.  Opp'n at 11.  If such a binding precedent were available to Plaintiffs, they would not be in this Court; they would be exercising their Second Amendment rights on Corps-administered lands, just as they now exercise those rights throughout the State of Idaho.  But binding precedent foreclosing Defendants' actions is not necessary to "establish[] a probability of success on the merits."  *Conservation Congress v. U.S. Forest Service*, 720 F.3d 1048, 1054 (9th Cir. 2013) (citing *Winter*, 555 U.S. at 20, 22).  Plaintiffs have met this burden with respect to both their claims.  First, the Supreme Court has unequivocally foreclosed a ban on firearms in the home and courts have consistently equated tents on public lands with more permanent dwellings for purposes of constitutional analysis.  Second, the text of the Second Amendment, the weight of authority from state courts, founding-era English law, and numerous Federal courts all recognize the right to carry outside a dwelling.  As demonstrated below, Defendants' objections miss the mark.

A.     **Defendants' Ban On Possession Of Firearms In A Tent Is Contrary To The Supreme Court's Landmark Decision In** *Heller.*

The parties seem to agree that the central holding of *Heller* concerns the constitutionality of possessing functional firearms in a home.  Br. in Support at 6–7; Opp'n at 12.  Defendants take the position that the only sort of home subject to *Heller* is a permanent home.  Opp'n at 12.  But this myopic reading of *Heller* ignores the sweeping historical analysis that underpins the Court's decision in that case, which included numerous observations that it was long accepted that "a citizen has 'a right to carry arms in defence [sic] of his property or person, and to use them, if either were assailed with such force, numbers or violence as made it necessary for the protection or safety of either.'"  554 U.S. at 611 (quoting *Johnson v. Tompkins*, 13 F. Cas. 840, 850, 852 (CC Pa. 1833)).  Obviously, *Heller* did not "clarify the entire field" of Second Amendment jurisprudence.  554 U.S. at 635.  But to suggest that the decision stands only for the proposition that the Second Amendment applies in the home is to ignore the decision's reasoning and the conclusions of numerous Federal courts that have held that the decision is much more far reaching.  *See Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) ("[T]he Court's analysis suggests[ ] . . . that the Amendment must have some application in the very different context of the public possession of firearms." (footnote omitted)).

Moreover, the conclusion that *Heller* applies to non-permanent dwellings such as tents is supported by the case law affording other similar constitutional protections to tents.  The textual and historical overlap between the Second and Fourth Amendments is the first clue that there should be doctrinal overlap between the two:  "The centerpiece of the Court's textual argument is its insistence that the words 'the people' as used in the Second Amendment must have the same meaning, and protect the same class of individuals, as when they are used in the First and Fourth Amendments."  *Heller*, 554 U.S. at 644 (Stevens, J., dissenting).  The Court also

recognized that the source of the rights protected by the Second and Fourth Amendments is the same. *Id*. at 592 ("We look to [history] because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right."). Moreover, the application of both provisions to modern technology is similar. *Id*. at 582 ("Just as the First Amendment protects modern forms of communications and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms . . . .") (citations omitted).

The logical overlap between the Second and Fourth Amendments is also compelling. The Second Amendment protects an expectation of security, in the same way the Fourth Amendment protects an expectation of privacy. Also like the Second Amendment, "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quotation omitted); *Heller*, 554 U.S. at 635.

Defendants spend most of their opposition to this analogy discussing the nuances of Fourth Amendment search and seizure law, but Plaintiffs are not arguing that a search of a tent is always unreasonable. Opp'n 13–15. Cases like *United States v. Gooch*, 6 F.3d 673 (9th Cir. 1993) and *United States v. Sandoval*, 200 F.3d 659 (9th Cir. 2000), are relevant here because they establish that the Fourth Amendment applies to tents in the same way that it applies to homes. Accordingly, given the textual, historical, and logical overlap between the Second and Fourth Amendments, these cases reinforce the conclusion that Defendants' ban violates the central holding of *Heller* regarding keeping firearms in a home for self-defense. Plaintiffs are not suggesting "wholesale" incorporation of First or Fourth Amendment jurisprudence into the Second Amendment context. Opp'n at 9. Rather, Plaintiffs advocate "looking to the First [and

10

Fourth] Amendment[s] as . . . guide[s] in developing a standard of review for the Second Amendment." *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010). Defendants come close to proposing a wholesale *exclusion* of these other areas of jurisprudence, Opp'n at 15, but "the life of the law has not been logic; it has been experience" and the reasoned enforcement of the Constitution is not added by ignoring helpful analogies. Oliver Wendell Holmes, Jr., The Common Law 1 (Sheldon Novick ed., Dover 1991) (1881). The Supreme Court suggested as much when it admonished the City of Chicago for "in effect, ask[ing] us to treat the right recognized in *Heller* as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees . . . ." *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3044 (2010). Likewise, as demonstrated above, in *Heller* the Court drew repeated analogies between the Second Amendment and other Bill of Rights guarantees. 554 U.S. at 579, 582, 592.

Because the Supreme Court has unequivocally foreclosed a ban on firearms in the home and courts have consistently equated tents on public lands with the home for purposes of constitutional analysis, Plaintiffs have "establish[ed] a probability of success on the merits" regarding their first claim for relief. *Conservation Congress*, 720 F.3d at 1054.

### B.     The Second Amendment Protects The Right to Carry.

Defendants' objection to the right to carry begins with the refrain that *Heller* and *McDonald* did not hold Defendants' ban unconstitutional, so those cases are irrelevant. Opp'n at 18. But Defendants never refute that the Constitution's text, the weight of authority from state courts, founding-era law, and numerous Federal courts all recognize the right to carry.[4]

---

[4] Before addressing the right to carry, Defendants toss a red herring regarding the government's power "as proprietor, to manage its internal operations." Opp'n at 16–17. Plaintiffs explain the error of this argument in Part III.D., *infra*, because it has nothing to do with whether the Second Amendment protects the right to carry.

      **1.**      **This Court is bound by the Supreme Court's decisions in *Heller* and *McDonald*.**

Defendants never confront the Supreme Court's ruling that the Second Amendment protects the right to carry. *Heller*, 554 U.S. at 584. ("At the time of the founding, as now, to 'bear' meant to 'carry.'"). As previously demonstrated, the Court's ruling on the right to carry was integral to its holding about the meaning of the Second Amendment. Br. in Support at 10 (citing *Heller*, 554 U.S. at 584–86). And the right to "possess and carry weapons in case of confrontation" is at the core of the Second Amendment. *Heller*, 554 U.S at 592. Moreover, *McDonald* confirms that this right is "fundamental to *our* scheme of ordered liberty." 130 S. Ct. 3020, 3050 (2010) (emphasis in original). Defendants have no response to this precedent except to suggest that the holdings in *Heller* and *McDonald* are limited to their facts. Opp'n at 18.

      **2.**      **State courts have struck down firearm bans on public property.**

Defendants are simply incorrect that the state cases that echo the Supreme Court's conclusion about the right to carry did not concern carry bans on public lands. The facts of *City of Las Vegas v. Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971), are instructive. There, the "defendant went to the booking room of the city police department of the city of Las Vegas to report the theft of certain items from his automobile. At the time, defendant was carrying a pistol in a holster." 485 P.2d. at 738. As a result, he was convicted of violating a municipal ordinance that prohibited the carrying of deadly weapons. *Id*. The New Mexico Court of Appeals reversed the conviction. *Id*. at 739. The court drew a distinction between bans on concealed carry, which "do not deprive citizens of the right to bear arms; their effect is only to regulate the right," and a ban on both open and concealed carry. *Id*. at 738. The court held that a total ban, "den[ies] the people the constitutionally guaranteed right to bear arms, and to that

extent the ordinance under consideration is void." *Id*.  Thus, the court explicitly concluded that the right to bear arms extends to government buildings.

Likewise, the Idaho Supreme Court long ago foreclosed total carry bans, even on public property.  *In re Brickey*, 70 P. 609 (Idaho 1902).  That case presented a situation similar to *Moberg*, in that the statute at issue banned both open and concealed carry.  *Id*.  The court held that both the State and Federal constitutions prohibited a total ban on carrying firearms:

> Under these constitutional provisions, the legislature has no power to prohibit a citizen from bearing arms in any portion of the state of Idaho, whether within or without the corporate limits of cities, towns, and villages. The legislature may, as expressly provided in our state constitution, regulate the exercise of this right, but may not prohibit it.

*Id*.  Accordingly, the conviction under review was overturned and the statute struck down.  *Id*. The other state cases Plaintiffs cite similarly reached the conclusion that the government cannot ban all carrying of firearms for self-defense, including carrying on public property.  *See, e.g., State ex rel. City of Princeton v. Buckner*, 377 S.E.2d 139, 144 (W.Va. 1988); *Lakewood v. Pillow*, 501 P.2d 744, 745 (Colo. 1972); *People v. Nakamura*, 62 P.2d 246, 247 (Colo. 1936); *People v. Zerillo*, 189 N.W. 927, 928 (Mich. 1922).

### 3.  Blackstone is instructive of the historic understanding of the Second Amendment.

As Plaintiffs acknowledge, Blackstone's *Commentaries* are not controlling.  Br. in Support at 13–14.  Blackstone is, however, relevant because his description of English law illustrates the earliest understanding of the right to bear arms and is consonant with decisions of the state courts.  *See id*.  Blackstone stands for the proposition, consistent with state and Federal interpretations of the Second Amendment, that extinguishing the right of peaceable citizens to carry firearms for self-defense violates the Second Amendment.

Defendants argue that the modern view departs from this historical understanding, but the only case they cite in support, *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010), proves them wrong. Opp'n at 19. In *Skoien*, the Seventh Circuit applied heightened scrutiny to uphold the Federal ban on firearms possession by domestic violence misdemeanants because, "people who have been convicted of violence once—toward a spouse, child, or domestic partner, no less—are likely to use violence again." 614 F.3d at 642. Courts of Appeals have upheld other gun control measures for similar reasons. *See, e.g., United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (persons subject to a domestic protection order "undeniably pose a heightened danger of misusing firearms . . . ."); *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010) (no "lawful purpose [is] served by obliterating a serial number on a firearm."). While the Second Amendment allows such tailored regulations, it prohibits denying "law-abiding, responsible citizens" the right to carry firearms for self-defense, as Defendants do. *Heller*, 554 U.S. at 635.

### 4. Federal case law supports the right to carry.

There can be no dispute that numerous Federal courts have recognized that the Second Amendment protects the right to carry. *See, e.g., Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012); *Kachalsky*, 701 F.3d at 89; *Bonidy v. U.S. Postal Service*, 2013 WL 3448130, *6 (D. Colo. 2013); *Bateman v. Perdue*, 881 F. Supp. 2d 709, 714 (E.D.N.C. 2012) (quoting *United States v. Masciandaro*, 638 F.3d 458, 468 (4th Cir. 2011) (Niemeyer, J., writing separately)); *GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1319 (M.D. Ga. 2011), *aff'd*, 687 F.3d 1244 (11th Cir. 2012); *Peruta v. San Diego*, 758 F. Supp. 2d 1106, 1114 (S.D. Cal. 2010), *appeal docketed*, No. 10-56971 (Dec. 14, 2010). Defendants attempt to distinguish these cases on the basis that they mostly upheld the challenged gun control measures, Opp'n at 20, but this misses the point. Defendants do not recognize *why* the courts upheld those laws. In every case,

save three, the laws at issue regulated the right to carry, but did not impose a total ban, as Defendants do. Where the laws did impose a total ban, the courts held them unconstitutional. *Moore*, 702 F.3d at 936; *Bonidy*, 2013 WL 3448130 at *6; *Bateman*, 881 F. Supp. 2d at 714.

Moore and *Bateman* both struck down broad prohibitions on the right to carry. *Moore*, 702 F.3d at 936; *Bateman*, 881 F. Supp. 2d at 714. These cases buttress the Supreme Court's conclusion that the Second Amendment protects the right to carry. As the Seventh Circuit noted: "To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*." *Moore*, 702 F.3d at 937.

Defendants do not seriously try to distinguish *Bonidy*, they simply describe the narrow nature of the relief ordered in that case. Opp'n at 21–22. Notably, Defendants never acknowledged that their draconian ban would conflict with even the narrow relief granted in *Bonidy*. 2013 WL 3448130 at *6 ("[A]s applied to . . . the parking lot . . . the USPS [firearms ban] is not substantially related to the government's public safety interest. It is an unconstitutional burden on Mr. Bonidy's freedom under the Second Amendment.").

Much of Defendants' argument attempting to distinguish the relevant precedents proceeds from a misstatement of the scope of Defendants' firearms ban. Opp'n at 20–22. As demonstrated immediately below, Defendants' policy does not regulate the right to keep and bear arms for self-defense, it renders the right nugatory on all Corps-administered public lands.

Because the text of the Second Amendment, the weight of authority from state courts, founding-era English law, and numerous Federal courts all recognize the right to carry outside a dwelling, Plaintiffs have "establish[ed] a probability of success on the merits" regarding their second claim for relief. *Conservation Congress*, 720 F.3d at 1054.

C.   **Defendants' Ban Effects A Broad Prohibition On Law-Abiding Citizens' Right To Keep And Bear Arms For Self-Defense.**

Plaintiffs cite a number of cases for the proposition that "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Ezell*, 651 F.3d at 708; *Bateman*, 881 F. Supp. 2d at 715 ("[T]he court finds that the statutes at issue here are subject to strict scrutiny."); *United States v. Engstrum*, 609 F. Supp. 2d 1227, 1231–32 (D. Utah 2009) (same).   Defendants ignore these cases.   Opp'n at 23.

Defendants also ignore that the minimum standard any court has applied to Second Amendment challenges is intermediate scrutiny.[5]   These intermediate scrutiny cases, however, involve mainly:  (1) regulations that apply only to people who "undeniably pose a heightened danger of misusing firearms," *Reese*, 627 F.3d at 802; or (2) regulations that are less burdensome.   *See Chester*, 628 F.3d at 682 ("In the analogous First Amendment context, the level of scrutiny we apply depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.").   A more narrowly tailored regulation might be subject to intermediate scrutiny—such as a regulation that did not render the interest in personal security nugatory on Corps-administered public lands, or that did not burden the ability of law-abiding citizens to carry firearms before and after visiting public lands—but Defendants' ban incorporates no such moderating limitations.   Accordingly, Defendants must show that their ban

---

[5] Contrary to Defendants' suggestion, Opp'n at 23, even under intermediate scrutiny the burden is on Defendants to justify their ban on constitutional-protected activity.  *Reese*, 627 F.3d at 802 ("'To pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective.'") (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)); *see also Bonidy*, 2013 WL 3448130, *6 (holding gun ban unconstitutional under intermediate scrutiny).

is "narrowly tailored to serve a compelling governmental interest" and "is necessary to serve the asserted [compelling] interest." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992).

Defendants' ban is in no way tailored. Defendants attack a strawman when they assert that "Plaintiffs provide no support for their contention that the Corps regulation is constitutionally impermissible simply because it applies to firearms carried in motor vehicles." Opp'n at 24. That is not what Plaintiffs argue. Defendants' regulation is unconstitutional because it totally bans carrying firearms—whether carried openly, concealed, or in a vehicle. Br. in Support at 16. The ban is unconstitutional not "simply because it applies to vehicles," but rather because Defendants' outright ban fails to provide for even that modest accommodation of Second Amendment rights. Br. in Support at 12.

Defendants also point to the narrow exceptions in 36 C.F.R. § 327.13 as "moderating limitations," but Defendants fundamentally fail to understand the right that is at stake here. Opp'n at 25. Exceptions for hunting or target shooting, which require firearms to otherwise be unloaded, do nothing to address the interest in self-defense that is the core right protected by the Second Amendment and the basis for Plaintiffs' claims.

Defendants' reference to 36 C.F.R. § 327.13(a)(4) as a "moderating limitation" is astonishing, given the facts of this case. Although subsection (a)(4) gives the District Commander authority to grant permission to possess functional firearms, the facts of this case demonstrate that such relief is purely illusory. Both Plaintiffs requested permission pursuant to 36 C.F.R. § 327.13(a)(4). Both requests were not just denied—they were completely ignored. Br. in Support at 4–5. Moreover, 36 C.F.R. § 327.13(a)(4) contains no guidelines for granting permission, no timeline for making a decision, and no recourse for a denial. The regulation unconstitutionally delegates overly broad discretion to a government official. *See Freedman v.*

17

*Maryland*, 380 U.S. 51, 59 (1965) (exhibition license must issue "within a specified brief period" and "the procedure must also assure a prompt final judicial decision . . . .").  Accordingly, 36 C.F.R. § 327.13 is an outright ban on law-abiding individuals possessing functional firearms on Army Corps of Engineers-administered public lands for the purpose of self-defense. [6]

### D.    The Second Amendment Applies To Corps-Administered Public Lands.

Defendants argue that *United States v. Kokinda*, 497 U.S. 720, 725 (1990), reveals "the primary difficulty with Plaintiffs' arguments supporting [their second] claim."  Opp'n at 16. Defendants reliance on *Kokinda* is flawed in at least three ways:  (1) *Kokinda*'s forum analysis framework is of little utility in this context, because almost no property is dedicated to Second Amendment activity; (2) even if *Kokinda*'s forum analysis applied, Defendants' draconian ban would be unconstitutional; and (3) the majority of courts to consider Second Amendment challenges post-*Heller* have applied heightened scrutiny, *i.e.*, at least intermediate scrutiny.

Defendants place heavy reliance on *Kokinda* for the proposition that the firearms ban is subject to "a lower standard of constitutional scrutiny," because the ban targets government property.  Opp'n at 17.  *Kokinda*, however, employs a forum analysis framework that is entirely inappropriate in the Second Amendment context.  Forum analysis—asking first whether government property has been dedicated to First Amendment activity, and, if not, whether the given regulation is reasonable—makes no sense in the present context because no government property is dedicated to self-defense.  Indeed, the nature of the interest in personal security protected by the Second Amendment demands that the amendment apply where self-defense is

---

[6] It should come as no surprise that the Central Intelligence Agency, 32 C.F.R. §§ 1903.1, 1903.10, or Department of Defense, 32 C.F.R. §§ 234.1, 234.10, may have more substantial security needs than a Corps-administered campground, especially since, unlike a campground, the core functions of these entities do not require them to open their property to the public.  The other regulations Defendants cite do not prohibit storage of a firearm in a vehicle, as 36 C.F.R. § 327.13 does.  Opp'n at 26–26, n.14.

necessary, not just in certain places dedicated to self-defense.  *See* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009) ("[s]ome rights, such as free speech, may be only slightly burdened by laws that bar speech in some places but allow it in many other places.  But self-defense has to take place wherever the person happens to be.").  The very idea of a "Second Amendment zone" is absurd.  *Cf. ISKCON Miami, Inc. v. Metropolitan Dade County*, 147 F.3d 1282, 1290 (11th Cir. 1998) ("[P]ersons wishing to distribute literature are limited to eight areas in the airport designated by the Airport Director as 'First Amendment zones.'").[7]

Nevertheless, even if *Kokinda* applied, courts have acknowledged that an outright ban on constitutional activity on government property—like that imposed by Defendants' firearms ban—would be unconstitutional.  *See Initiative and Referendum Institute v. U.S. Postal Service*, 417 F.3d 1299, 1315 (D.C. Cir. 2005) ("It is clear that a broadscale prohibition against asking postal patrons to sign petitions . . . is unconstitutional even if all postal properties are nonpublic forums.").  Likewise, Defendants may not impose a broadscale prohibition on self-defense.[8]

Finally, reasonableness review would be a peculiar standard to apply here, because courts addressing restrictions on firearms have uniformly applied at least intermediate scrutiny.  *See Masciandaro*, 638 F.3d at 474; *Chester*, 628 F.3d at 679; *Williams*, 616 F.3d at 692; *Skoien*, 614 F.3d at 638; *Marzzarella*, 614 F.3d at 97; *GeorgiaCarry.Org*, 764 F. Supp. 2d at 1319; *but see*

---

[7] Defendants' also cite *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008), but that case involves the government's authority over its own employees.  In contrast to the regulatory authority at issue here, the Supreme Court has "often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large."  *Id.* at 599.  Defendants' reliance on *Engquist* is severely misplaced.

[8] Beyond the label, "reasonableness," Opp'n at 23 n.13, Defendants do not explain what *Kokinda* allows, or how it applies to their firearms ban.

*Ezell*, 651 F.3d at 708 ("All this suggests that a more rigorous showing than that applied in *Skoien* should be required, if not quite 'strict scrutiny.'").

Defendants also look to the Ninth Circuit's decision in *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) (en banc), for support of the proposition that a lesser standard applies. Opp'n at 17. Defendants misapply that case because it was not concerned with the self-defense interests at the core of the Second Amendment—and Plaintiffs' claims here—but rather involved conditions imposed on selling guns on county property. *Nordyke*, 681 F.3d at 1044–45 (approving requirement that firearms sold on county property be secured to prevent unauthorized use, noting "in the present case, [Nordyke] cannot succeed, no matter what form of scrutiny applies to Second Amendment claims."). The panel opinion in *Nordyke* reasoned that "when deciding whether a restriction on gun sales substantially burdens Second Amendment rights, we should ask whether the restriction leaves law-abiding citizens with reasonable alternative means for obtaining firearms sufficient for self-defense purposes." *Nordyke v. King*, 644 F.3d 776, 787 (9th Cir. 2011) (vacated). Defendants' ban does not leave open "reasonable alternative means" to exercise the rights protected by the Second Amendment, it completely obliterates those rights whenever an individual crosses onto Corps-administered public lands.[9]

## IV.    IT IS NOT IS IN THE PUBLIC INTEREST FOR DEFENDANTS TO VIOLATE THE CONSTITUTION.

Defendants' argument that adherence to the Second Amendment would harm the public interest ignores reality. The most damning indictment of Defendants' protests is the fact that 36 C.F.R. § 327.13 allows firearms on Corps-administered lands for hunting and target shooting;

---

[9] Defendants also cite the Property Clause as justifying their firearms ban, but even Congress's so-called "unlimited" power under the Property Clause would not allow it to violate the Second Amendment. *Contra* Opp'n at 16. Nor do Defendants argue that Congress has delegated the full authority of the Property Clause to them. *Id*.

but the regulation requires they be kept unloaded, provides no exception for self-defense, and bans firearms possessed only for self-defense.  There are already guns on Corps-administered lands; the question here is whether Defendants should be allowed to prevent firearms from being used for the core lawful purpose of self-defense.  Accordingly, Defendants' imagined concerns about the safety of their unarmed Park Rangers or their reference without explanation to "security problems for dams, levees, and hydropower facilities," are purely illusory.  Opp'n at 28.  Defendants also complain that rulemaking to bring their regulations into compliance with the Constitution would be burdensome.  Opp'n at 29.  This is no reason to forestall enforcement of constitutional rights.  *See Ezell*, 651 F.3d at 710 (Defendants' concerns  are "entirely speculative and in any event may be addressed by more closely tailored regulatory measures.").

Plaintiffs agree "it is in the public interest to permit the Corps to carry out the duties it has been assigned by Congress, . . . as long as the agency is complying with the law . . . ." Opp'n at 30.  Defendants may be carry[ing] out the[ir] duties," but they are not "complying with the law," i.e, the Constitution.  *Cf. Thalheimer*, 645 F.3d at 1129 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles.").  Defendants never demonstrate why the Second Amendment would prevent them from carrying out their duties.

## **CONCLUSION**

This Court should enjoin Defendants' ban on law-abiding individuals possessing functional firearms on Army Corps of Engineers-administered public lands for the purpose of self-defense.  At a minimum, this Court should enjoin Defendants' ban on Plaintiffs' possession of functional firearms on Army Corps of Engineers-administered public lands for the purpose of self-defense.

21

DATED this 23rd day of September 2013.

Respectfully submitted,


/s/ James M. Manley
James M. Manley, Esq.
(*admitted pro hac vice*)
Steven J. Lechner, Esq.
(*admitted pro hac vice*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com


/s/ John L. Runft
John L. Runft, Esq.
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

Attorneys for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 23rd day of September, 2013, I filed the foregoing

electronically through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joanne P. Rodriguez
Assistant United States Attorney
District Of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Joanne.Rodriguez@Usdoj.gov

/s/ James M. Manley
James M. Manley, Esq.