STUART F. DELERY
Assistant Attorney General
WENDY J. OLSON, Idaho State Bar No. 7634
United States Attorney
JOANNE P. RODRIGUEZ, Idaho State Bar No. 2996
Assistant United States Attorney
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Telephone: (202) 353-3098
Facsimile: (202) 616-8460
Daniel.Riess@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **ELIZABETH E. MORRIS and ALAN C. BAKER,** | **Case No. 3:13-CV-00336-BLW** |
| **Plaintiffs,** | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| **v.** | |
| **U.S. ARMY CORPS OF ENGINEERS, et al.,** | |
| **Defendants.** | |

## <u>TABLE OF CONTENTS</u>

I.  The Court Should Dismiss Plaintiffs' Complaint For Lack of Subject Matter Jurisdiction ...................................................................................1

    A.  Plaintiff Baker's Claims Should Be Dismissed as Moot ........................................1

    B.  Plaintiff Morris's Claims Should Be Dismissed for Lack of Standing ...................................................................................1

II. The Court Should Dismiss Plaintiffs' Complaint for Failure to State a Claim on Which Relief Can Be Granted .......................................................................3

    A.  The Second Amendment Right to Keep and Bear Arms .........................................4

    B.  Because Public Land Managed and Administered by the U.S. Army Corps of Engineers Is a Sensitive Place Under <u>Heller</u>, the Corps Regulation Is Presumptively Lawful ........................................................6

    C.  Even if the Corps Regulation Implicates Plaintiffs' Second Amendment Right, It Is Constitutional.......................................................9

        1.  The Regulation Is a Permissible Regulation Enacted by the U.S. Army Corps of Engineers as the Proprietor of Federal Property...................................................................10

        2.  Even if Heightened Scrutiny Were Applicable, at Most, Intermediate Scrutiny Would Be the Appropriate Level of Review ...................................................................13

        3.  The Corps Regulation Substantially Relates to an Important Governmental Objective ...........................................................15

            a.  Intermediate Scrutiny Review.......................................................15

            b.  The Fit Between the Regulation and the Corps' Important Objectives Satisfies Heightened Review ......................17

CONCLUSION...................................................................20

I.   **The Court Should Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction.**

   A.  **Plaintiff Baker's Claims Should Be Dismissed as Moot.**

   Plaintiff Baker alleged that he had made a reservation to camp at a Corps-administered campground from September 27, 2013 until September 29, 2013.  Compl. ¶ 36 [ECF No. 1]. Because the dates of Plaintiff Baker's reservation have passed, and Plaintiff Baker has made no other credible allegations of certain, impending future injury, the Court should dismiss Plaintiff Baker's claims as moot, because there is no existing injury that the Court can redress.[1]

   The mootness doctrine is based on the Constitution's case-or-controversy requirement. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000) (citing U.S. Const. art. III, § 2).  A case is moot if the issues are no longer live and the court is unable to grant effective relief.  Am. Cas. Co. of Reading, Pa. v. Baker, 22 F.3d 880, 896 (9th Cir. 1994).  Thus, even if there is a live controversy when the case is filed, courts should refrain from deciding issues "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (internal quotation marks omitted).  Here, Plaintiff Baker's reservation to camp at a Corps-administered campground has expired, thereby mooting his claim.  Plaintiff Baker's claims should thus be dismissed.

   B.  **Plaintiff Morris's Claims Should Be Dismissed for Lack of Standing.**

   "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'"  Allen v. Wright, 468 U.S. 737, 750 (1984).  In the absence of an actual case or controversy, the Court lacks jurisdiction to decide the case.  See Warth v. Seldin,

---

[1] At the very least, neither plaintiff has demonstrated the likelihood of imminent irreparable harm that is necessary to obtain a preliminary injunction from the Court.  See Mem. Opp. Pl. Mot. for Prelim. Inj. [ECF No. 18] at 4-10.

422 U.S. 490, 499 (1975); see also Poe v. Ullman, 367 U.S. 497, 502 (1961).  The requirement

that a litigant possess standing to sue "is an essential and unchanging part of the case-or-

controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

(1992).  "To establish Article III standing, an injury must be concrete, particularized, and actual

or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."

Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (citations and internal punctuation

omitted).  The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly*

*impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not

sufficient."  Id. at 1147 (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)) (emphasis in

Clapper).

　　　　Plaintiff Morris has made no such showing of "certainly impending" injury here.

Instead, she has merely alleged that "[i]n summer 2012, she used Corps-administered public

lands approximately 1-2 times a week.  She has done exactly the same in summer 2013 and plans

to continue to do so in the future."  Compl. ¶ 39 [ECF No. 1].  Plaintiff Morris's allegation is that

she plans to be present on some unspecified property administered by the Corps on some

unspecified day.  This amounts to precisely the kind of "'some day' intentions – without any

description of concrete plans, or indeed even any specification of *when* the some day will be,"

that are inadequate to show an actual or imminent injury.  Lujan, 504 U.S. at 564 (emphasis in

original).  Additionally, Plaintiff Morris's past use of Corps-administered public lands does not

establish the existence of a case or controversy.  See O'Shea v. Littleton, 414 U.S. 488, 495-96

(1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy

regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

Under the O'Shea standard, Plaintiff Morris's past exposure to alleged harm does not confer

Article III standing.  Accordingly, her claims should be dismissed because she lacks standing to assert those claims.[2]

## II.     The Court Should Dismiss Plaintiffs' Complaint for Failure to State a Claim on Which Relief Can Be Granted.

As explained above, the Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiff Baker's claims are moot, and both plaintiffs lack standing to assert their claims. But even if the Court were to find it has jurisdiction over this suit, Plaintiffs have not stated a claim on which this Court can grant relief, and the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs assert two claims for relief under the Second Amendment to the U.S. Constitution.  See Compl. ¶¶ 46-55 [ECF No. 1].  When evaluating Second Amendment claims, courts begin by asking whether the challenged law regulates conduct that falls within the scope of the Second Amendment's protection.  As explained below, the Corps regulation does not, because it restricts the carrying of firearms in sensitive places and does not impose a substantial burden on Plaintiffs.  In any event, even if the regulation did implicate conduct protected by the Second Amendment, it easily survives the "reasonableness" test employed by courts reviewing regulations enacted by the government in its capacity as proprietor of government property, or even the somewhat more stringent intermediate scrutiny test employed by numerous courts evaluating other types of firearms regulations.  Thus, even if the Court did possess subject matter jurisdiction, it should dismiss this case because Plaintiffs have not stated a claim on which this Court can grant relief.

---

[2] Furthermore, for the same reasons that Plaintiff Morris cannot show a certainly-impending future injury, Plaintiff Baker does not have standing to seek injunctive relief regarding hypothetical future travel.  See Clapper, 133 S. Ct. at 1147 (requiring alleged injury to be "certainly impending" to establish standing); City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (requiring "real and immediate threat of repeated injury") (citation omitted).

**A.  The Second Amendment Right to Keep and Bear Arms**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court held that a "ban on handgun possession in the home" and "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" violated the Second Amendment.  Id. at 635.  But the Court repeatedly emphasized that "the right was not unlimited."  Id. at 595 ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak *for any purpose*.") (emphases in original).  The Court noted that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  Id. at 635; see also McDonald v. City of Chicago, 130 S. Ct. 3020, 3044 (2010) (plurality opinion) (stating that the "central holding in Heller" is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home").  Heller made clear that laws forbidding firearms in sensitive places, along with other regulatory restrictions on the possession of firearms and conditions on the commercial sale of arms, do not generally violate the Constitution.  The Court explained: "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or *laws forbidding the carrying of firearms in sensitive places* such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  Heller, 554 U.S. at 626-27 (emphasis added).  And the Court specifically noted that those "presumptively lawful regulatory measures" were merely examples, and that the list "does not purport to be

4

exhaustive."  Id. at 627 n.26.

Since Heller, courts have employed a range of approaches to adjudicate Second

Amendment challenges.  Following Heller's guidance, many courts have begun by determining

whether the statute or regulation at issue implicates conduct protected by the Second

Amendment.  See Nat'l Rifle Ass'n of Am. v. ATF, 700 F.3d 185, 194 (5th Cir. 2012) (citing

cases), pet. for cert. filed.  Other courts, such as the Ninth Circuit, have passed on the

constitutionality of various firearms restrictions without expressly determining whether the

Second Amendment was implicated or what level of scrutiny applied.[3]  Courts that have reached

the issue of what standard of review to apply generally have employed intermediate scrutiny, or a

standard close to that, for laws regulating the place in which an individual may carry a firearm.[4]

---

[3] See, e.g., Nordyke v. King, 681 F.3d 1041, 1044-45 (9th Cir. 2012) (en banc) (finding that a
county ordinance requiring firearms to be secured at gun shows on county fairgrounds was
"reasonable," and therefore passed constitutional muster, without deciding the precise standard
of review); United States v. Dorosan, 350 F. App'x 874, 876 (5th Cir. 2009) (as applied to
defendant, Postal Service regulation prohibiting carrying of firearms on postal property, was not
"unconstitutional under any applicable level of scrutiny"), cert. denied, 559 U.S. 983 (2010);
Hall v. Garcia, No. 10-3799, 2011 WL 995933, at *4 (N.D. Cal. March 17, 2011) ("Under any of
the potentially applicable levels of scrutiny . . . , the Gun-Free School Zone Act constitutes a
constitutionally permissible regulation of firearms in public areas in or near schools.").

[4] See Peterson v. Martinez, 707 F.3d 1197, 1220 (10th Cir. 2013) (applying intermediate scrutiny
to law conditioning ability to carry a concealed weapon outside of the home on state residency);
Kachalsky v. County of Westchester, 701 F.3d 81, 96 (2d Cir. 2012) (applying intermediate
scrutiny to law requiring demonstration of "proper cause" to obtain license to carry a concealed
handgun in public), cert. denied, 133 S. Ct. 1806 (2013); United States v. Masciandaro, 638 F.3d
458, 471 (4th Cir. 2011) (applying intermediate scrutiny to federal regulation prohibiting
carrying or possessing a loaded handgun in a motor vehicle within a national park area), cert.
denied, 132 S. Ct. 756 (2011); Drake v. Filko, __ F.3d __, 2013 WL 3927735, at *7 (3d Cir. July
31, 2013) (applying intermediate scrutiny to law requiring demonstration of justifiable need to
carry handgun in public); Woollard v. Gallagher, 712 F.3d 865, 876 (4th Cir. 2013) (intermediate
scrutiny appropriate to review law conditioning eligibility for permit to carry, wear, or transport
a handgun in public on demonstration of "good and substantial reason" to do so), cert. denied,
82 U.S.L.W. 3065 (Oct. 15, 2013).

**B. Because Public Land Managed and Administered by the U.S. Army Corps of Engineers Is a Sensitive Place Under <u>Heller</u>, the Corps Regulation Is Presumptively Lawful.**

Because the Corps regulation is a "law[] forbidding the carrying of firearms in [a] sensitive place[]," <u>Heller</u>, 554 U.S. at 626, it addresses conduct that falls outside the scope of the Second Amendment's protection.  <u>See</u> <u>United States v. Marzzarella</u>, 614 F.3d 85, 91-92 (3d Cir. 2010) (concluding, after extensive analysis, that the presumptively lawful regulatory measures identified in <u>Heller</u> concern "exceptions to the right to bear arms" to which "the Second Amendment affords no protection"), <u>cert. denied</u>, 131 S. Ct. 958 (2011).  A number of courts, including courts in this Circuit, have relied on <u>Heller</u> to uphold restrictions on firearms in sensitive places.[5]

Although the Second Amendment "protects a right to keep and bear arms for individual self-defense, it does not contain an entitlement to bring guns onto government property." <u>Nordyke v. King</u>, 563 F.3d 439, 459 (9th Cir. 2009), <u>vacated</u>, 611 F.3d 1015 (9th Cir. 2010).[6]

---

[5] <u>See</u> <u>Warden v. Nickels</u>, 697 F. Supp. 2d 1221, 1224 (W.D. Wash. 2010) (park facilities); <u>United States v. Davis</u>, 304 Fed. App'x 473, 474 (9th Cir. 2008) (aircraft); <u>Dorosan</u>, 350 F. App'x at 875 (government-owned postal property); <u>United States v. Masciandaro</u>, 648 F. Supp. 2d 779, 790 (E.D. Va. 2009) (motor vehicles on national park land), <u>aff'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 638 F.3d 458 (4th Cir. 2011); <u>Embody v. Ward</u>, No. 10-126, 2011 WL 2971055, at *10-11 (M.D. Tenn. July 20, 2011) (public park), <u>aff'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 695 F.3d 577 (6th Cir. 2012); <u>DiGiacinto v. Rector & Visitors of George Mason Univ.</u>, 704 S.E.2d 365, 369-70 (Va. 2011) (college campus); <u>but</u> <u>see</u> <u>Bonidy v. U.S. Postal Serv.</u>, No. 10-2408, 2013 WL 3448130, at *3-4 (July 9, 2013) (post office building, but not post office parking lot, is a sensitive place), <u>appeals</u> <u>docketed</u>.

[6] The court first held, after a lengthy analysis, that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it against the states and local governments.  <u>Nordyke</u>, 563 F.3d at 457.  The Ninth Circuit later vacated that decision and remanded to the panel for further consideration in light of <u>McDonald v. City of Chicago</u>. <u>Nordyke v. King</u>, 611 F.3d 1015 (9th Cir. 2010).  Nevertheless, the Ninth Circuit's analysis of the "sensitive places" doctrine is instructive.  <u>See</u> <u>Texeira v. County of Alameda</u>, No. 12-3288, 2013 WL 707043, at *5 n.2 (N.D. Cal. Feb. 26, 2013) ("Although its original decision is vacated, the panel's analysis of laws regulating guns in sensitive places has been recognized by other

"[O]pen space venues, such as County-owned parks, recreational areas, [and] historic sites * * * * fit comfortably within the same category as schools and government buildings" expressly addressed in <u>Heller</u> because they are "gathering places where high numbers of people might congregate." <u>Id.</u> at 459-60; <u>see also</u> <u>Doe v. Wilmington Hous. Auth.,</u> 880 F. Supp. 2d 513, 531 (D. Del. 2012) ("Open-space venues, where large numbers of people might congregate, as well as places used for government business or important to government functioning, have also been found to be sensitive places.") (citing <u>Nordyke</u>, 563 F.3d at 460).

Corps-administered public lands are large, open public spaces in which large numbers of people may congregate. The Corps manages 422 projects (mostly lakes) in 43 states and is the steward of 12 million acres of land and water used for recreation, with 54,879 miles of shoreline. <u>See</u> U.S. Army Corps of Engineers, Information Paper, Subject: Civil Works Program Statistics (March 20, 2012) ("Information Paper") (attached as Ex. 1).[7] More than 90% of the lakes that support Corps-managed projects are located near metropolitan areas, <u>id.</u>, and roughly 80% of Corps recreation areas are within 50 miles of an urban area. Congressional Research Service, Firearms at Army Corps Water Resources Projects: Proposed Legislation and Issues for

---

courts.") (citing <u>Brown v. United States</u>, 979 A.2d 630, 641 (D.C. 2009); <u>Masciandaro</u>, 648 F. Supp. 2d at 790-91).

[7] Defendants respectfully request that the Court take judicial notice of the cited statements from the Information Paper and CRS Report, and of the fact that the Department of Homeland Security has characterized of dams and related structures as "critical infrastructure," under Fed. R. Evid. 201. Documents that are properly the subject of judicial notice may be considered together with the complaint when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). <u>Dreiling v. Am. Exp. Co.,</u> 458 F.3d 942, 946 n.2 (9th Cir. 2006) (citing <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986)). A court may take judicial notice of undisputed matters of public record when deciding a motion to dismiss under Rule 12(b)(6). <u>Lee v. Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal quotations omitted).

Congress (July 12, 2012) ("CRS Report"), at 1 (attached as Ex. 2).[8]  Corps-managed projects receive 370 million visits per year, making its projects the most visited of any single federal agency's sites.  See Ex. 1.  Ten percent of the U.S. population visits a Corps-managed project at least once a year.  Id.  The Corps hosts 20% of all visits to federal recreation areas on just 2% of the federal land base.  Id.

Moreover, Corps-managed projects open to the public for recreation include projects containing important infrastructure such as dams and levees.  Id.  The Corps owns and operates 702 dams and 227 navigational locks, and has built or controls 14,501 miles of levees.  Id.  The U.S. Department of Homeland Security's Office of Inspector General has characterized "[d]ams and related structures," including those operated and managed by the Corps, as "critical infrastructure," given that "one catastrophic failure at some locations could affect populations exceeding 100,000 and have economic consequences surpassing $10 billion."  Department of Homeland Security, Office of Inspector General, DHS Risk Assessment Efforts in the Dams Sector (2011), at 1, 2;[9] see also CRS Report at 3 ("The Corps and the U.S. Department of Homeland Security regard some Corps infrastructure as critical to homeland security and the economy; these structures include multi-purpose dams and major navigation locks.") (footnote omitted).  Many of these Corps-managed facilities "require additional protection measures in times of heightened homeland security concerns."  CRS Report at 3.

Because Corps-administered public land, including the Idaho land at issue in this case, is open public space in which large numbers of people may congregate, and because important infrastructure such as dams and levees is located on this land, it is a "sensitive place" under

---

[8] CRS issued an updated version of this Report on September 4, 2013, which is available at https://www.hsdl.org/?view&did=745155.

[9] *Available at* http://www.oig.dhs.gov/assets/Mgmt/OIG_11-110_Sep11.pdf.

<u>Heller</u>.  Therefore, the restriction on the possession of firearms is "presumptively lawful," 554 U.S. at 626-27, and the Court should uphold the regulation on that basis.

### C.  Even if the Corps Regulation Implicates Plaintiffs' Second Amendment Right, It Is Constitutional.

As an initial matter, even if the Court were to find that the Army Corps regulation implicates Second Amendment protections, it need not engage in heightened constitutional scrutiny.  "[N]ot every limitation or incidental burden on the exercise of" a constitutionally-protected right "is subject to a stringent standard of review."  <u>Bullock v. Carter</u>, 405 U.S. 134, 143 (1972) (citation omitted). [10]  As the Second Circuit has explained, "heightened scrutiny is triggered only by those restrictions that (like the complete prohibition struck down in <u>Heller</u>) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)."  <u>United States v. DeCastro</u>, 682 F.3d 160, 166 (2d Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 838 (2013).  Here, the Corps regulation only pertains to the carrying of firearms on designated federal property, and restricting the carrying of firearms by Plaintiffs during occasional recreational visits to Corps-managed public land does not represent a substantial burden.  Moreover, the Corps regulation allows visitors to carry unloaded firearms on Corps-managed lands, and to possess loaded firearms (1) when the District Commander has provided written permission; (2) at authorized shooting ranges; (3) when being used for hunting and fishing (except where expressly prohibited).  36 C.F.R. § 327.13(a).

---

[10] <u>See also</u>, <u>e.g.</u>, <u>Zablocki v. Redhail</u>, 434 U.S. 374, 386 (1978) ("[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."); <u>Califano v. Jobst</u>, 434 U.S. 47, 48, 57 (1977) (using minimal rationality standard of review to uphold Social Security law that did not "significantly discourage[], let alone ma[k]e practically impossible" the right to marry), <u>quoted</u> <u>in</u> <u>Zablocki</u>, 434 U.S. at 386; <u>Gonzales v. Carhart</u>, 550 U.S. 124, 157-58 (2007) ("The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to [exercise a constitutional right] cannot be enough to invalidate it.").

Because the Army Corps regulation does not come close to the complete prohibition at issue in Heller, the Court need not employ heightened scrutiny to uphold the regulation.  Even assuming that heightened scrutiny were to apply, however, the regulation passes constitutional muster.

> **1.   The Regulation Is a Permissible Regulation Enacted by the U.S. Army Corps of Engineers as the Proprietor of Federal Property.**

If the Court were to determine that the Army Corps regulation imposes a substantial burden on conduct protected by the Second Amendment, it should evaluate that law under the appropriate level of constitutional scrutiny.  See Marzzarella, 614 F.3d at 89.  "'The Second Amendment can trigger more than one particular standard of scrutiny, depending, at least in part, upon the type of law challenged and the type of Second Amendment restriction at issue.'" United States v. Call, 874 F. Supp. 2d 969, 976 (D. Nev. 2012) (quoting United States v. Reese, 627 F.3d 792, 801 (10th Cir. 2010)) (internal alterations omitted); accord Drake v. Filko, __ F.3d __, 2013 WL 3927735, at *6 (3d Cir. July 31, 2013); Peterson v. Martinez, 707 F.3d 1197, 1217 (10th Cir. 2013).  Here, because the U.S. Army Corps of Engineers was acting in its proprietary capacity when it enacted the challenged regulation, its action is subject to a lower standard of constitutional scrutiny, and the regulation satisfies that standard.

"It is a long-settled principle that governmental actions are subject to a lower level of [constitutional] scrutiny when the governmental function operating is not the power to regulate or license, as lawmaker, but, rather, as proprietor, to manage its internal operations."  United States v. Kokinda, 497 U.S. 720, 725 (1990) (plurality opinion) (citation and internal punctuation omitted); see also Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 598 (2008) (observing, in the context of equal protection claim against government employer, that "there is a crucial difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage its

internal operation") (internal punctuation omitted).  In upholding a county ordinance regulating

the sale of firearms "only on County property" against a Second Amendment challenge, the

Ninth Circuit pointedly cited <u>Kokinda</u> and <u>Engquist</u> for their respective statements about the

different level of constitutional scrutiny afforded to the government when acting as proprietor.

<u>See</u> <u>Nordyke v. King</u>, 681 F.3d 1041, 1044-45 (9th Cir. 2013) (en banc).  The Ninth Circuit thus

considers firearms regulations to be subject to a lower standard of constitutional scrutiny when

the government is regulating conduct on property it owns.

 Nor is the Ninth Circuit alone in recognizing the special role of the government when it

enacts firearms regulations in its role as proprietor.  In upholding a regulation prohibiting the

carrying or possession of loaded handguns in a motor vehicle in a national park, the Fourth

Circuit noted the government's "substantial interest in providing for the safety of individuals

who visit and make use of the national parks," explaining: "The government, after all, is invested

with 'plenary power' to protect the public from danger on federal lands under the Property

Clause.  <u>See</u> U.S. Const. art. IV, § 3, cl. 2 (giving Congress the power to 'make all needful Rules

and Regulations respecting the Territory or other Property belonging to the United States')."

<u>United States v. Masciandaro</u>, 638 F.3d 458, 473 (4th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 756

(2011).  <u>See also</u> <u>United States v. Dorosan</u>, 350 F. App'x 874, 875 (5th Cir. 2009) (U.S. Postal

Service's "restrictions on guns stemmed from its constitutional authority as the property owner"

of the land to which the restriction applied), <u>cert. denied</u>, 559 U.S. 983 (2010); Eugene Volokh,

<u>Implementing the Right to Keep and Bear Arms for Self-Defense</u>, 56 UCLA L. Rev. 1443, 1475

(2009) ("Nevertheless, there is both precedent and reason for allowing the government acting as

proprietor extra power to restrict the exercise of many constitutional rights on its property.  This

suggests that separate government-as-proprietor standards may likewise be proper for the right to

keep and bear arms, whether in government buildings, by government employees, in government-owned parks, in government-owned housing, and so on.") (footnote omitted).

Where, as here, the government is "acting in its proprietary capacity," its action is valid "unless it is unreasonable, arbitrary, capricious, or invidious."  Kokinda, 497 U.S. at 725-26 (citation and internal punctuation omitted); see also id. at 737, 740 (concluding that regulation prohibiting "[s]oliciting alms and contributions on postal premises" "passes constitutional muster under the Court's usual test for reasonableness") (internal citations omitted); Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 679-80, 683 (1992) (noting that "government – like other property owners – has power to preserve the property under its control for the use to which it is lawfully dedicated" and finding "no doubt" that restriction on solicitation in government-operated airport passes muster under "reasonableness" test) (citations omitted). "A regulation is reasonable if it is consistent with the government's legitimate interest in maintaining the property for its dedicated use."  Initiative & Referendum Inst. v. U.S. Postal Serv., 685 F.3d 1066, 1073 (D.C. Cir. 2012) (citing Perry Educ. Ass'n v. Perry Local Educators Ass'n, 460 U.S. 37, 50-51 (1983)) (holding that regulation banning collection of signatures on interior post office sidewalks did not violate First Amendment's free speech clause).  "And the restriction 'need only be reasonable; it need not be the most reasonable or the only reasonable limitation.'"  Id. (emphasis in original) (quoting Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 808 (1985)).

The Corps promulgated the regulation here under its constitutional and statutory authority to issue "such rules and regulations as the Secretary of the Army may deem necessary" to administer the public use of park and recreational facilities at water resource development projects under the Army's control.  16 U.S.C. § 460d.  This authority includes the ability to

"prohibit[] any 'use' of the lands . . .  which is determined by the Secretary of the Army to be 'contrary to the public interest."  South Dakota v. Bourland, 508 U.S. 679, 690 (1993).  "Beyond doubt, the Property Clause authorizes the enactment and enforcement of regulations which . . . are designed to maintain safety and order on government property."  United States v. Gliatta, 580 F.2d 156, 160 (5th Cir. 1978).  The Corps regulation is particularly reasonable in light of the fact that when it manages public land, the United States "exercises the powers both of a proprietor and of a legislature."  Kleppe v. New Mexico, 426 U.S. 529, 540 (1976) (citations omitted); see also United States v. Gardner, 107 F.3d 1314, 1318 (9th Cir. 1997) ("The Supreme Court has consistently recognized the expansiveness of [the Property Clause] power, stating that '[t]he power over the public land thus entrusted to Congress is without limitations.'") (quoting Kleppe, 426 U.S. at 539) (citing cases); Light v. United States, 220 U.S. 523, 536 (1911) ("The United States can prohibit absolutely or fix the terms on which its property may be used. . . . These are rights incident to proprietorship, to say nothing of the power of the United States as a sovereign over the property belonging to it.").

The Corps enacted the regulation at issue here to protect the safety of individuals who recreate on the public land owned and administered by the U.S. Army, and the regulation is not "unreasonable, . . . arbitrary, capricious, or invidious."  Kokinda, 487 U.S. at 726.  Accordingly, the Court should uphold the Corps regulation as a permissible regulation of the government's use of its own property.

### 2.  Even if Heightened Scrutiny Were Applicable, at Most, Intermediate Scrutiny Would Be the Appropriate Level of Review.

Even if this Court were to apply a more rigorous level of review, the Corps regulation would pass constitutional muster.  "The Ninth Circuit has not yet established what standard of review should be applied to Second Amendment challenges."  Nichols v. Brown, No. 11-9916,

2013 WL 3368922, at *5 (C.D. Cal. July 3, 2013); accord Young v. State of Hawaii, 911 F.

Supp. 2d 972, 990 (D. Haw. 2012).  However, most courts, including district courts in this

Circuit, have applied an intermediate standard of review to Second Amendment challenges.

See Young, 911 F. Supp. 2d at 990-91 ("Federal district courts in the Ninth Circuit have applied

the intermediate scrutiny standard for the Second Amendment context crafted by the Third

Circuit Court of Appeals.") (citing Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 1116

(S.D. Cal. 2010) (applying intermediate scrutiny to county policy requiring showing of good

cause to carry a concealed weapon in public)); Nichols, 2013 WL 3368922, at *5-6 (applying

intermediate scrutiny to California laws and municipal ordinances prohibiting the open carrying

of a firearm for self-defense in "non-sensitive" public spaces).

Courts addressing restrictions on the possession of firearms outside the home such as the

Corps regulation have almost uniformly declined to apply a standard above intermediate

scrutiny.[11]  As one court in this Circuit has noted: "Many courts have applied intermediate

scrutiny to laws burdening protected conduct that falls outside the core Second Amendment right

of a law-abiding citizen to possess weapons for self defense in the home."  Young, 911 F. Supp.

2d at 990 (citing Masciandaro, 638 F.3d at 470-71; Piszczatoski v. Filko, 840 F. Supp. 2d 813,

834 (D.N.J. 2012), aff'd sub nom. Drake v. Filko, __ F.3d __, 2013 WL 3927735 (3d Cir. July

---

[11] See Drake, __ F.3d __, 2013 WL 3927735, at *6-7 (applying intermediate scrutiny to law
requiring showing of justifiable need to carry handguns in public); Kachalsky, 701 F.3d at 93-94
(applying intermediate scrutiny to law requiring showing of proper cause to carry concealed
handgun in public); Woollard, 712 F.3d at 874-83 (applying intermediate scrutiny to state
requirement that permit to carry, wear, or transport a handgun in public must be conditioned on
showing of "good and substantial reason"); Nat'l Rifle Ass'n, 700 F.3d at 205-11 (applying
intermediate scrutiny to law restricting sales of handguns to 18-to-20 year old individuals);
Heller v. Dist. of Columbia ("Heller II"), 670 F.3d 1244, 1257-58, 1261-64 (D.C. Cir. 2011)
(applying intermediate scrutiny to laws requiring firearms registration, and prohibiting the
possession of certain semi-automatic rifles and magazines holding more than ten rounds);
Masciandaro, 638 F.3d at 470-71 (applying intermediate scrutiny to federal regulation
prohibiting the possession of a loaded handgun in a motor vehicle on national park land).

31, 2013)).  Courts have explained the decision to employ intermediate scrutiny for such laws by noting that "outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense."  Kachalsky, 701 F.3d at 94 (quoting Masciandaro, 638 F.3d at 470).[12]  Consistent with this case law, to the extent that any heightened review is appropriate here, the Court should apply at most intermediate scrutiny.

### 3. The Corps Regulations Substantially Relates to an Important Governmental Objective.

#### a. Intermediate Scrutiny Review

"[I]ntermediate scrutiny requires the asserted governmental end to be more than just legitimate; it must be either 'significant,' 'substantial,' or 'important,' and it requires the 'fit between the challenged regulation and the asserted objective be reasonable, not perfect.'" Peruta, 758 F. Supp. 2d at 1117 (quoting Marzzarella, 614 F.3d at 98).  In applying intermediate scrutiny to the Corps regulation, several relevant factors should influence this Court's review. First, "[i]n contrast with strict scrutiny, intermediate scrutiny, by definition, allows the government to paint with a broader brush."  Id.  Under intermediate scrutiny, "the fit between the challenged regulation and the asserted objective need only be reasonable, not perfect."  Schrader v. Holder, 704 F.3d 980, 990 (D.C. Cir. 2013) (internal punctuation omitted), pet. for cert. filed.

Second, in order to advance its compelling interests in combating crime and protecting public safety, policymakers may need to make "predictive judgments" about the risk of dangerous behavior.  Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 665 (1994).  Such

---

[12] See also Peterson, 707 F.3d at 1218 ("At the second stage of this two-part analysis, several courts have considered whether the regulation at issue impacts the 'core' of the Second Amendment right which is often described as that of 'law-abiding, responsible citizens to use arms in defense of hearth and home.'") (citing cases); Woollard, 712 F.3d at 876 ("In Masciandaro, we announced that intermediate scrutiny applies to laws that burden any right to keep and bear arms outside of the home.") (citation and internal punctuation omitted).

judgments are entitled to "substantial deference" by the courts.  Id.  Moreover, the primary role in making such judgments properly falls to the legislative or executive branches, not the courts, because policymakers are "far better equipped than the judiciary" to collect, weigh, and evaluate the relevant evidence, and to formulate appropriate policy in response.  Id. at 665-66.  In addition, "[s]ound policymaking often requires [policymakers] to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable."  Id. at 665.

Third, under intermediate scrutiny, the government "does not bear the burden of providing evidence that rules out every theory . . . inconsistent with its own."  City of Los Angeles v. Alameda Books, 535 U.S. 425, 437 (2002).  Nor is the government limited to the "least restrictive means" of achieving its end or the "single best disposition" but rather "one whose scope is in proportion to the interest served."  Bd. of Trs. of State Univ. of New York v. Fox, 492 U.S. 469, 480 (1989) (internal citations omitted).  In other words, the government "need not adopt the most narrowly tailored means available."  Initiative & Referendum Inst., 685 F.3d at 1073; see also Kachalsky, 701 F.3d at 97 ("Unlike strict scrutiny review, we are not required to ensure that the [government's] chosen means is 'narrowly tailored' or the least restrictive available means to serve the stated governmental interest.") (citation and internal punctuation omitted).

Finally, "[t]he Constitution does not mandate a specific method by which the government must satisfy its burden under heightened judicial scrutiny."  United States v. Carter, 669 F.3d 411, 418 (4th Cir. 2012).  As the Supreme Court has explained, the "quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised."  Nixon v. Shrink Missouri

16

Gov't PAC, 528 U.S. 377, 391 (2000).  The Court has upheld restrictions on speech, even under a strict scrutiny standard of review, in some cases relying "solely on history, consensus, and 'simple common sense.'"  Florida Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995) (citations omitted); see also Milavetz, Gallop & Milavetz v. United States, 130 S. Ct. 1324, 1340 (2010) (rejecting notion that government must adduce evidence to justify restriction on speech and noting "[w]hen the possibility of deception is as self-evident as it is in this case, we need not require the State to conduct a survey of the public before it may determine that the advertisement had a tendency to mislead") (internal alterations and citations omitted).  The Corps regulation must only satisfy this intermediate level of scrutiny and, as set forth below, it does so.

### b.  The Fit Between the Regulation and the Corps' Important Objectives Satisfies Heightened Review.

Here, the Corps undoubtedly has an important – indeed, compelling – interest in promoting order and public safety on the land it manages, and in protecting visitors from the risk of firearm violence.  The Supreme Court has stated repeatedly that "the government's interest in preventing crime . . . is both legitimate and compelling."  United States v. Salerno, 481 U.S. 739, 749 (1987) (citation omitted); see also Schall v. Martin, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (citations and quotation marks omitted); Masciandaro, 638 F.3d at 473 (government has a substantial, even compelling, interest in "providing for the safety of individuals who visit and make use of the national parks," which include "area[s] where large numbers of people, including children, congregate for recreation"); United States v. Skoien, 614 F.3d 638, 642 (7th Cir. 2010) (en banc) ("no one doubts that the goal of . . . preventing armed mayhem, is an important governmental objective").

The Corps' justification for this important regulation is neither novel nor implausible.

17

Although Congress has provided the Corps with the authority to regulate conduct at Corps-managed projects, it has not provided the Corps with authority to perform many typical law enforcement functions, including carrying firearms, making arrests, or executing search warrants. CRS Report at 4.  Rather, full police power at Corps projects, including the ability to enforce state and local laws and to place persons under arrest, is exercised solely by state and local authorities.  Id.  The Corps lacks the authority to allow these state and local authorities to enforce federal laws or regulations at Corps-managed projects, including federal firearms laws.  Id. Consequently, "[p]art of the way that the Corps has maintained public safety and infrastructure security at its projects with this limited law enforcement authority has been to restrict the public's authority to carry loaded firearms."  Id.

But these restrictions are limited in scope.  The Corps permits visitors to carry unloaded firearms on Corps-managed lands, and to possess loaded firearms (1) when the District Commander has provided written permission; (2) at authorized shooting ranges; (3) when being used for hunting and fishing (except where expressly prohibited).  36 C.F.R. § 327.13(a).  The Corps regulation is thus similar to other "place" regulations on firearms possession upheld against Second Amendment challenges, including by courts in this Circuit.  See Warden v. Nickels, 697 F. Supp. 2d 1221, 1224, 1228-30 (W.D. Wash. 2010) (upholding against state constitutional challenge rule prohibiting carrying concealed or openly displaying firearms in parks facilities in Seattle where children are likely to be present); Young, 911 F. Supp. 2d at 990 ("Unlike the law held unconstitutional in McDonald, 130 S. Ct. 3020, which operated as a complete ban, or Ezell [v. City of Chicago, 651 F.3d 684 (7th Cir. 2011)], which burdened gun ownership for self-defense in the home, Hawaii's Firearm Carrying Laws allow firearms to be carried in public between specified locations or with a showing of special need.").

The Corps regulation does not impose novel restrictions; rather, it is similar to other federal statutes and regulations that restrict the carrying of firearms on government property. Under 18 U.S.C. §§ 930(a) and (d)(3), most individuals are barred from possessing a "firearm or other dangerous weapon in a Federal facility," except for "lawful carrying of firearms or other dangerous weapons . . . incident to hunting or other lawful purposes."  Similar to 18 U.S.C. § 930, the Corps regulation permits the carrying of firearms incident to hunting or fishing (including permitting the carrying of unloaded firearms when being transported to, from, or between hunting and fishing sites).  36 C.F.R. § 327.13(a)(2).  Section 930 allows for the prohibition of firearms in any "Federal facility," as well as on the grounds "appurtenant to such building."  See 18 U.S.C. § 930(f) ("Nothing in this section limits the power of a court of the United States to punish for contempt or to promulgate rules or orders regulating, restricting, or prohibiting the possession of weapons within any building housing such court or any of its proceedings, or *upon any grounds appurtenant to such building*.") (emphasis added).  See, e.g., 32 C.F.R. §§ 1903.1, 1903.10 (Central Intelligence Agency) (prohibiting "[k]nowingly possessing or causing to be present a weapon on an Agency installation," including "incident to hunting or other lawful purposes," defined as "property within the Agency Headquarters Compound and the property controlled and occupied by the Federal Highway Administration located immediately adjacent to such Compound, and property within any other Agency installation and protected property (i.e., property owned, leased, or otherwise controlled by the Central Intelligence Agency")); 32 C.F.R. §§ 234.1, 234.10 (Department of Defense) (prohibiting "possessing, carrying, or using" a weapon while on the "Pentagon Reservation," defined as "Area of land and improvements thereon . . . includ[ing] all roadways, walkways,

19

waterways, and all areas designated for the parking of vehicles").[13]

In summary, for the reasons stated above, the Corps regulation substantially relates to the indisputably important government interest of protecting the public and reducing violent crime. It therefore satisfies the requirements of intermediate scrutiny analysis.[14]

## CONCLUSION

The Corps regulation is a "presumptively lawful" prohibition on "the carrying of firearms in sensitive places," as described in <u>Heller</u>, 554 U.S. at 626.  Moreover, the Corps regulation does not preclude conduct that is protected by the Second Amendment and would pass muster under any level of constitutional scrutiny in any event.  The Court should thus dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim.

Dated:  November 1, 2013                    Respectfully submitted,

                                            STUART F. DELERY
                                            Assistant Attorney General

---

[13] <u>See</u> <u>also</u> 31 C.F.R. § 407.13 (Department of Treasury) ("No person while on the property shall carry firearms, or other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."); 38 C.F.R. § 1.218(a)(13) (Department of Veterans Affairs) ("No person while on property shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."); 36 C.F.R. § 504.14 (Smithsonian Institution Building and Grounds) ("No person while on the premises shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes.").  Additionally, civilians who are legally authorized to possess a firearm when visiting certain Army facilities for recreational hunting and target shooting must carry the firearm unloaded, and not concealed, except when they are actually engaged in hunting or target shooting.  <u>See</u> 32 C.F.R. §§ 552.103 (Fort Stewart, Georgia), 552.129 (Fort Gordon, Georgia).

[14] Although the complaint appears to challenge the Corps regulation as applied to Plaintiffs Baker and Morris, the prayer for relief seeks to "[p]ermanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing 36 C.F.R. § 327.13."  Compl. [ECF No. 1] at Prayer for Relief ¶ C.  Such a remedy would only be proper if Plaintiffs were challenging the Corps regulation as unconstitutional on its face, but any such claim is time-barred because the regulation was promulgated in 1973, and was last amended in 2000.  <u>See</u> <u>Ctr. for Biological Diversity v. Salazar</u>, 695 F.3d 893, 904 (9th Cir. 2012); <u>Wind River Mining Corp. v. United States</u>, 946 F.2d 710, 715 (9th Cir. 1991).

WENDY J. OLSON
United States Attorney

JOANNE RODRIGUEZ
Assistant United States Attorney

  /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2013, I caused the foregoing document

to be served via electronic case filing.

  /s/ Daniel Riess
Daniel Riess

21