James M. Manley, Esq. (CO No. 40327)
(*admitted pro hac vice*)
Steven J. Lechner, Esq. (CO No. 19853)
(*admitted pro hac vice*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

John L. Runft, Esq. (ISB No. 1059)
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and ALAN C. BAKER, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ARMY CORPS OF ENGINEERS, *et al*., <br><br> Defendants. | Case No. 3:13-CV-00336-BLW <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ...................................................................................... 1

I.  STANDARD OF REVIEW ......................................................... 1

II.  PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE NOT
MOOT ...................................................................................... 2

III.  DEFENDANTS UNCONSTITUTIONALLY PROHIBIT LAW-
ABIDING INDIVIDUALS FROM POSSESSING FUNCTIONAL
FIREARMS FOR SELF-DEFENSE ............................................. 4

  A.  The 12 Million Acres Of Public Lands That Defendants
  Administer Are Not A "Sensitive Place" ........................... 5

  B.  Presumptively Lawful Regulations May Still Be
  Unconstitutional ................................................................. 8

IV.  DEFENDANTS' FIREARMS BAN IS SUBJECT TO STRICT
SCRUTINY ............................................................................... 10

  A.  Kokinda Reasonableness Review Is Inappropriate ............. 10

  B.  Strict Scrutiny Is Appropriate, Because Defendants' Ban Places
  A Severe Burden On The Core Second Amendment Right Of
  Armed Self-Defense ............................................................ 13

V.  DEFENDANTS CANNOT ESCAPE THEIR EVIDENTIARY
BURDEN .................................................................................. 14

  A.  Under Strict Or Intermediate Scrutiny, Defendants Bear The
  Evidentiary Burden .............................................................. 14

  B.  Defendants Cannot Meet Their Heavy Evidentiary Burden ... 15

CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Abilene Retail No. 30, Inc. v. Board of Com'rs of Dickinson County*,
492 F.3d 1164 (10th Cir. 2007) ................................................................ 15

*Barker v. Wingo*, 407 U.S. 514 (1972) ........................................................ 20

*Bateman v. Perdue*, 881 F. Supp. 2d 709 (E.D.N.C. 2012) .......................... 6

*Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989) ............ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 1

*Bonidy v. U.S. Postal Service*, 2013 WL 3448130 (D. Colo. 2013) .......... 6, 14

*Cervantez v. Sullivan*, 719 F. Supp. 899 (E.D. Cal. 1989) .......................... 1

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ................................................ 7

*City of Las Vegas v. Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971) ............ 6

*Dias v. City and County of Denver*, 567 F.3d 1169 (10th Cir. 2009) ......... 1

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
704 S.E.2d 365 (Va. 2011) ........................................................................ 19

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) .................................. *passim*

*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008) ............................. 11

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................ 8, 12

*Freedman v. Maryland*, 380 U.S. 51 (1965) ............................................... 18

*Frisby v. Schultz*, 487 U.S. 474 (1988) .................................................... 16, 17

*GeorgiaCarry.Org v. Georgia*, 764 F. Supp. 2d 1306 (M.D. Ga. 2011) .... 19

*Hall v. Garcia*, 2011 WL 995933 (N.D. Cal. 2011) ................................... 19

*Heller v. Dist. of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ................. 12, 15

*Hudson v. Michigan*, 547 U.S. 586 (2006) ................................................ 20

*In re Brickey*, 70 P. 609 (Idaho 1902) ........................................................... 6

*Initiative and Referendum Institute v. U.S. Postal Service*,
417 F.3d 1299 (D.C. Cir. 2005) ................................................................ 12

*ISKCON Miami, Inc. v. Metropolitan Dade County*,
147 F.3d 1282 (11th Cir. 1998) ............................................................... 11

*Lakewood v. Pillow*, 501 P.2d 744 (Colo. 1972) ........................................ 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................. 4

*McDonald v. City of Chicago,* 130 S. Ct. 3020 (2010) ................................ 19

*Miranda v. Arizona*, 384 U.S. 436 (1966) ................................................. 20

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ...................................... 6, 17, 18

*Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........ 2

*Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377 (2000) ............................ 14

*Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009) ....................................... 9

*Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011) ....................................... 10

*Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) ..................................... 9

*People v. Nakamura*, 62 P.2d 246 (Colo. 1936) ....................................... 6

*People v. Zerillo*, 189 N.W. 927 (Mich. 1922) .......................................... 6

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ..................................... 13

*Sanders County Republican Cent. Committee v. Bullock*,
698 F.3d 741 (9th Cir. 2012) .................................................................. 14

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012) .................. 1, 15

*Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009) ........................... 1, 15

*State ex rel. City of Princeton v. Buckner*, 377 S.E.2d 139 (W.Va. 1988) ............... 6

*Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221(9th Cir. 1989) .................. 1

*Tosco Corp. v. Communities for a Better Environment,*
236 F.3d 495 (9th Cir. 2001) ................................................................. 1

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011) ............................... 8, 10

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)............................. *passim*

*United States v. Chovan*, 2013 WL 6050914 (9th Cir. 2013)................... *passim*

*United States v. Kokinda*, 497 U.S. 720 (1990) ....................................... 10–12

*United States v. Leon*, 468 U.S. 897 (1984)............................................. 20

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)......................... 12

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ................... 6, 11, 12, 19

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010)............................. 9, 10, 13, 14

*United States v. Salerno*, 481 U.S. 739 (1987) ....................................... 16

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010)............................. 12

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010) ......................... 8, 10, 12, 14

*Village of Gambell v. Babbitt*, 999 F.2d 403 (9th Cir. 1993) ................... 2

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ............................... 14, 15

*Warden v. Nickels*, 697 F. Supp. 2d 1221 (W.D. Wash. 2010) ............... 19

## Constitutional Provisions

U.S. Const. amend. II.................................................................... *passim*

## Statutes

18 U.S.C. § 922.......................................................................... 3–5

## Regulations

32 C.F.R. § 1903.1 ...................................................................... 7

32 C.F.R. § 1903.10 .................................................................... 7

32 C.F.R. § 234.1 ........................................................................ 7

32 C.F.R. § 234.10 ............................................................. 7

36 C.F.R. § 327.13 ............................................................. 4, 7, 18

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................... 1, 4

Fed. R. Civ. P. 12(b)(6) ...................................................... 1, 10, 15

**Other Authorities**

Carlisle E. Moody & Thomas B. Marvell, *The Debate on Shall-Issue Laws*,
5 Econ. J. Watch 269 (2008) .............................................. 17

David Kopel, *Pretend "Gun-free" School Zones: A Deadly Legal Fiction*,
42 Conn. L. Rev. 515 (2009) .............................................. 17

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*,
56 UCLA L. REV. 1443 (2009) .......................................... 11, 16

Gary Kleck & Mark Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense With a Gun*,
86 J. Crim. L. & Criminology 150 (1995) ......................... 17

John R. Lott & David B. Mustard, *Crime, Deterrence and Right-To-Carry Concealed Handguns*,
26 J. Legal Stud. 1 (1997) .................................................. 17

Philip J. Cook, et al., *Gun Control After Heller: Threats and Sideshows From a Social Welfare Perspective*,
56 UCLA L. Rev. 1041 (2009) .......................................... 17

## ARGUMENT

Plaintiffs respectfully file this Opposition to Defendants' Motion to Dismiss (Doc. 30).

## I.     STANDARD OF REVIEW.

When reviewing Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and (b)(1), this Court must "accept all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012); *Cervantez v. Sullivan*, 719 F. Supp. 899, 903 (E.D. Cal. 1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir. 1992) ("If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made."). Plaintiffs have the burden of proving jurisdiction. *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001) (citing *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)).

Ultimately, Defendants bear the burden of proving that their firearms ban does not violate the Constitution. *United States v. Chovan*, 2013 WL 6050914, *10 (9th Cir. 2013). Plaintiffs must rebut any evidence offered by Defendants, but at the motion to dismiss stage, this Court "must assume that [Plaintiffs] can, even if it strikes [this Court] 'that a recovery is very remote and unlikely.'" *Dias v. City and County of Denver*, 567 F.3d 1169, 1184 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation

omitted); *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1151 (C.D. Cal. 2003) (same). Accepting the truth of the allegations in the Complaint, and drawing all inferences in the light most favorable to Plaintiffs, this Court should deny Defendants' Motion to Dismiss.

## II.    PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE NOT MOOT.

By omitting relevant facts, Defendants' attempt to raise standing and mootness arguments. Memorandum in Support of Motion to Dismiss ("Defs.' Memo.") at 1–3. An honest reading of the Complaint shows Defendants' arguments are meritless.

Defendants first argue that Mr. Baker's claims are moot, and he therefore lacks standing, because he purportedly has no plans to use Corps lands in the future. Defs.' Memo. at 1, 3 n.2. Mr. Baker camped at Corps properties before the Complaint was filed, had plans to do so when the Complaint was filed, has since done so, and has specific plans to do so in the future. Defendants ignore Mr. Baker's allegation that he "is a life-long outdoorsman. He regularly camps and hunts in Idaho and has concrete plans to camp on lands administered by Defendants." Compl. ¶ 7. Mr. Baker alleged examples of his past and future use of Corps-administered public lands, and supported those allegations with a signed declaration. Compl. ¶¶ 24, 36; Exhibit 2 to Brief in Support of Plaintiffs' Motion for Preliminary Injunction (Doc. 9). There is no basis for Defendants' speculation that Mr. Baker's claims are moot because he will never again make use of Corps properties. Defs.' Memo. at 1. In fact, consistent with his "concrete plans to camp on lands administered by Defendants," Mr. Baker continues to use Corps properties while suffering a violation of his Second Amendment rights. "[T]here exists a present controversy as to which effective relief can be granted." *Village of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993).

Mr. Baker has camped at Corps properties since the Complaint was filed (further substantiating his allegation that he "has concrete plans to camp on lands administered by Defendants") and he has since made an additional reservation to do so in the future.  Second Declaration of Alan C. Baker ¶¶ 7–11 (attached hereto as Exhibit 1).[1]  He also has concrete plans to make camping reservations for mid-June 2014; however, the Corps' reservation system will not allow him to make such a reservation until December 13, 2013; he intends to make a reservation on or about that date.  *Id*. ¶ 11.  Defendants' mootness argument ignores the substance of the Complaint and assumes facts for which there is no basis.

Defendants were similarly selective in reading the allegations supporting Ms. Morris's claims.  Defendants attack Ms. Morris's standing by asserting that she "plans to be present on some unspecified property . . . on some unspecified day."  Defs.' Memo. at 2 (citing Compl. ¶ 39).  Although Defendants cite Paragraph 39 of the Complaint, they ignore that it supplies the information they seek.  The specific properties Ms. Morris uses are recited by name in that paragraph:  "Ms. Morris uses Corps-administered public lands near the Snake River in Lewiston, Idaho. . . .   These Corps-administered public lands are in the Walla Walla District and include the Lower Granite Lake Greenbelt Trail, Swallows Park, the Lewiston Levee Parkway, and the Lewiston Levee Recreation Trail."  Compl. ¶ 39.  Ms. Morris also hikes near Dworshak Dam and Reservoir.  *Id*.  Also recited in paragraph 39 are the number of days she regularly uses these lands:  1–2 times per week in the summer.  *Id*.  She also uses these lands at least once per week in the winter.  Second Declaration of Elizabeth E. Morris ¶¶ 3–4 (attached hereto as Exhibit 2).  These are precise allegations of regular recreational use of public lands in the town where Ms.

---

[1] On September 28, 2013, Mr. Baker attended a training class to become a NRA Certified Instructor in Personal Protection Outside the Home.  Second Baker Declaration ¶ 6.  Due to this scheduling conflict, he was unable to camp at Macks Creek Park as planned.  *Id*.  He has, however, since stayed overnight at another Corps property.  *Id*. ¶ 8.

Morris lives.  Contrary to Defendants' suggestion, these are not "''some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be.'"  Defs.' Memo. at 2 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).

Defendants' standing and mootness arguments are meritless.  Plaintiffs' particularized allegations prove their standing to sue and there is no evidence that their claims are moot. Accordingly, Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) should be denied.[2]

## III. DEFENDANTS UNCONSTITUTIONALLY PROHIBIT LAW-ABIDING INDIVIDUALS FROM POSSESSING FUNCTIONAL FIREARMS FOR SELF-DEFENSE.

Defendants' remaining arguments for dismissal are similarly meritless.  Many of Defendants' arguments are foreclosed by the Ninth Circuit's recent decision in *United States v. Chovan*, 2013 WL 6050914 (9th Cir. 2013).  Because *Chovan* was issued after Defendants filed their Motion, they understandably err when they argue that whether or not Corps property is sensitive bears on the scope of the Second Amendment and when they argue that anything less than intermediate scrutiny is appropriate in Second Amendment cases.  As demonstrated below, both arguments were foreclosed by *Chovan*.  Thus, Defendants are left with their argument that their firearms ban—36 C.F.R. § 327.13—survives intermediate scrutiny.  Defendants cannot win this argument at the motion to dismiss stage, because they are prohibited from presenting the necessary evidence; nor have they put forth any effort to present such evidence.

---

[2] Defendants tacitly conceded that Plaintiffs' as-applied challenge is timely, but argue that Plaintiffs' facial challenge is time-barred.  Defs.' Memo. at 20 n.14.  As explained in detail in Plaintiffs' Reply in Support of their Motion for Preliminary Injunction at 3–5 (Doc. 21), Defendants are incorrect that Plaintiffs' facial challenge is time-barred.

## A.   The 12 Million Acres Of Public Lands That Defendants Administer Are Not A "Sensitive Place."

Defendants' central argument—that the Second Amendment provides no protection for the right to keep and bear arms because all Corps property is "sensitive"—would carve a 12-million-acre hole in the Second Amendment.  Compl. ¶ 15 ("The Corps . . . administers 422 lake and river projects in 43 states, spanning 12 million acres, 55,000 miles of shoreline, 4,500 miles of trails, 90,000 campsites, and 3,400 boat launch ramps.").  Moreover, Defendants fail to provide a limiting principle by which their argument does not create a broad-based nullification of the Second Amendment on all government land, including public streets and sidewalks.  This outcome is inconsistent with the dicta on which Defendants build their argument and the history of the right to keep and bear arms.

Defendants argue that any "open public space in which large numbers of people may congregate," is a "sensitive place" where the Second Amendment does not apply.  Defs.' Memo. at 8.  Defendants also argue that "because important infrastructure such as dams and levees is located on [Corps] land, it is a 'sensitive place.'"  *Id.*  This sweeping argument relies on narrow dicta in *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008), that identifies certain firearms regulations as "presumptively lawful," including "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."  *Id.* at 626; 627 n.26.

Defendants rely on *Heller*'s "presumptively lawful" dicta as a talismanic guide to understanding the limits of the Second Amendment, but their expansive interpretation is absurd and *Heller* itself warns against reading too much into such dicta:

> It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.

*Id*. at 625 n.25.  The Court did not hold that "presumptively lawful" regulations are necessarily constitutional in all applications, nor did it elaborate about the contours of these categories. Rather, the Court left the task of clarifying various applications of the Second Amendment to future cases, such as this one.  *See Chovan*, 2013 WL 6050914 at *5, *8 (rejecting a broad interpretation of the "presumptively lawful" dicta); *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) ("It is not clear in what places public authorities may ban firearms altogether without shouldering the burdens of litigation."); *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) ("[W]e need not speculate on the limits that Illinois may in the interest of public safety constitutionally impose on the carrying of guns in public; it is enough that the limits it has imposed go too far.").

Defendants argument—that any "open public space in which large numbers of people may congregate," is a "sensitive place" where the Second Amendment does not apply—goes too far.  Defs.' Memo. at 8.  Such a broad description of "sensitive places" would ensnare almost all public property, justifying the sort of bans on the public carrying of firearms that have been widely rejected by state and federal courts.  *See, e.g., Moore*, 702 F.3d at 936; *Bonidy v. U.S. Postal Service*, 2013 WL 3448130, *6 (D. Colo. 2013), appeals docketed, Nos. 13-1374, 13-1391 (10th Cir. Sept. 20, 2013); *Bateman v. Perdue*, 881 F. Supp. 2d 709, 714 (E.D.N.C. 2012); *State ex rel. City of Princeton v. Buckner*, 377 S.E.2d 139, 144 (W.Va. 1988); *Lakewood v. Pillow*, 501 P.2d 744, 745 (Colo. 1972); *City of Las Vegas v. Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971); *People v. Nakamura*, 62 P.2d 246, 247 (Colo. 1936); *People v. Zerillo*, 189 N.W. 927, 928 (Mich. 1922); *In re Brickey*, 70 P. 609 (Idaho 1902).  Indeed, Defendants make no attempt to distinguish the Fourth Circuit's application of the Second Amendment to National Park Service lands.  *Masciandaro*, 638 F.3d at 471.

Defendants' argument is also at odds with the Supreme Court's description of sensitive places as discrete buildings with limited public access, i.e., schools and government buildings. Corps property is generally open to the public and Defendants admit that it is not protected by law enforcement, Defs.' Memo. at 18—further distinguishing the 12 million acres of public lands managed by Defendants from the genuinely sensitive places referenced in *Heller*.[3]

Defendants' argument that all Corps lands are "sensitive" also ignores reality.  The most damning criticism of Defendants' protests is the fact that 36 C.F.R. § 327.13 allows firearms on Corps-administered lands for hunting and target shooting; but the regulation requires they be stored unloaded, provides no exception for self-defense, and bans firearms possessed only for self-defense.  There are already guns on Corps-administered lands; the question here is whether Defendants should be allowed to prohibit firearms possessed for the core lawful purpose of self-defense.  The fact that some Corps property may be a public space where people congregate or is home to dams and levees does nothing to justify Defendants' ban on self-defense, especially when Defendants allow firearms to be possessed for hunting and recreation, purposes arguably outside the self-defense interests at the core of the Second Amendment.  *Cf. City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) (Regulatory exemptions "may diminish the credibility of the government's rationale for restricting speech in the first place.").

It may be that Defendants can prove that some Corps property is sensitive, but such a presentation of evidence would be entirely inappropriate at the motion to dismiss stage.  At this stage in the proceedings, Defendants' concerns  are "entirely speculative and in any event may

---

[3] It should come as no surprise that the Central Intelligence Agency, 32 C.F.R. §§ 1903.1, 1903.10, or Department of Defense, 32 C.F.R. §§ 234.1, 234.10, may have more substantial security needs than a Corps-administered campground, especially since, unlike a campground, the core functions of these entities do not require them to open their property to the public.  The other regulations Defendants cite do not prohibit storage of a firearm in a vehicle, as 36 C.F.R. § 327.13 does.  *See* Defs.' Memo. at 19–20, n.13.

be addressed by more closely tailored regulatory measures." *Ezell v. City of Chicago*, 651 F.3d 684, 710 (7th Cir. 2011). Moreover, even if some Corps property were sensitive, that would not justify the untailored firearms ban that Defendants currently impose.

### B. Presumptively Lawful Regulations May Still Be Unconstitutional.

Even if some Corps property were sensitive, this would not result in a "free pass" for Defendants. The Ninth Circuit recently endorsed the view that even when a regulation "'appears consistent with *Heller*'s reference to certain presumptively lawful regulatory measures,'" the government must still justify the regulation "'by some form of 'strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective.'" *Chovan*, 2013 WL 6050914 at *7 (quoting *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011)). Defendants did not have the benefit of the Ninth Circuit's decision in *Chovan* when they filed their Motion, and so they understandably err when they argue that the "presumptively lawful" dicta "addresses conduct that falls outside the scope of the Second Amendment." Defs.' Memo. at 6. The Ninth Circuit flatly rejected this approach in *Chovan*.

As the Seventh Circuit explained in a case challenging the felon-in-possession prohibition of 18 U.S.C. § 922(g)(1):

> [T]he government does not get a free pass simply because Congress has established a "categorical ban"; it still must prove that the ban is constitutional, a mandate that flows from *Heller* itself. *Heller* referred to felon disarmament bans only as "presumptively lawful," which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge. Therefore, putting the government through its paces in proving the constitutionality of § 922(g)(1) is only proper.

*United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *see also Booker*, 644 F.3d at 25;

*United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010) ("In fact, the phrase 'presumptively lawful regulatory measures' suggests the possibility that one or more of these 'longstanding'

8

regulations 'could be unconstitutional in the face of an as-applied challenge.'") (quoting *Williams*); *Chovan*, 2013 WL 6050914 at *7 (agreeing with *Chester* and *Booker*); *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010) (accord).

Indeed, if the *Heller* dicta absolved Defendants of the burden of proving the constitutionality of their firearms ban, then *Heller* would impose something approximating the rational basis test; that approach was explicitly rejected by *Heller*. 554 U.S. at 628 n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."); *see also Chovan*, 2013 WL 6050914 at *9 ("[W]e reject rational basis review and conclude that some sort of heightened scrutiny must apply.")

Defendants are also incorrect that *Nordyke v. King*, 563 F.3d 439, 459–60 (9th Cir. 2009) (vacated), absolves them of the burden to prove the constitutionality of their firearms ban. Defendants search the long and winding history of *Nordyke*—13 appellate decisions—for some support for their position that all government property is sensitive. Defendants grasp onto dicta in a vacated panel opinion, but drop the context of the case and therefore obscure its irrelevance. Defs.' Memo. at 6–7 (citing *Nordyke*, 563 F.3d at 459–60). As the final *en banc* opinion in the *Nordyke* saga makes clear, that case did not address the self-defense interests at the core of the Second Amendment—and Plaintiffs' claims here—but rather involved conditions imposed on selling guns on county property. *Nordyke v. King*, 681 F.3d 1041, 1044–45 (9th Cir. 2012) (en banc) (approving requirement that firearms sold on county property be secured to prevent unauthorized use, noting "in the present case, [Nordyke] cannot succeed, no matter what form of scrutiny applies to Second Amendment claims.").

Another of the panel opinions in *Nordyke*—subsequent to the one Defendants cite, but likewise vacated—reasoned that "when deciding whether a restriction on gun sales substantially burdens Second Amendment rights, we should ask whether the restriction leaves law-abiding citizens with reasonable alternative means for obtaining firearms sufficient for self-defense purposes." *Nordyke v. King*, 644 F.3d 776, 787 (9th Cir. 2011) (vacated). Plaintiffs make no claims related to gun sales, and Defendants' ban does not leave open "reasonable alternative means" to exercise the self-defense right at issue in this case, it completely obliterates that right whenever an individual steps onto Corps-administered public lands.

Accordingly, even if Defendants' ban could be labeled "presumptively lawful" within the *Heller* dicta, Defendants would not be absolved of the burden of proving the constitutionality of their firearms ban. *Chovan*, 2013 WL 6050914 at *7; *Booker*, 644 F.3d at 25; *Chester*, 628 F.3d at 679; *Reese*, 627 F.3d at 801; *Williams*, 616 F.3d at 692. Therefore, Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be denied.

## IV.    DEFENDANTS' FIREARMS BAN IS SUBJECT TO STRICT SCRUTINY.

### A.    *Kokinda* Reasonableness Review Is Inappropriate.

Defendants rely on *United States v. Kokinda*, 497 U.S. 720, 725 (1990), for the proposition that their firearms ban is subject only to reasonableness review. Defs.' Memo. at 10–13. Defendants reliance on *Kokinda* is flawed in at least three ways: (1) *Kokinda*'s forum analysis framework is of little utility in this context, because almost no property is dedicated to Second Amendment activity; (2) even if *Kokinda*'s forum analysis applied, Defendants'

draconian ban would be unconstitutional; and (3) the Ninth Circuit has held that *Heller* requires

heightened scrutiny, *i.e.*, at least intermediate scrutiny.[4]

Defendants place heavy reliance on *Kokinda* for the proposition that the firearms ban is

subject to "a lower standard of constitutional scrutiny," because the ban targets government

property.  Defs.' Memo. at 10, 12.  *Kokinda*, however, employs a forum analysis framework that

is entirely inappropriate in the Second Amendment context.  Forum analysis—asking first

whether government property has been dedicated to First Amendment activity, and, if not,

whether the given regulation is reasonable—makes no sense in the present context because no

government property is dedicated to self-defense.  Indeed, the nature of the interest in personal

security protected by the Second Amendment demands that the amendment apply where self-

defense is necessary, not just in certain places dedicated to self-defense.  *See* Eugene Volokh,

*Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and*

*a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009) ("[s]ome rights, such as free speech,

may be only slightly burdened by laws that bar speech in some places but allow it in many other

places.  But self-defense has to take place wherever the person happens to be.").  The idea of a

"Second Amendment zone" is absurd.  *Cf. ISKCON Miami, Inc. v. Metropolitan Dade County*,

147 F.3d 1282, 1290 (11th Cir. 1998) ("[P]ersons wishing to distribute literature are limited to

eight areas in the airport designated by the Airport Director as 'First Amendment zones.'").[5]

---

[4] Defendants also cite the Property Clause as justifying their firearms ban, but even Congress's so-called "unlimited" power under the Property Clause would not allow it to violate the Second Amendment.  *See Masciandaro*, 638 F.3d at 471; *contra* Defs.' Memo. at 13.  Nor do Defendants argue that Congress has delegated the full authority of the Property Clause to them.  *See* Defs.' Memo. at 13.

[5] Defendants also cite *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008), but their reliance on *Engquist* is severely misplaced.  That case involves the government's authority over its own employees.  Defs.' Memo. at 10–11.  In contrast to the regulatory authority at issue here, the Supreme Court has "often recognized that government has significantly greater leeway in its

Nevertheless, even if *Kokinda* applied, courts have acknowledged that an outright ban on constitutional activity on government property—like that imposed by Defendants' firearms ban—would be unconstitutional.  *See Initiative and Referendum Institute v. U.S. Postal Service*, 417 F.3d 1299, 1315 (D.C. Cir. 2005) ("It is clear that a broadscale prohibition against asking postal patrons to sign petitions . . . is unconstitutional even if all postal properties are nonpublic forums.").  Likewise, Defendants may not impose a broadscale prohibition on self-defense.

Finally, reasonableness review would be inconsistent with the Ninth Circuit's recent holding *"*reject[ing] rational basis review and conclud[ing] that some sort of heightened scrutiny must apply" in Second Amendment cases.  *See Chovan,* 2013 WL 6050914 at *9; *see also Masciandaro*, 638 F.3d at 474;[6] *Chester*, 628 F.3d at 679; *Williams*, 616 F.3d at 692; *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010); *Ezell*, 651 F.3d at 708 ("All this suggests that a more rigorous showing than [intermediate scrutiny] should be required, if not quite 'strict scrutiny.'").  As the weight of authority demonstrates—and the Ninth Circuit recently required—at a minimum, Defendants' firearms ban is subject to intermediate scrutiny.[7]

---

dealings with citizen *employees* than it does when it brings its sovereign power to bear on citizens at large."  *Id*. at 599 (emphasis added).

[6] Curiously, Defendants cite *Masciandaro*—a case applying intermediate scrutiny—in support of their argument that reasonableness review applies.  Defs.' Memo. at 11.

[7] Heightened scrutiny is appropriate to the extent the levels of scrutiny analysis is appropriate at all in the Second Amendment context.  *See Heller v. Dist. of Columbia*, 670 F.3d 1244, 1271 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny.").  Although—for now—the Ninth Circuit has settled on heightened scrutiny in Second Amendment cases.  *See Chovan*, 2013 WL 6050914 at *14–15 (Bea, J., concurring) ("I will treat the point as waived and accept the application of the tiers of scrutiny analysis to the Second Amendment jurisprudence.").  As demonstrated in detail in Plaintiffs' Memorandum in Support of their Motion for Preliminary Injunction at 6–15 (Doc. 4-1), Defendants' firearms ban is contrary to the text, history, and tradition of the Second Amendment.

**B.    Strict Scrutiny Is Appropriate, Because Defendants' Ban Places A Severe Burden On The Core Second Amendment Right Of Armed Self-Defense.**

It is well established that, "just as in the First Amendment context, the level of scrutiny in the Second Amendment context should depend on 'the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'" *Chovan*, 2013 WL 6050914 at *9 (quoting *Chester*, 628 F.3d at 682); *Ezell*, 651 F.3d at 708 ("a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end."). Defendants' ban renders "the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense" a nullity on Corps lands. *Chovan*, 2013 WL 6050914 at *9. Because Defendants' ban "implicate[s] the core Second Amendment right, [and] place[s] a substantial burden on the right . . . strict scrutiny is the proper standard to apply." *Id*. at *10. Therefore, Defendants must show that their ban is "narrowly tailored to serve a compelling governmental interest" and "is necessary to serve the asserted [compelling] interest." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992).

Defendants acknowledge that the minimum standard courts have applied to Second Amendment challenges is intermediate scrutiny. Defs.' Memo. at 14. These intermediate scrutiny cases, however, involve mainly: (1) regulations that apply only to people who "undeniably pose a heightened danger of misusing firearms," *Reese*, 627 F.3d at 802; or (2) regulations that are less burdensome. *See Chovan*, 2013 WL 6050914 at *10 (Because it does not apply to law-abiding citizens, "§ 922(g)(9) does not implicate the core Second Amendment right, but it does place a substantial burden on the right."). A more narrowly tailored regulation might be subject to intermediate scrutiny—such as a regulation that did not render the interest in personal safety nugatory on Corps-administered public lands, or that did not burden the ability of

13

law-abiding citizens to carry firearms before and after visiting public lands.  But Defendants' ban incorporates no such moderating limitations.  Accordingly, Defendants' ban is subject to strict scrutiny.  *See Chovan*, 2013 WL 6050914 at *10.

## V.   DEFENDANTS CANNOT ESCAPE THEIR EVIDENTIARY BURDEN.

### A.   Under Strict Or Intermediate Scrutiny, Defendants Bear The Evidentiary Burden.

Under any level of scrutiny, Defendants concede that they bear the burden of proving that their ban does not violate the Constitution.  Defs.' Memo. at 16; *Reese*, 627 F.3d at 802 ("'To pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective.'") (quoting *Williams*, 616 F.3d at 692); *see also Bonidy*, 2013 WL 3448130 at *6 (holding gun ban unconstitutional under intermediate scrutiny); *cf. also Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 379 (2000) ("This Court has never accepted mere conjecture as adequate to carry a First Amendment burden.").  This requires Defendants to offer evidence to prove, at the very least, that their firearms ban is "narrowly tailored to serve the government's legitimate . . . interests but that it need not be the least restrictive or least intrusive means of doing so."  *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989); *Chovan*, 2013 WL 6050914 at *10 ("Although courts have used various terminology to describe the intermediate scrutiny standard, all forms of the standard require (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective.").

Moreover, Plaintiffs must then have an opportunity to rebut Defendants' proffered evidence.  *Cf. Sanders County Republican Cent. Committee v. Bullock*, 698 F.3d 741, 744 (9th Cir. 2012) ("When seeking a preliminary injunction in the First Amendment context, the moving

14

party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction."); *Chester*, 628 F.3d at 682 ("[W]e agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment."). This evidentiary inquiry is inappropriate at the motion to dismiss stage. *Sateriale*, 697 F.3d at 783; *Smith*, 561 F.3d at 1098 ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (internal quotation omitted)).  Defendants wrongly urge this court to abdicate its duty "to make an independent examination of the record in its entirety to ensure the challenged regulation does not improperly limit [fundamental constitutional rights]."  *Abilene Retail No. 30, Inc. v. Board of Com'rs of Dickinson County*, 492 F.3d 1164, 1170 (10th Cir. 2007).  Therefore, Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be denied.

### B.       Defendants Cannot Meet Their Heavy Evidentiary Burden.

Under any level of scrutiny, it is unclear what evidence Defendants could marshal to justify their draconian ban, especially in light of the total disconnect between the government interest in crime prevention and Defendants' ban on self-defense.  *See* Defs.' Memo. at 17–18. In order to survive even intermediate scrutiny, Defendants' ban must not "burden substantially more [conduct] than is necessary to further the government's legitimate interests."  *Rock Against Racism*, 491 U.S. at 798–800; *Heller*, 670 F.3d at 1258 ("[T]he District must establish a tight 'fit' between the registration requirements and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.'" (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S.

469, 480 (1989))).  A law-abiding individual possessing a firearm for self-defense is not "an

appropriately targeted evil," *Frisby v. Schultz*, 487 U.S. 474, 485 (1988), it is a constitutionally

protected fundamental right.  Defendants' ban is not narrowly tailored, because it targets all gun

possession on all Corps lands indiscriminately.

Defendants claim an interest in "promoting order and public safety on the land [the

Corps] manages, and in protecting visitors from the risk of firearm violence."  Defs.' Memo. at

17 (quoting *United States v. Salerno*, 481 U.S. 739, 749 (1987) for the proposition "the

government's interest in preventing crime . . . is both legitimate and compelling.").  Certainly

crime prevention is a compelling governmental interest.  But Defendants concede that the Corps

is not primarily responsible for achieving this interest—state and local law enforcement are.  *Id.*

at 18.  Corps park rangers issue citations for violations of Corps regulations, such as the firearm

ban at issue in this case, but the task of protecting the public safety is borne by state and local

law enforcement, applying only state and local law.  *Id.*  Nor do Defendants present any evidence

of crime occurring on Corps lands in Idaho or elsewhere.  *Id.*  Against this backdrop, Defendants

offer no rationale other than ipse dixit for connecting their firearms ban with public safety.  *Id.*

Defendants do not offer any evidence that a total ban on all functional firearms is tailored to

prevent crime.  *Id.*

It is unsurprising that Defendants fail to draw a connection between crime prevention and

their firearms ban because, in fact, no such connection exists.  *Cf. Chovan*, 2013 WL 6050914 at

*11 (Ninth Circuit requiring statistical evidence for disarming domestic violence

misdemeanants).  Statistics show a clear lack of evidence to support any connection between the

government's interest in public safety and disarming law-abiding individuals.  *See* Volokh, 56

UCLA L. Rev. at 1520 n.323 (citing National Academy of Sciences and Centers for Disease

Control reports showing no net increase in crime associated with licensed concealed carry);

Philip J. Cook, et al., *Gun Control After Heller: Threats and Sideshows From a Social Welfare*

*Perspective*, 56 UCLA L. Rev. 1041, 1082 (2009) ("Based on available empirical data, therefore,

we expect relatively little public safety impact if courts invalidate laws that prohibit gun carrying

outside the home."); David Kopel, *Pretend "Gun-free" School Zones: A Deadly Legal Fiction*,

42 Conn. L. Rev. 515, 564–69 (2009) (examining the extraordinarily low crime rates for

concealed carry licensees across several States).   Defendants take on the mantra more guns, more

crime, but offer no evidence to support this claim—and there exists much to contradict it.   *See*

Carlisle E. Moody & Thomas B. Marvell, *The Debate on Shall-Issue Laws*, 5 Econ. J. Watch

269, 288 (2008) (concluding public gun carrying decreases crime); John R. Lott & David B.

Mustard, *Crime, Deterrence and Right-To-Carry Concealed Handguns*, 26 J. Legal Stud. 1

(1997) (same); Gary Kleck & Mark Gertz, *Armed Resistance to Crime: The Prevalence and*

*Nature of Self-Defense With a Gun*, 86 J. Crim. L. & Criminology 150, 184–86 (1995) (same).

As the Seventh Circuit noted after conducting an exhaustive review of the relevant scientific

evidence:

> In sum, the empirical literature on the effects of allowing the carriage of guns in
> public fails to establish a pragmatic defense of the Illinois law [banning concealed
> and open carry]. . . .  If the mere possibility that allowing guns to be carried in
> public would increase the crime or death rates sufficed to justify a ban, *Heller*
> would have been decided the other way, for that possibility was as great in the
> District of Columbia as it is in Illinois.

*Moore*, 702 F.3d at 939.  The Seventh Circuit's observations apply with equal force here.

Law-abiding individuals carrying firearms for self-defense—like Plaintiffs—are not "an

appropriately targeted evil," *Frisby*, 487 U.S. at 485, and thus the sweep of Defendants' ban is

unconstitutionally untailored.  While the connection between preventing violent crime and

disarming violent felons may be obvious, the correlation in the instant context falls short of the

precision required by the Constitution.  *See Heller*, 554 U.S. at 628; *Chovan*, 2013 WL 6050914 at \*10; *Moore*, 702 F.3d at 939.

Defendants point to the narrow exceptions in 36 C.F.R. § 327.13 for the proposition that their firearms ban is "limited in scope," but Defendants fundamentally fail to understand the right at stake here.  Defs.' Memo. at 18.  Exceptions for hunting or target shooting do nothing to address the interest in self-defense that is at the core of the Second Amendment and the basis for Plaintiffs' claims.  *Heller*, 554 U.S. at 630 (An implied self-defense exception "is precluded by the unequivocal text, and by the presence of certain other enumerated exceptions . . . .").

Defendants' reference to 36 C.F.R. § 327.13(a)(4) as a limitation on the ban is astonishing, given the facts of this case.  Defs.' Memo. at 18.  Although subsection (a)(4) gives the District Commander authority to grant permission to possess functional firearms, the facts of this case demonstrate that such relief is purely illusory.  Both Plaintiffs requested permission pursuant to subsection (a)(4).  Both requests were not just denied—they were completely ignored.  Compl. ¶¶ 33, 43.  Moreover, subsection (a)(4) contains no guidelines for granting permission, no timeline for making a decision, and no recourse for a denial.  As demonstrated by the facts of this case, the regulation unconstitutionally delegates overly broad discretion to a government official.  *See Freedman v. Maryland*, 380 U.S. 51, 59 (1965) (exhibition license must issue "within a specified brief period" and "the procedure must also assure a prompt final judicial decision . . . .").  Accordingly, 36 C.F.R. § 327.13 is an outright ban on law-abiding individuals possessing functional firearms on Corps-administered public lands for the purpose of self-defense.

Contrary to Defendants suggestion, Defs.' Memo. at 18–19, their firearms ban bears no resemblance to other firearms regulations on government property, which "leave[] largely intact

the right to 'possess and carry weapons in case of confrontation.'"  *Masciandaro*, 638 F.3d at

474 (quoting *Heller*, 554 U.S. at 592) ("[B]y permitting [National Park] patrons to carry

unloaded firearms within their vehicles, [36 C.F.R.] § 2.4(b) leaves largely intact the right to

'possess and carry weapons in case of confrontation.'"); *see also DiGiacinto v. Rector & Visitors*

*of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011) ("Individuals may still carry or possess

weapons on the open grounds of GMU . . . ."); *GeorgiaCarry.Org  v. Georgia*, 764 F. Supp. 2d

1306, 1320 (M.D. Ga. 2011) ("[T]he statute would allow [the plaintiff CEO of the Tabernacle] to

keep a firearm in his office . . . ."), *aff'd*, 687 F.3d 1244 (11th Cir. 2012); *Hall v. Garcia*, 2011

WL 995933, *1 (N.D. Cal. 2011) ("The Act also contains exemptions for some categories of

persons authorized to carry concealed weapons."); *Warden v. Nickels*, 697 F. Supp. 2d 1221,

1227 (W.D. Wash. 2010) ("Defendants narrowly tailored the Park Rule to include only those

public parks and community centers where children and youth predominantly recreate.").[8]

Defendants' ban is in no way tailored.

   Under Defendants' reasoning, any law meant to limit firearm possession with the intent

of reducing crime would be constitutional.  But the assertion of the crime prevention interest is

not an excuse to override the requirement that the regulation be tailored to that interest.  Indeed,

the same argument was rejected in *Heller* and *McDonald*, where the District of Columbia and the

City of Chicago, respectively, argued that it was necessary to ban all handguns in those cities in

order to reduce crime and gun violence.  *McDonald v. City of Chicago,* 130 S. Ct. 3020, 3056–57

(2010) (Scalia, J., concurring); *Heller*, 554 U.S. at 636.  Defendants treat firearm possession as

an inherent social harm, but that is inconsistent with empirical studies and, more important, the

---

[8] Defendants' reliance on *Warden*, Defs.' Memo. at 6 n.5, 18, also fails because *Warden* applies
only rational basis review, 697 F. Supp. 2d at 1227, which was explicitly rejected by the Ninth
Circuit in *Chovan*.  2013 WL 6050914 at *9 ("[W]e reject rational basis review and conclude
that some sort of heightened scrutiny must apply.").

constitutional guarantee of an individual right to keep and bear arms.  Protecting the right to keep and bear arms in the Constitution requires Defendants to regulate with some degree of nuance; but the Constitution requires Defendants to conform to its standards, not the other way around.

As the Supreme Court noted in *McDonald*, every right enshrined in the Constitution "has controversial public safety implications":

> All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category.  *See, e.g., Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("The exclusionary rule generates 'substantial social costs,' *United States v. Leon*, 468 U.S. 897, 907 (1984), which sometimes include setting the guilty free and the dangerous at large"); *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (reflecting on the serious consequences of dismissal for a speedy trial violation, which means "a defendant who may be guilty of a serious crime will go free"); *Miranda v. Arizona*, 384 U.S. 436, 517 (1966) (Harlan, J., dissenting); *id.*, at 542 (White, J., dissenting) (objecting that the Court's rule "[i]n some unknown number of cases . . . will return a killer, a rapist or other criminal to the streets . . . to repeat his crime").

*McDonald*, 130 S. Ct. at 3045 (parallel citations omitted).  But these public safety implications have not prevented courts from insisting on these other important constitutional rights.  The right to keep and bear arms should be no different.  *Id.*

The Second Amendment does not prevent all regulation of firearms on Corps lands, "but the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636.  One of the choices removed is "a broadscale prohibition against" lawful possession of a firearm for self-defense.  *Initiative and Referendum Institute*, 417 F.3d at 1315.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. Should this Court find Plaintiffs' Complaint deficient for any reason, Plaintiffs respectfully request leave to file an amended complaint.

DATED this 25th day of November 2013.

Respectfully submitted,


/s/ James M. Manley
James M. Manley, Esq.
(*admitted pro hac vice*)
Steven J. Lechner, Esq.
(*admitted pro hac vice*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com


/s/ John L. Runft
John L. Runft, Esq.
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

Attorneys for Plaintiffs

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of November, 2013, I filed the foregoing

electronically through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joanne P. Rodriguez
Assistant United States Attorney
District Of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, Id 83712-7788
Joanne.Rodriguez@Usdoj.gov

Daniel Riess
Trial Attorney
U.S. Department of Justice Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Daniel.Riess@usdoj.gov

/s/ James M. Manley
James M. Manley, Esq.