STUART F. DELERY
Assistant Attorney General
WENDY J. OLSON, Idaho State Bar No. 7634
United States Attorney
JOANNE P. RODRIGUEZ, Idaho State Bar No. 2996
Assistant United States Attorney
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Telephone: (202) 353-3098
Facsimile: (202) 616-8460
Daniel.Riess@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **ELIZABETH E. MORRIS and ALAN C. BAKER,**<br><br>      **Plaintiffs,**<br><br>           v.<br><br>**U.S. ARMY CORPS OF ENGINEERS, et al.,**<br><br>      **Defendants.** | Case No. 3:13-CV-00336-BLW<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Because the Corps regulation is a "law[] forbidding the carrying of firearms in [a] sensitive place[]," it is a "presumptively lawful regulatory measure" addressing conduct falling outside the Second Amendment's protection.  Dist. of Columbia v. Heller, 554 U.S. 570, 626, 627 n.26 (2008); see Def. Mem. at 6-9.  Plaintiffs' opposition lacks merit, and the Complaint should be dismissed.

First, Plaintiffs object that the scope of Corps-managed property extends too broadly to warrant protection as a sensitive place.  But Heller specifically listed "schools and government buildings" as examples of sensitive places.  554 U.S. at 626.  The Court may take judicial notice that there are more than 130,000 public and private schools and universities in the United States,[1] and that as of fiscal year 2009, the federal government alone owned or leased over 3 billion square feet of building space in over 900,000 buildings.[2]  Yet the large number of U.S. schools and government buildings did not preclude the Supreme Court from listing these as examples of "sensitive places," as to which "laws forbidding the carrying of firearms" are "presumptively lawful."  Id. at 626 & 627 n.26.  Nor, despite Plaintiffs' contrary contention, is it relevant that unlike schools and government buildings, Corps-managed land is generally open to the public.  See Pl. Opp. at 7.  Many courts, including courts in this Circuit, have rejected Second Amendment challenges to laws governing the carrying of firearms in open public places, where

---

[1] See Nat'l Ctr. For Educ. Statistics, Fast Facts: How many educational institutions exist in the United States?, *available at* http://nces.ed.gov/fastfacts/display.asp?id=84.

[2] See U.S. Gov't Accountability Office, Federal Real Property: The Government Faces Challenges to Disposing of Unneeded Buildings (Feb. 10, 2011), *available at* http://www.gao.gov/products/GAO-11-370T.

1

such places are "sensitive" within the meaning of Heller.  See, e.g., Warden v. Nickels, 697 F. Supp. 2d 1221, 1229 (W.D. Wash. 2010).[3]

Second, Plaintiffs' attempt to minimize the importance of Heller's "presumptively lawful regulatory measures" language, Pl. Opp. at 5-6, is unpersuasive.  The Supreme Court reaffirmed the existence of these limitations on the Second Amendment right in McDonald v. City of Chicago, 130 S. Ct. 3020, 3047 (2010) (plurality opinion).  And the cases cited by Plaintiffs support neither a narrow construction of these "presumptively lawful regulatory measures" nor a broad construction of the Second Amendment's protection outside the home.  See Pl. Opp. at 6.  United States v. Chovan, 735 F.3d 1127 (9th Cir. 2013), simply concluded that this language from Heller did not apply to one particular firearms regulation: namely, 18 U.S.C. § 922(g)(9), prohibiting possession of firearms by domestic-violence misdemeanants.  See id. at 1133-37.  And United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011), described the issue of the extent to which the Second Amendment right applies outside the home as "a vast *terra incognita* that courts should enter only upon necessity and only then by small degree."  Id. at 475.

Third, Plaintiffs attempt to conflate the Corps regulation with restrictions that do not involve carrying firearms on land publicly owned and managed by the federal government, Pl. Opp. at 6.  This is also unpersuasive.  See Prelim. Inj. Opp. at 18 n.8, 21-22.  Moreover, contrary to Plaintiffs' assertion, there is no need here to distinguish Masciandaro, which did not resolve the issue of whether the public land at issue (national park land) was or was not a sensitive place.

---

[3] Although Warden involved a challenge under the state constitutional analogue to the Second Amendment, the Court resolved the issue by using Heller's "sensitive places" limitation.  See id. at 1228-29; see also United States v. Dorosan, 350 F. App'x 874, 875-76 (5th Cir. 2009); DiGiacinto v. George Mason Univ., 704 S.E.2d 365, 369-70 (Va. 2011); Nordyke v. King, 681 F.3d 1041, 1043-45 (9th Cir. 2012) (en banc); Embody v. Ward, 2011 WL 2971055, at *10-11 (M.D. Tenn. July 20, 2011), aff'd on other grounds, 695 F.3d 577 (6th Cir. 2012).

2

See 638 F.3d at 471-73.  Instead, the Court resolved the case on other grounds, explaining that even assuming that the national park area was not a sensitive place, the firearms restriction at issue in the case passed constitutional muster under intermediate scrutiny.  See id. at 473.

Fourth, the fact that the Corps permits the possession of loaded firearms on Corps-managed lands at authorized shooting ranges and when being used for hunting and fishing (except where expressly prohibited), does not undermine the conclusion that Corps-managed land is a sensitive place.  See Pl. Opp. at 7.  Designated areas on Corps-managed lands used as authorized shooting ranges or for hunting or fishing are set aside to be used for those specific authorized purposes.  Outside these designated areas, as explained in our opening brief, visitors may only carry unloaded firearms.  See Def. Mem. at 9.  Nothing about these circumstances undercuts the conclusion that Corps-managed land is a sensitive place, any more than the fact that federal facilities on which firearms are generally prohibited would not be considered sensitive places simply because a statutory exception is made for "the lawful carrying of firearms or other dangerous weapons in a Federal facility incident to hunting or other lawful purposes."  18 U.S.C. § 930(d)(3).

Finally, resolving whether Corps-managed land is a sensitive place is appropriate at the motion to dismiss stage, and doing so is consistent with the Supreme Court's repeated assurances that its decisions should not be read to "cast doubt" on presumptively lawful regulatory measures.  See Heller, 554 U.S. at 626; McDonald, 130 S. Ct. at 3047.  See also Warden, 697 F. Supp. 2d at 1223, 1229-30.  And Ezell v. City of Chicago, 651 F.3d 684, 710 (7th Cir. 2011), did not involve the issue of "sensitive places."  In sum, Plaintiffs have provided no persuasive reason to reject the conclusion that the Corps-managed land at issue is a sensitive place under Heller.

The Corps regulation regulates the places a firearm may be carried; as such, it is unlike the statute at issue in <u>Chovan</u> and in <u>United States v. Booker</u>, 644 F.3d 12 (1st Cir. 2011), which categorically banned gun ownership by a class of individuals.[4]  Thus, Plaintiffs err when they urge that a firearms regulation that is one of the "presumptively lawful regulatory measures" enumerated in <u>Heller</u> must additionally be justified under heightened scrutiny.  Plaintiffs similarly err in contending that <u>Chovan</u> "flatly rejected [the] approach" that these presumptively-lawful measures address conduct falling outside the scope of the Second Amendment.  Pl. Opp. at 8.  In fact, <u>Chovan</u> announced that the first step of its Second Amendment inquiry "asks whether the challenged law burdens conduct protected by the Second Amendment," and its application of that first step included analyzing whether the law at issue was a presumptively-lawful regulatory measure.  735 F.3d at 1136, 1137.  And <u>Heller</u> does not help Plaintiffs' argument because the <u>Heller</u> Court expressly stated that "*nothing in our opinion* should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," 554 U.S. at 626 (emphasis added), and described such "regulatory measures" as "presumptively lawful."  <u>Id.</u> at 627 n.26.  In sum, the Corps regulation is a presumptively-lawful measure regulating firearms, and it survives Plaintiffs' Second Amendment challenge and need not be subject to additional scrutiny.

But if the Court decides to apply additional scrutiny, because the Corps acted in its proprietary capacity when it enacted the regulation, its action is subject to a lower standard of scrutiny, and the regulation satisfies that standard.  Def. Mem. at 10-13.  Plaintiffs' objections to this conclusion are invalid.  Pl. Opp. at 10-12.

---

[4] <u>See</u> <u>also</u> <u>United States v. Williams</u>, 616 F.3d 685 (7th Cir. 2010) (involving categorical ban on firearms possession by class of individuals); <u>United States v. Chester</u>, 628 F.3d 673 (4th Cir. 2010) (same); <u>United States v. Reese</u>, 627 F.3d 792 (10th Cir. 2010) (same).

First, Plaintiffs contend that the government-as-proprietor standard applied by the Supreme Court in United States v. Kokinda, 497 U.S. 720 (1990), and Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), should not apply in the Second Amendment context. Pl. Opp. at 11 & n.5. However, Plaintiffs' dispute is with the Ninth Circuit, which pointedly cited Kokinda and Engquist in an en banc case upholding a county ordinance regulating the sale of firearms "only on County property" against a Second Amendment challenge. See Nordyke v. King, 681 F.3d 1041, 1044-45 (9th Cir. 2012) (en banc). The Ninth Circuit thus applied the government-as-proprietor standard in evaluating a Second Amendment claim. And the suggestion that place limitations on the carrying of firearms are per se absurd contravenes Heller's designation of "laws forbidding the carrying of firearms in sensitive places" as "presumptively lawful." 554 U.S. at 626-27 & n.26.

Second, Plaintiffs err in asserting that the Corps regulation does not satisfy the government-as-proprietor standard because of the regulation's scope. Pl. Opp. at 12. The sentence quoted by Plaintiffs from the only case they cite concerns a First Amendment overbreadth analysis, see Initiative & Referendum Inst. v. U.S. Postal Serv., 417 F.3d 1299, 1312-16 (D.C. Cir. 2005), an analysis that courts have repeatedly found to be inapplicable in the Second Amendment context. See Hightower v. City of Boston, 693 F.3d 61, 82 (1st Cir. 2012).

Third, Plaintiffs mistakenly argue that applying the government-as-proprietor standard here would be inconsistent with Chovan and with other courts' rejection of rational-basis review for Second Amendment claims generally. Pl. Opp. at 12. But Chovan specifically noted that "[i]n determining the appropriate level of scrutiny, other circuit courts have looked to the First Amendment as a guide." 735 F.3d at 1138 (citing cases). And applying the government-as-proprietor standard in this specific context – where the Corps enacted the regulation in its

capacity as government proprietor – corresponds to First Amendment practice, which upholds government action when the government is "acting in its proprietary capacity" as valid "unless it is unreasonable, . . . arbitrary, capricious, or invidious." Kokinda, 497 U.S. at 725-26 (citation and internal punctuation omitted); see also id. at 737, 740. In sum, Plaintiffs' objections to the government-as-proprietor standard, and to its application to the Corps regulation, are unsound.

Even if this Court were to apply a more rigorous level of review, the Corps regulation would pass constitutional muster. In considering Second Amendment challenges to laws regulating the place in which an individual may carry a firearm, courts generally have employed intermediate scrutiny, or a standard close to that. Def. Mem. at 5, 14-15 & n.11. Plaintiffs offer no reason for the Court to apply strict scrutiny. Pl. Opp. at 13-14. First, Chovan supports the application of no more than intermediate scrutiny here because there, the Ninth Circuit stated that "Heller tells us that the core of the Second Amendment is the right of law-abiding, responsible citizens to use arms *in defense of hearth and home*." 735 F.3d at 1138 (emphasis added) (citations and internal punctuation omitted). That core right is not implicated here because Corps-managed land is not Plaintiffs' hearth and home; thus, Chovan does not support the application of strict scrutiny here.

Second, Plaintiffs' characterization of cases in which courts have applied intermediate scrutiny to Second Amendment claims as "involv[ing] mainly" either regulations applying only to people who pose a heightened danger of misusing firearms or "regulations that are less burdensome," Pl. Opp. at 13, sweeps far too broadly. "Many courts have applied intermediate scrutiny to laws burdening protected conduct that falls outside the core Second Amendment right of a law-abiding citizen to possess weapons for self defense in the home." Young v. State of Hawaii, 911 F. Supp. 2d 972, 990 (D. Haw. 2012) (citing cases); see also Def. Mem. at 5 n.4.

6

Intermediate scrutiny analysis here "require[s] (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." Chovan, 735 F.3d at 1139.  The Corps regulation satisfies these requirements.  Def. Mem. at 15-20.  Plaintiffs contend that the Corps must offer evidence to support the constitutionality of the regulation, and then they must have a chance to rebut that evidence.  Pl. Opp. at 14.  But they cite no case law applying the burden-shifting appropriate to a preliminary-injunction analysis for a First Amendment claim, see Sanders County Republican Central Committee v. Bullock, 698 F.3d 741, 744 (9th Cir. 2012), to a Second Amendment claim at the dismissal stage.  And the Corps is neither asking the Court not to "accept all well-pleaded allegations of material fact as true," Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012), nor to "weigh potential evidence that the parties might present at trial."  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).  Rather, the issue is, as a matter of law, whether the Corps regulation passes constitutional muster under the appropriate level of scrutiny, an inquiry other courts have undertaken when analyzing Second Amendment challenges to firearms laws.[5]  Finally, Abilene Retail v. Dickinson County, 492 F.3d 1164 (10th Cir. 2007), involved a First Amendment challenge to a zoning ordinance passed by a county government using its power "to regulate or license" rather than "to manage its internal operations."  Id. at 1167; see Kokinda, 497 U.S. at 725.  Moreover, "where First Amendment interests are implicated, [courts are] obligated to make an independent examination of the record in its

---

[5] See Schrader v. Holder, 704 F.3d 980, 984, 989-91 (D.C. Cir. 2013), cert. denied, 134 S. Ct. 512 (2013); Piszczatoski v. Filko, 840 F. Supp. 2d 813, 816, 834-37 (D.N.J. 2012), aff'd sub. nom. Drake v. Filko, 724 F.3d 426 (3d Cir. 2013); GeorgiaCarry.Org, Inc. v. Georgia, 764 F. Supp. 2d 1306, 1307-08, 1317-20 (M.D. Ga. 2011), aff'd on other grounds, 687 F.3d 1244 (11th Cir. 2012), cert. denied, 133 S. Ct. 856 (2013); Young, 911 F. Supp. 2d at 980, 990-91; Hall v. Garcia, 2011 WL 995933, at *1, 4 (N.D. Cal. March 17, 2011); Tyler v. Holder, 2013 WL 356851, at *1, 4-5 (W.D. Mich. Jan. 29, 2013); Williams v. Puerto Rico, 910 F. Supp. 2d 386, 396-98, 400 (D.P.R. 2012).

entirety," 492 F.3d at 1170, an examination involving an extensive inquiry unique to the free speech context.  Thus, Plaintiffs have provided no reason why the Court may not utilize an intermediate-scrutiny analysis at the motion to dismiss stage.

The fit between the regulation and the Corps' important objectives satisfies intermediate scrutiny.  Plaintiff concedes that "crime prevention is a compelling governmental interest." Pl. Opp. at 16.  Due to its very limited law enforcement authority, maintaining public safety and infrastructure security at the Corps-managed projects has included limiting visitors' authority to carry firearms, while permitting visitors to possess them under specific circumstances.  Def. Mem. at 18.  Courts have upheld far broader limits on the carrying of firearms under intermediate scrutiny, relying on policymakers' expertise in protecting public safety.  See, e.g., Drake, 724 F.3d at 437, 438; Kachalsky v. Cty. of Westchester, 701 F.3d 81, 99 (2d Cir. 2012), cert. denied, 133 S. Ct. 1806 (2013).  Plaintiffs fail to provide the Court with reasons that undermine the substantial fit between the Corps regulation and its objectives.  In suggesting that the Corps has not sufficiently "draw[n] a connection" between crime prevention and the Corps regulation because, Plaintiffs assert, "no such connection exists, " Pl. Opp. at 16, Plaintiffs rely exclusively on a series of articles that they claim "contradict . . . [the] more guns, more crime" hypothesis.  Id. at 17.  These citations, however, do not diminish the substantial fit between the Corps regulation and the objective of protecting public safety and securing critical infrastructure.

As an initial matter, many other studies have challenged the validity of the evidence on which Plaintiffs rely.[6]  Additionally, regardless of the reliability of the articles cited by Plaintiffs, there is no question that a competing body of academic literature reaches a conclusion

---

[6] See, e.g., National Academy of Sciences, "Firearms and Violence: A Critical Review," at 116-117, 127-150 (2005).

diametrically opposed to Plaintiffs': that increasing the prevalence of concealed weapons and firearms in the public sphere generally increases risks to public safety and to law enforcement.[7] While the Court need not resolve this ongoing empirical dispute, Plaintiffs' selective citation to the literature is insufficient to counter the substantial and reasonable fit between the Corps regulation and its compelling public safety objective. See Nixon v. Shrink Missouri Gov't PAC, 528 U.S. 377, 394-95 (2000). Most fundamentally, Plaintiffs' citation to research on the safety benefits or hazards of concealed-carry laws generally is misplaced in the context of this case.

Policymakers' "predictive judgments" about the risk of dangerous behavior should receive "substantial deference" from courts. Turner Broad. Sys. v. FCC, 512 U.S. 622, 665 (1994). And whether permitting the public to carry concealed weapons in the public sphere *generally* enhances or diminishes public safety is a different question from whether, as a constitutional matter, the fit between the Corps regulation and its objective of preventing crime against visitors to Corps-managed lands and protecting critical infrastructure is a substantial and reasonable one. The Corps' justification for the regulation is not that public possession of firearms generally is inherently dangerous. Rather, it is because Corps-managed lands are sensitive places, Def. Mem. at 6-9, and because the Corps has reasonably determined that, as a result of its limited law enforcement authority, one of the ways in which it has maintained public safety and secured its critical infrastructure at the projects it manages has been to place restrictions on visitors' authority to carry firearms. Id. at 18. "We must emphasize that the fit

---

[7] See, e.g., John Donohue, *The Impact of Concealed-Carry Laws*, Evaluating Gun Policy Effects on Crime and Violence 289, 320 (2003); Jens Ludwig, *Concealed-Gun-Carrying Laws and Violent Crime: Evidence from State Panel Data*, 18 Int'l Rev. L. & Econ. 239 (1998); Craig Perkins, National Crime Victimization Survey, 1993-2001: Weapon Use and Violent Crime, Bureau of Justice Statistics Special Report (Sept. 2003); Charles C. Branas et al., *Investigating the Link Between Gun Possession and Gun Assault*, Am. J. of Public Health 99:11 (2009); David Hemenway & Deborah Azrael, *The Relative Frequency of Offensive and Defensive Gun Uses: Results from a National Survey*, 15 Violence and Victims 257, 571 (2000).

9

between the challenged law and the interest in public safety need only be 'reasonable.'" Drake, 724 F.3d at 439.  Plaintiffs fail to show that the fit here is unreasonable.  See Pl. Opp. at 18-20.  Initially, Plaintiffs fail to recognize that "[s]tate regulation under the Second Amendment has always been more robust than of other enumerated rights."  Kachalsky, 701 F.3d at 100.  And although Plaintiffs may object to the Corps regulation's provision authorizing the District Commander to provide written permission to specific individuals to carry firearms on Corps-managed lands, Pl. Opp. at 18, that provision is akin to state licensing or permitting requirements of a particularized showing to carry a firearm in public.  Such requirements have been upheld under intermediate scrutiny despite contentions that they were unconstitutionally burdensome.  See Drake, 724 F.3d at 439-40.  Moreover, Plaintiffs' claim that this provision results in overbroad discretion, Pl. Opp. at 18, fails because their sole support for such a claim is a case involving prior restraint in the First Amendment context, and courts have repeatedly rejected attempts to apply the overbroad-discretion standard from First Amendment prior restraint doctrine to Second Amendment claims.   Finally, Plaintiffs' attempt to draw a sharp contrast between the Corps regulation and other firearms regulations involving federal property, id. at 18-19, ignores a host of similar restrictions on the carrying of firearms on federal property, see Def. Mem. at 19-20 & n.13, and fails to distinguish cases such as Young, which upheld against a Second Amendment challenge a state's firearm carrying laws that, like the Corps regulation, "allow firearms to be carried in public between specified locations or with a showing of special need."  911 F. Supp. 2d at 990.  In sum, the Corps regulation satisfies intermediate scrutiny because it relates substantially to the Corps' interest in preserving public safety and protecting critical infrastructure.

    For the reasons stated above and in our opening brief, the Court should dismiss Plaintiffs' Complaint for failure to state a claim.

Dated:  December 19, 2013							Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

WENDY J. OLSON
United States Attorney

JOANNE RODRIGUEZ
Assistant United States Attorney

  /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2013, I caused the foregoing document to be served via electronic case filing.

  /s/ Daniel Riess
Daniel Riess