James M. Manley, Esq. (CO No. 40327)
(*admitted pro hac vice*)
Steven J. Lechner, Esq. (CO No. 19853)
(*admitted pro hac vice*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

John L. Runft, Esq. (ISB No. 1059)
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS and ALAN C. BAKER,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>U.S. ARMY CORPS OF ENGINEERS, *et al.*,<br><br>　　　　　　Defendants. | Case No. 3:13-CV-00336-BLW<br><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ........................................................................... 1

ARGUMENT ................................................................................ 1

I.     STANDARD OF REVIEW ........................................................ 1

II.    THE CORPS FIREARMS BAN BURDENS SECOND
       AMENDMENT RIGHTS ........................................................ 3

       A.     Defendants Unconstitutionally Ban Firearms Kept In A Tent .......... 3

       B.     Defendants Unconstitutionally Ban Carrying Firearms ................... 6

III.   THE CORPS FIREARMS BAN FAILS STRICT AND
       INTERMEDIATE SCRUTINY ................................................. 8

       A.     The Ban Places A Severe Burden On The Core Second
              Amendment Right Of Self-Defense .................................... 8

       B.     Under Either Strict Or Intermediate Scrutiny, Defendants
              Failed To Draw A Connection Between Crime Prevention And
              The Ban ..................................................................... 8

IV.    DEFENDANTS CANNOT ESCAPE THEIR EVIDENTIARY
       BURDEN ......................................................................... 13

       A.     The 12 Million Acres Of Public Lands That Defendants
              Administer Are Not A "Sensitive Place" ............................ 14

       B.     Presumptively Lawful Regulations May Still Be
              Unconstitutional .......................................................... 17

       C.     Reasonableness Review Is Inappropriate ............................ 18

V.     A NATIONWIDE INJUNCTION IS APPROPRIATE TO ENJOIN
       THIS UNCONSTITUTIONAL REGULATION ........................... 19

CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alward v. State*,
    912 P.2d 243 (Nev. 1996) ..................................................... 6

*Bateman v. Perdue*,
    881 F. Supp. 2d 709 (E.D.N.C. 2012) ................................. 7, 15

*Birdt v. San Bernardino Sheriff's Dept.*,
    2014 WL 2608127 (C.D. Cal. 2014) ..................................... 2

*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
    492 U.S. 469 (1989) ............................................................ 3, 9

*Bonidy v. U.S. Postal Service*,
    2013 WL 3448130 (D. Colo. 2013) ...................................... 7, 15

*Bresgal v. Brock*,
    843 F.2d 1163 (9th Cir. 1987) ............................................. 19

*In re Brickey*,
    70 P. 609 (Idaho 1902) ........................................................ 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................ 2

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994) .............................................................. 11, 15

*City of Las Vegas v. Moberg*,
    485 P.2d 737 (N.M. Ct. App. 1971) ..................................... 15

*Diaz v. Eagle Produce Ltd. Partnership*,
    521 F.3d 1201 (9th Cir. 2008) ............................................. 2

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
    704 S.E.2d 365 (Va. 2011) .................................................. 11, 16

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................ passim

*Doe v. Wilmington Housing Authority*,
    880 F. Supp. 2d 513 (D. Del. 2012) ..................................... 5

*Doe v. Wilmington Housing Authority,*
    88 A.3d 654 (Del. 2014) ................................................................ 5, 6

*Doe v. Wilmington Housing Authority,*
    2014 WL 2547754 (3d Cir. 2014)................................................. 5, 6

*Earth Island Institute v. Ruthenbeck,*
    490 F.3d 687 (9th Cir. 2007) ........................................................ 20

*Eng Fung Jem v. United States,*
    281 F.2d 803 (9th Cir. 1960) ........................................................ 4

*English v. State,*
    35 Tex. 473 (1871)........................................................................ 16

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ....................................................... 2, 8, 19

*Float-Rite Park v. Village of Somerset,*
    629 N.W.2d 818 (Wis. Ct. App. 2001) ........................................ 6

*Frisby v. Schultz,*
    487 U.S. 474 (1988)...................................................................... 3

*GeorgiaCarry.Org, Inc. v. Georgia,*
    764 F. Supp. 2d 1306 (M.D. Ga. 2011) ....................................... 7, 12

*GeorgiaCarry.Org, Inc. v. Georgia,*
    687 F.3d 1244 (11th Cir. 2012) ................................................... 5, 7

*Gonzalez v. Arizona,*
    677 F.3d 383 (9th Cir. 2012) ....................................................... 2

*Haley v. State,*
    696 N.E.2d 98 (Ind. Ct. App. 1998)............................................ 6

*Hall v. Garcia,*
    2011 WL 995933 (N.D. Cal. 2011) ............................................. 11, 16

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011)................................................... 3, 9

*Hill v. State,*
    53 Ga. 472 (1874) ........................................................................ 16

*Illinois Ass'n of Firearms Retailers v. City of Chicago*,
    961 F. Supp. 2d 928 (N.D. Ill. 2014) ................................................................ 16

*Initiative and Referendum Institute v. U.S. Postal Service*,
    417 F.3d 1299 (D.C. Cir. 2005) ........................................................................ 13

*Kachalsky v. County of Westchester*,
    701 F.3d 81 (2d Cir. 2012) ............................................................................... 16

*Lakewood v. Pillow*,
    501 P.2d 744 (Colo. 1972) ................................................................................ 15

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    941 F.2d 970 (9th Cir. 1991) ............................................................................ 19

*McDonald v. City of Chicago*,
    130 S. Ct. 3020 (2010) ................................................................................ 11, 16

*Miller v. United States*,
    357 U.S. 301 (1958) ........................................................................................... 6

*Minnesota v. Olson*,
    495 U.S. 91 (1990) ............................................................................................. 4

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012) ..................................................................... passim

*Morris v. U.S. Army Corps of Engineers*,
    2014 WL 117527 (D. Idaho Jan. 10, 2014) ............................................... passim

*Nordyke v. King*,
    644 F.3d 776 (9th Cir. 2011) ............................................................................ 19

*Nordyke v. King*,
    681 F.3d 1041 (9th Cir. 2012) .......................................................................... 18

*Peruta v. County of San Diego*,
    742 F.3d 1144 (9th Cir. 2014) .................................................................... passim

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) ........................................................................ 19

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ........................................................................................... 3

*Rosky v. State*,
    111 P.3d 690 (Nev. 2005) ....................................................................... 6

*State v. Blocker*,
    630 P.2d 824 (Or. 1981) ....................................................................... 15

*State v. Pruss*,
    181 P.3d 1231 (Idaho 2008).................................................................. 6

*State v. Shelby*,
    2 S.W. 468 (Mo. 1886) ....................................................................... 16

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009)............................................................................. 20

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ............................................................. 20

*United States v. Basher*,
    629 F.3d 1161 (9th Cir. 2011) ............................................................. 4

*United States v. Booker*,
    644 F.3d 12 (1st Cir. 2011).................................................................. 17

*United States v. Chester*,
    628 F.3d 673 (4th Cir. 2010) ............................................................... 18

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ............................................................. passim

*United States v. Gooch*,
    6 F.3d 673 (9th Cir. 1993) ................................................................... 4

*United States v. Masciandaro*,
    638 F.3d 458, 474 (4th Cir. 2011) ....................................................... passim

*United States v. Oregon*,
    657 F.2d 1009 (9th Cir. 1981) ............................................................. 19

*United States v. Reese*,
    627 F.3d 792 (10th Cir. 2010) ............................................................. 18

*United States v. Sandoval*,
    200 F.3d 659 (9th Cir. 2000) ............................................................... 4

*United States v. Salerno*,
    481 U.S. 739 (1987)............................................................ 8

*United States v. Williams*,
    616 F.3d 685 (7th Cir. 2010) .............................................. 18

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)............................................................ 9

*Warden v. Nickels*,
    697 F. Supp. 2d 1221 (W.D. Wash. 2010)......................... 12, 16

**Constitutional Provisions**

U.S. Const. amend. II............................................................. passim

**Statutes**

5 U.S.C. § 706.......................................................................... 20

16 U.S.C. § 1a-7b (2009) ........................................................ 12

16 U.S.C. § 460d..................................................................... 5

**Rules**

Fed. R. Civ. P. 56 .................................................................... 1

**Regulations**

Idaho Admin. Code § 26.01.20.600 ........................................ 10

36 C.F.R. § 2.4(b) ................................................................... 12, 13

36 C.F.R. § 327.8 .................................................................... 20

36 C.F.R. § 327.13 .................................................................. passim

36 C.F.R. § 327.26(a).............................................................. 20

**Other Authorities**

*The Oxford Dictionary of Quotations* 379 (2d ed. 1953)........... 6

 "Laws & Policies, Firearms in Parks," Yellowstone National Park, *available at*
http://www.nps.gov/yell/parkmgmt/lawsandpolicies.htm. ....... 10

Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America*, 25 Law & Hist. Rev. 139 (2007).........................................   15

## <u>INTRODUCTION</u>

This Court has already decided the critical issues in this case in favor of Plaintiffs.  *See*

*Morris v. U.S. Army Corps of Engineers*, 2014 WL 117527 (D. Idaho Jan. 10, 2014).  That

decision was "preliminary in nature.  The Corps remains entitled to an evidentiary hearing or

trial to establish a factual record before the Court reaches any final resolution."  *Id*.  Defendants

eschewed an evidentiary hearing or trial.  Instead, they produced all documents related to the

regulation at issue, and filed a Motion for Summary Judgment based on those documents and the

affidavit of one Corps employee.  *See* Notice Of Conventional Filing Of Certified Administrative

Record (Dkt. 50); Motion For Summary Judgment (Dkt. 52); Memorandum In Support Of

Motion For Summary Judgment (Dkt. 52-1); Statement Of Material Facts (Dkt. 52-2).  None of

the facts alleged or substantive arguments raised in support of Defendants' Motion for Summary

Judgment differ significantly from the facts alleged or arguments raised in support of their

Motion to Dismiss.  *See* Memorandum in Support of Motion to Dismiss (Dkt. 30-1).  As such,

Plaintiffs incorporate by reference their Brief in Support of Plaintiffs' Motion for Preliminary

Injunction (Dkt. 4-1), Reply In Support Of Their Motion For Preliminary Injunction (Dkt. 21),

and Opposition To Defendants' Motion To Dismiss (Dkt. 33).  Pinpoint citations are provided

below to avoid needless repetition.  As demonstrated below, Plaintiffs are entitled to entry of

summary judgment as a matter of law.

## <u>ARGUMENT</u>

## I.      STANDARD OF REVIEW.

Summary judgment is appropriate under Fed. R. Civ. P. 56 if the pleadings, depositions,

answers to interrogatories, admissions on file, and affidavits, if any, show there is no genuine

issue as to any material facts and that the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  On summary judgment courts "view[] the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party . . . ."  *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quotation omitted).  Defendants bear the evidentiary burden of proving the firearms ban does not violate the Constitution.  *United States v. Chovan*, 735 F.3d 1127, 1140 (9th Cir. 2013) (requiring statistical evidence for disarming misdemeanants).

In *Chovan*, the Ninth Circuit adopted a "two-step Second Amendment inquiry."  735 F.3d at 1136.  The first question "asks whether the challenged law burdens conduct protected by the Second Amendment."  *Id*.  If the law imposes such a burden, as the Corps firearms ban does in this case, then this Court must "apply an appropriate level of scrutiny."  *Id*.  In no Second Amendment case involving the core right of self-defense has the Ninth Circuit applied less than intermediate scrutiny.  *Id*.  The level of scrutiny depends on (1) "how close the law comes to the core of the Second Amendment right," and (2) "the severity of the law's burden on the right."  *Id*. at 1138 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 705 (7th Cir. 2011)).  "A regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny."  *Morris*, 2014 WL 117527 at *2.

A "near-total prohibition on bearing" arms is per se unconstitutional.  *Peruta v. County of San Diego*, 742 F.3d 1144, 1170 (9th Cir. 2014).[1]  Per se invalidity or strict scrutiny are appropriate here, because this case involves a total ban on firearms possessed by law-abiding individuals for self-defense on Corps-managed lands.  *See Chovan*, 735 F.3d at 1138; *Peruta*,

---

[1] *Peruta* is the law of the Circuit, even though non-parties have filed en banc petitions in that case.  *See Birdt v. San Bernardino Sheriff's Dept.*, 2014 WL 2608127, *6 (C.D. Cal. 2014) (citing *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)); *cf.* Dkt. 52-1 at 4 n.1.

742 F.3d at 1170.

Under strict scrutiny, Defendants must show that the ban is "narrowly tailored to serve a compelling governmental interest" and "is necessary to serve the asserted [compelling] interest." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (substitution in original) (quotation omitted). Under intermediate scrutiny, Defendants must show that their stated objective is significant, substantial, or important, and that there is a reasonable fit between the challenged regulation and the asserted objective. *Chovan*, 735 F.3d at 1138.  In either case, a "complete ban [on constitutionally protected activity] can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485–86 (1988); *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) ("[Defendants] must establish a tight 'fit' between the [firearm] registration requirements and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.'" (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989))).

It is undisputed that the Corps firearms ban prohibits Plaintiffs from exercising their right to possess a functional firearm for self-defense on Corps-managed public lands.  Pls.' Statement Of Undisputed Material Facts ("Pls.' SOF") ¶¶ 7, 17–44.  Defendants failed to carry their burden to prove the ban is constitutional.  Plaintiffs are therefore entitled to entry of summary judgment.

## II.      THE CORPS FIREARMS BAN BURDENS SECOND AMENDMENT RIGHTS.

### A.      Defendants Unconstitutionally Ban Firearms Kept In A Tent.

Plaintiffs' first claim seeks relief from Defendants' deprivation of the constitutional right to keep a functional firearm in a tent.  Compl. ¶¶ 46–50.  The central holding of *District of Columbia v. Heller* concerns the constitutionality of possessing functional firearms in a dwelling:

"Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning [handguns] from the home . . . would fail constitutional muster."  554 U.S. 570, 628–29 (2008) (footnote omitted).  Because the Corps ban does not allow a law-abiding individual to keep a functional firearm in a dwelling, the ban conflicts with the central holding of *Heller*.  *Id.*; *Morris*, 2014 WL 117527 at *2; *see* Dkt. 4-1 at 6–9; Dkt. 21 at 9–11.

Defendants argue that tents pitched on public lands are not entitled to the full protection of the Bill of Rights.  Dkt. 52-1 at 18–19.  Their argument ignores the law of the Circuit and depends on equating public lands with private property.

The Ninth Circuit has held that the Bill of Rights applies in similar fashion to private homes and tents pitched on public lands:  "[T]ents are protected under the Fourth Amendment like a more permanent structure . . . .  [C]ampers could reasonably assert a legitimate, though temporary, interest in their privacy even in this short-term 'dwelling.'"  *United States v. Gooch*, 6 F.3d 673, 677–78 (9th Cir. 1993) (tent at state campground) (citing *Eng Fung Jem* v. *United States*, 281 F.2d 803, 805 (9th Cir. 1960) ("The hotel room in question was appellant's dwelling. That he lived there for but several days is of no consequence . . . .  The right to privacy must be accorded with equal vigor both to transient hotel guests and to occupants of private, permanent dwellings.")); *United States v. Basher*, 629 F.3d 1161, 1169 (9th Cir. 2011) (tent on National Forest Service lands); *United States v. Sandoval*, 200 F.3d 659 (9th Cir. 2000) (tent on BLM lands).  The Supreme Court also recognizes that the Fourth Amendment's protections do not depend on property ownership:  "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy . . . ."  *Minnesota v. Olson*, 495 U.S. 91, 99 (1990).  "The privacy concerns of the Fourth Amendment carry over well into the Second Amendment's security concerns."  *Morris*, 2014 WL 117527 at *2.

4

Defendants ignore these cases dealing with Bill of Rights protections on public lands and rely on *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012), for the proposition that the Second Amendment should not have full effect on public lands.  Dkt. 52-1 at 18–19.  That case, however, simply held that "the Second Amendment, [does not] trump[] a private property owner's right to exclusively control who, and under what circumstances, is allowed on his or her own premises."  *GeorgiaCarry.Org, Inc.*, 687 F.3d at 1261.  The Eleventh Circuit's decision hinged on the fact that "a place of worship is private property, not public property . . . ."  *Id*.  Defendants have suggested that Corps-managed lands should be treated like private property, Dkt. 52-1 at 17, but that would be a peculiar label for lands that are indisputably owned by the federal government and managed for the benefit of the public.  16 U.S.C. § 460d.

Defendants' reliance on *Doe v. Wilmington Housing Authority*, 880 F. Supp. 2d 513, 534 (D. Del. 2012), is likewise inapposite.  Putting aside that—unlike 36 C.F.R. § 327.13—the regulation at issue in *Doe* "expressly permits some use of firearms for self-defense in the common areas," *id*., the regulation was ultimately struck down by the Delaware Supreme Court. *Doe v. Wilmington Housing Authority*, 88 A.3d 654, 668 (Del. 2014).  The case involved both state and federal constitutional claims, but only the dismissal of the state claims was appealed. *Doe v. Wilmington Housing Authority*, 2014 WL 2547754, *1 (3d Cir. 2014) (unpublished).  The Third Circuit referred certified questions to the Delaware Supreme Court about the scope of the state's right to keep and bear arms provision.  *Id*.  The supreme court held that a ban on firearms in public housing common areas failed under intermediate scrutiny and was unconstitutionally overbroad:

> [R]easonable, law-abiding adults become disarmed and unable to repel an intruder by force in any common living areas when the intervention of society on their behalf may be too late to prevent an injury.

*Doe*, 88 A.3d at 668, 663 (quoting *Heller*, 554 U.S. at 595).  The Third Circuit adopted the

supreme court's opinion and remanded for entry of judgment in favor of the plaintiffs.  *Doe*,

2014 WL 2547754 at *1.  Here, the Corps firearms ban is broader than the regulation in *Doe* and

is also unconstitutionally overbroad.  *Morris*, 2014 WL 117527 at *4.

 Defendants also fail to address the long line of state cases recognizing that the Bill of

Rights protects a tent or temporary dwelling.  *See, e.g., State v. Pruss*, 181 P.3d 1231, 1234

(Idaho 2008); *Alward v. State*, 912 P.2d 243, 249 (Nev. 1996) *overruled on other grounds by*

*Rosky v. State*, 111 P.3d 690 (Nev. 2005); *Float-Rite Park v. Village of Somerset*, 629 N.W.2d

818, 824 (Wis. Ct. App. 2001); *Haley v. State*, 696 N.E.2d 98, 101 (Ind. Ct. App. 1998).  In

*Pruss*, the Idaho Supreme Court used strong language to describe the inviolability of a tent

illegally pitched on state lands:  "[t]he respect for the sanctity of the home does not depend upon

whether it is a mansion or hut, or whether it is a permanent or temporary structure."  *Id*. at 1234.

This conclusion was based on *Miller v. United States*, 357 U.S. 301, 307 (1958):

> The poorest man may in his cottage bid defiance to all the forces of the Crown.  It
> may be frail; its roof may shake; the wind may blow through it; the storm may
> enter; the rain may enter; but the King of England cannot enter—all his force
> dares not cross the threshold of the ruined tenement!

*Id*. (quoting *The Oxford Dictionary of Quotations* 379 (2d ed. 1953)).

 Because a tent is a dwelling for constitutional purposes, the Corps firearms ban conflicts

with the central holding of *Heller*.  Accordingly, the Corps ban on firearms possessed for self-

defense in tents violates the Second Amendment.

  **B.**  **Defendants Unconstitutionally Ban Carrying Firearms.**

 Plaintiffs' second claim seeks relief from Defendants' deprivation of the constitutional

right to carry a functional firearm—openly, concealed, or in a vehicle—on Corps-administered

public lands.  Compl. ¶¶ 51–55.  In *Peruta*, 742 F.3d at 1166, the Ninth Circuit ruled that the

6

Second Amendment protects the right of law-abiding citizens to carry a firearm in public for self-defense. *Peruta* echoes the Seventh Circuit's decision protecting the right to carry in *Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012). As this Court has recognized, "[t]he ban imposed by the Corps places this case closer to *Moore* than *Masciandaro*. The Corps' regulation contains a flat ban on carrying a firearm for self-defense purposes." *Morris*, 2014 WL 117527 at *3.

As explained in detail previously, the right to carry is inherent in the text, history, and tradition of the Second Amendment. Dkt. 4-1 at 10–15; Dkt. 21 at 11–15. *Heller*'s detailed historical analysis of the Second Amendment necessarily defined the phrase "bear arms." 554 U.S. at 584–86. The Court concluded in no uncertain terms that, "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'" *Id*. at 584. The Court applied this common historical understanding of the term "bear" to conclude that the Second Amendment protects the "individual right to possess and carry weapons in case of confrontation." *Id*. at 592. The right to carry has been recognized by numerous state and federal courts. *Id*. at 629 (collecting state cases); *Peruta*, 742 F.3d at 1166; *Moore*, 702 F.3d at 936; *Bonidy v. U.S. Postal Service*, 2013 WL 3448130, *6 (D. Colo. 2013), appeals docketed, Nos. 13-1374, 13- 1391 (10th Cir. Sept. 20, 2013); *Bateman v. Perdue*, 881 F. Supp. 2d 709, 714 (E.D.N.C. 2012); *see also GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1319 (M.D. Ga. 2011), *aff'd*, 687 F.3d 1244 (11th Cir. 2012). Because the Corps firearms ban is a "near-total prohibition on bearing" arms in public for self-defense, it is per se unconstitutional. *Peruta*, 742 F.3d at 1170.

III.    **THE CORPS FIREARMS BAN FAILS STRICT AND INTERMEDIATE SCRUTINY.**

A.    **The Ban Places A Severe Burden On The Core Second Amendment Right Of Self-Defense.**

It is well established that, "just as in the First Amendment context, the level of scrutiny in the Second Amendment context should depend on 'the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'"  *Chovan*, 735 F.3d at 1138 (quoting *Chester*, 628 F.3d at 682); *Ezell*, 651 F.3d at 708 ("a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end.").  The Corps ban renders "the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense" a nullity on Corps lands.  *Chovan*, 735 F.3d at 1138.  Because the ban "implicate[s] the core Second Amendment right, [and] place[s] a substantial burden on the right . . . strict scrutiny is the proper standard to apply."  *Id*.  Moreover, a "near-total prohibition on bearing" arms is per se unconstitutional.  *Peruta*, 742 F.3d at 1170.  Under "any of the standards of scrutiny that [courts] have applied to enumerated constitutional rights," Defendants' evidence fails to justify a total ban on firearms possessed for self-defense.  *Heller*, 554 U.S. at 628–29.

B.    **Under Either Strict Or Intermediate Scrutiny, Defendants Failed To Draw A Connection Between Crime Prevention And The Ban.**

In order to survive even intermediate scrutiny, Defendants must prove that their stated objective is significant, substantial, or important, and that there is a reasonable fit between the challenged regulation and their asserted objective.  *Chovan*, 735 F.3d at 1138.  It is undisputed that crime prevention is an important government objective.  Dkt. 52-1 at 22 (quoting *United States v. Salerno*, 481 U.S. 739, 749 (1987) for the proposition "the government's interest in preventing crime . . . is both legitimate and compelling.").

There is not a reasonable fit here, however, because "a substantial portion of the burden on [personal security] does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989); *Heller*, 670 F.3d at 1258 ("[Defendants] must establish a tight 'fit' between the [firearm] registration requirements and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.'" (quoting *Fox*, 492 U.S. at 480)).  Defendants must prove that the broadest possible regulation, a total ban, does not "burden substantially more [conduct] than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 798–800.  The Corps ban is not sufficiently tailored, because it is "a flat ban on carrying a firearm for self-defense purposes." *Morris*, 2014 WL 117527 at *3.

Defendants do not attempt to separately justify the ban under intermediate scrutiny; instead, they simply rely on their argument that the ban in not "unreasonable, . . . arbitrary, capricious, or invidious." Dkt. 52-1 at 18, 22.  Defendants assert that it is necessary to prohibit all firearms possessed for self-defense in order to prevent unlawful use of firearms. *Id*. at 16. Defendants' only support for this assertion is inapposite documents that are—at best—fourteen years out of date, and a self-serving declaration by one of its employees. *Id*.  Nothing Defendants offer in support of their Motion for Summary Judgment differs significantly from what this Court has already rejected. *See Morris*, 2014 WL 117527 at *4.

Although crime prevention is a compelling governmental interest, Defendants concede that the Corps is not primarily responsible for achieving this interest—state and local law enforcement are.  Dkt. 52-1 at 16–17.  Corps park rangers issue citations for violations of Corps regulations, such as the ban at issue in this case, but the task of protecting the public safety is borne primarily by qualified state and local law enforcement. *See* Pls.' SOF ¶¶ 8, 10–13.

9

Defendants' speculation about a "chilling effect" on Corps park rangers ignores state and local law enforcement and involves an inferential leap unsupported by the record.  Dkt. 52-1 at 17. Defendants cite decades-old surveys about park rangers' self-reported interactions with visitors, but these surveys did not address law-abiding individuals carrying firearms for self-defense.  *See* Pls.' SOF ¶ 9.  Defendants' imagined concerns about park rangers' authority are similar to rationalizing a municipal gun ban because parking enforcement officers are not full-fledged police officers.  The cooperative agreements that allow state and local law enforcement to patrol Corps lands are nearly ubiquitous.  *See id*. ¶ 10.  By all accounts, these cooperative agreements have been successful in maintaining the same level of safety on Corps-managed as on other public lands—including parklands where firearms are permitted for self-defense.[2]  *See id*. ¶¶ 12– 13; Idaho Admin. Code § 26.01.20.600 (Mar. 2010) ("No person may discharge firearms . . . except in the lawful defense of person, persons, or property . . . ."); *see also* "Laws & Policies, Firearms in Parks," Yellowstone National Park, *available at* http://www.nps.gov/yell/parkmgmt/ lawsandpolicies.htm.  The notion that firearms possessed for self-defense would have any negative impact on Corps-managed lands is entirely speculative.

Nor do Defendants explain how firearms possessed for self-defense differ in any way from firearms possessed for hunting and target shooting.  Defendants admit that "Corps regulations allow for the carry and use of firearms and other weapons for hunting on a substantial portion of Corps project lands and waters, totaling millions of acres," but firearms possessed for self-defense are banned from those same millions of acres.  Dkt. 52-1 at 3.  By itself, this admission demonstrates the substantial overbreadth of this outdated regulation.  *See* Pls.' SOF ¶

---

[2] If these cooperative agreements were not working, the proper remedy would be for Defendants to seek greater enforcement authority from Congress, not to impose draconian limitations on Second Amendment rights.

16.  A hunter can carry a firearm afield to take game, but a birdwatcher using the same lands and carrying the same sort of weapon for self-defense violates 36 C.F.R. § 327.13.  There are already guns on Corps-administered lands for hunting and target shooting; there is no justification for prohibiting the core Second Amendment right of self-defense.  *Cf. City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) (Regulatory exemptions "may diminish the credibility of the government's rationale for restricting speech in the first place.").

Defendants offer no evidence that a ban on self-defense is tailored to prevent crime. Indeed, the record reflects much greater crime prevention and public safety gains could be achieved by limiting alcohol consumption or amplified music.  *See* Dkt. 52-2 ¶ 18.  Under Defendants' reasoning, any law meant to limit firearm possession with the intent of reducing crime would be constitutional.  But that same argument was rejected in *Heller* and *McDonald*, where the District of Columbia and the City of Chicago, respectively, argued that it was necessary to ban all handguns in those cities in order to reduce crime.  *McDonald v. City of Chicago,* 130 S. Ct. 3020, 3056–57 (2010) (Scalia, J., concurring); *Heller*, 554 U.S. at 636. Corps campgrounds may experience minor "conflicts" and "disagreements," Dkt. 52-1 at 16, but these pale in comparison to the serious crime in D.C. and Chicago.  Like the firearms bans struck down in those cities, the Corps ban "is simply too broad."  *Morris*, 2014 WL 117527 at *4.

Contrary to Defendants' suggestion, Dkt. 52-1 at 23–24, their firearms ban bears no resemblance to other firearms regulations on government property, which "leave[] largely intact the right to 'possess and carry weapons in case of confrontation.'"  *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011); *see also DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011) ("Individuals may still carry or possess weapons on the open grounds of GMU . . . ."); *Hall v. Garcia*, 2011 WL 995933, *1 (N.D. Cal.

2011) ("The Act also contains exemptions for some categories of persons authorized to carry concealed weapons."); *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1227 (W.D. Wash. 2010) ("Defendants narrowly tailored the Park Rule to include only those public parks and community centers where children and youth predominantly recreate."); *see also GeorgiaCarry.Org* , 764 F. Supp. 2d at 1320 ("[T]he statute would allow [the plaintiff] to keep a firearm in his office . . . .").[3]  The Corps ban is in no way tailored.

The Fourth Circuit's decision in *Masciandaro*, 638 F.3d at 468, is instructive of the balance between crime prevention and self-defense that the Second Amendment tolerates—a balance the Corps ban fails to achieve.  *Masciandaro* addressed a National Park Service regulation, 36 C.F.R. § 2.4(b), that "prohibited [national park patrons] from possessing loaded firearms, and only then within their motor vehicles."  638 F.3d at 473.  The Fourth Circuit upheld 36 C.F.R. § 2.4(b) based on two factors absent in this case:  (1) the regulation allowed possession of firearms for self-defense; and (2) the presence of armed Park Service Police in the relevant area to protect the public.[4]  *Id*. at 473–74.

Applying intermediate scrutiny, the Fourth Circuit held that the narrow regulation left "largely intact the right to 'possess and carry weapons in case of confrontation.'"  638 F.3d at 474 (quoting *Heller*, 554 U.S. at 592).  This was so because the only firearms affected were those that were loaded, concealed, and in a vehicle.  *Id*.  Any other firearms were allowed.  *Id*.

---

[3] Defendants' reliance on *Warden*, Dkt. 52-1 at 8, 24, is especially problematic because *Warden* applies only rational basis review, 697 F. Supp. 2d at 1227, which was explicitly rejected by the Ninth Circuit in *Chovan*.  735 F.3d at 1137 ("[W]e reject rational basis review and conclude that some sort of heightened scrutiny must apply.").

[4] Congress repealed the regulation shortly after Masciandaro's conviction and applied state gun laws to National Park and National Wildlife Refuge lands.  Credit Card Act of 2009, § 512, 16 U.S.C. § 1a-7b (2009).

The Corps ban is not nearly so narrow as 36 C.F.R. § 2.4(b) was, because it effectively prohibits all firearms and ammunition possessed for self-defense.  *Morris*, 2014 WL 117527 at *2.

The Fourth Circuit also concluded that "because the United States Park Police patrol Daingerfield Island, the Secretary could conclude that the need for armed self-defense is less acute there than in the context of one's home."  *Masciandaro*, 638 F.3d at 474.  No such security or police presence is provided by the Corps, and the need for armed self-defense remains as acute on remote, Corps-managed recreational lands as at any other unsecured venue open to the public.  Applying *Masciandaro*'s reasoning to this case, the Corps ban should be struck down.

The Second Amendment does not prevent all regulation of firearms on Corps lands, "but the enshrinement of constitutional rights necessarily takes certain policy choices off the table."  *Heller*, 554 U.S. at 636.  One of the choices removed is "a broadscale prohibition against" lawful possession of a firearm for self-defense.  *Initiative and Referendum Institute v. U.S. Postal Service*, 417 F.3d 1299, 1315 (D.C. Cir. 2005).  The Corps ban is unconstitutional because it is "a flat ban on carrying a firearm for self-defense purposes."  *Morris*, 2014 WL 117527 at *3.

## IV.    DEFENDANTS CANNOT ESCAPE THEIR EVIDENTIARY BURDEN.

Because Defendants cannot meet their evidentiary burden under intermediate scrutiny, they seek to evade that burden.  Defendants raise the same arguments that failed to justify their Motion to Dismiss:  (1) All Corps property is purportedly sensitive, and therefore outside the protection of the Second Amendment; and (2) even if the Second Amendment applies, the Corps ban is subject only to "reasonableness" review.  This Court should once again reject those arguments.  *See* Dkt. 33 at 4–12; Dkt. 21 at 18–20.

**A.      The 12 Million Acres Of Public Lands That Defendants Administer Are Not A "Sensitive Place."**

As with their Motion to Dismiss, Defendants again argue that "sensitive places" deserve no Second Amendment protection, all Corps property is sensitive, therefore Plaintiffs have no claims.  Dkt. 30-1 at 6–9; Dkt. 52-1 at 5–11.  This Court rejected that syllogism when it concluded that "[t]he Court must ask first whether the Corps' regulation burdens conduct protected by the Second Amendment.  It does." *Morris*, 2014 WL 117527 at *2.

That conclusion is sound; accepting Defendants' argument would carve a 12-million-acre hole in the Second Amendment.  *See* Pls.' SOF ¶ 2.  Moreover, Defendants fail to provide a limiting principle by which their argument does not nullify the Second Amendment on all government lands.  This outcome is inconsistent with the dicta on which Defendants build their argument and the history of the right to keep and bear arms.  *See* Dkt. 33 at 4–10.

Defendants argue that any "open public space in which large numbers of people may congregate" is a "sensitive place" where the Second Amendment does not apply.  Dkt. 52-1 at 9; Dkt. 30-1 at 7.  Defendants also argue that "Corps-managed projects open to the public for recreation include projects containing important infrastructure such as dams and levees." *Id*.  This sweeping definition of "sensitive places" expands on narrow dicta in *Heller* that identifies "presumptively lawful" regulations, including "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."  554 U.S. at 626, 627 n.26.

Defendants' argument is at odds with *Heller*'s description of sensitive places as discrete buildings with limited public access, i.e., schools and government buildings.  *Id*.  Corps property is generally open to the public and Defendants admit that it is not protected by Corps law enforcement—distinguishing the 12 million acres of public lands managed by Defendants from the genuinely sensitive places referenced in *Heller*.  *See* Dkt. 52-1 at 16; Dkt. 30-1 at 18.

14

Defendants' argument that all Corps-managed lands are "sensitive" also ignores reality. Most problematic is the fact that 36 C.F.R. § 327.13 allows hunting and target shooting on Corps-administered lands; but the regulation requires firearms be stored unloaded, provides no exception for self-defense, and bans firearms possessed only for self-defense. Defendants cannot authorize hunting and target shooting on the same lands they deem too sensitive for self-defense. *Cf. Gilleo*, 512 U.S. at 52. Even if *some* Corps-managed lands were proven to be sensitive, Defendants must acknowledge that not all Corps lands are sensitive. That inevitable admission dooms Defendants' reliance on the *Heller* "sensitive places" dicta to justify the Corps ban.

Defendants' definition of "sensitive places" would also ensnare almost all public property, justifying the sort of bans on the public carrying of firearms that have been widely rejected by state and federal courts. *See, e.g., Moore*, 702 F.3d at 936; *Bonidy*, 2013 WL 3448130 at *6; *Bateman*, 881 F. Supp. 2d at 714; *Lakewood v. Pillow*, 501 P.2d 744, 745 (Colo. 1972) ("possess[ing] a firearm in a vehicle or in a place of business for the purpose of self-defense. . . . are constitutionally protected."); *accord State v. Blocker*, 630 P.2d 824, 826 (Or. 1981); *City of Las Vegas v. Moberg*, 485 P.2d 737, 738 (N.M. Ct. App. 1971); *In re Brickey*, 70 P. 609, 609 (Idaho 1902); *see also* Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America*, 25 Law & Hist. Rev. 139, 162–63 (2007) (noting that 18th century laws in Pennsylvania and New Jersey banned gunfire on or near highways, but "explicitly protected the carrying of guns on the highways.").

Defendants make no attempt to distinguish the long line of cases protecting the right to carry in public. Defendants barely mention the Fourth Circuit's application of the Second Amendment to National Park Service lands in *Masciandaro*, 638 F.3d at 471, except to suggest that some Corps lands are more heavily visited than some National Park Service lands. Dkt. 52-

1 at 16; Dkt. 30-1 at 8.  But this ignores that all federal lands are less heavily visited than, e.g., the City of Chicago—where the Second Amendment applies with full force.  *McDonald,* 130 S. Ct. at 3056; *Moore*, 702 F.3d at 936; *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 940 (N.D. Ill. 2014).  Population density does not cancel the Constitution.

Moreover, Defendants overlook that the cases upon which they rely dealt with regulations that did not impose a total ban on firearms, but were instead "narrowly tailored" *Warden*, 697 F. Supp. 2d at 1227, and included exceptions for self-defense.  *Hall*, 2011 WL 995933, at *1; *DiGiacinto*, 704 S.E.2d at 370; *State v. Shelby*, 2 S.W. 468, 469 (Mo. 1886) ("[I]t shall be a good defense to the charge of carrying such weapons if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his person, home, or property.").

Defendants argue that "[f]orbidding the carrying of firearms in sensitive places is consistent with nineteenth-century State cases," but they disregard that the Ninth and Second Circuits repudiated both cases they allude to:  *English v. State*, 35 Tex. 473 (1871), and *Hill v. State*, 53 Ga. 472 (1874).  Dkt. 52-1 at 6–7.  Neither case survived *Heller*.  *Peruta*, 742 F.3d at 1160 ("[*English* and *Hill*] shed no light on the question whether, if the right to bear arms is an individual right directed to the end of self-defense, it sanctions the public carriage of common weapons."); *Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012).[5]

---

[5] *English* and *Hill* rest on the false premise that the right to keep and bear arms is dependent upon service in the militia.  *Peruta*, 742 F.3d at 1160.  From this false premise, the conclusion that the government can prohibit the right to carry for self-defense follows *a fortiori*:  Because carrying firearms for self-defense is not service in the militia, a militia-dependent Second Amendment would not protect the right to carry.  *See id.*  But *Heller* unequivocally rejected a militia-dependent Second Amendment.  554 U.S. at 583; *Peruta*, 742 F.3d at 1160.

It may be that some Corps property is sensitive; but Defendants have made no particularized showing to that effect.  More important, Defendants offer no evidence to justify the untailored firearms ban currently imposed.

### B.    Presumptively Lawful Regulations May Still Be Unconstitutional.

Even if some Corps property were sensitive, this would not result in a "free pass" for Defendants.  *See* Dkt. 33 at 8–10.  Suggesting that this Court broaden the *Heller* dicta ignores the Supreme Court's warning against reading too much into such statements:

> It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.

554 U.S. at 625 n.25.  The Court did not hold that even "presumptively lawful" regulations are necessarily constitutional in all applications, nor did it elaborate about the contours of these categories.  Rather, the Court left the task of clarifying various applications of the Second Amendment to future cases, such as this one.  *See Chovan*, 735 F.3d at 1134–39 (rejecting a broad interpretation of the "presumptively lawful" dicta); *Masciandaro*, 638 F.3d at 475 ("It is not clear in what places public authorities may ban firearms altogether without shouldering the burdens of litigation."); *Moore*, 702 F.3d at 942 ("[W]e need not speculate on the limits that Illinois may in the interest of public safety constitutionally impose on the carrying of guns in public; it is enough that the limits it has imposed go too far.").

Defendants also ignore the Ninth Circuit's ruling that even if a regulation "'appears consistent with *Heller*'s reference to certain presumptively lawful regulatory measures,'" it must be justified "'by some form of 'strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective.'"  *Chovan*, 735 F.3d at 1135–36 (quoting *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011)); *see also United States v.*

*Chester*, 628 F.3d 673, 679 (4th Cir. 2010) ("In fact, the phrase 'presumptively lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'") (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)); *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010) (accord).  Accordingly, even if the Corps ban "appears consistent with *Heller*'s reference to certain presumptively lawful regulatory measures," Defendants would not be absolved of the burden of proving the constitutionality of the ban.  *Chovan*, 735 F.3d at 1135–36.  Defendants failed to make the requisite "strong showing" of a "substantial relationship" between banning armed self-defense and preventing crime.  *Id.*

C.      **Reasonableness Review Is Inappropriate.**

As Defendants acknowledge, this Court has already rejected so-called "reasonableness" review.  Dkt. 52-1 at 11.  Defendants make no attempt to address the significant doctrinal problems with importing that sort of First Amendment public forum analysis wholesale into the Second Amendment context; although Defendants are well aware that such problems exist.  *See* Dkt. 33 at 10–12; Dkt. 21 at 18–20 (explaining doctrinal, practical, and precedential problems with Defendants' "reasonableness" argument).

Chief among the problems already addressed in prior briefing is Defendants' reliance on *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012) (en banc).  Defendants again fail to acknowledge that the Ninth Circuit declined to specify what level of scrutiny applied in that case.  *See* Dkt. 52-1 at 12; Dkt. 30-1 at 10–11.  Because the regulation of gun shows was so slight, "[Nordyke] cannot succeed, no matter what form of scrutiny applies to Second Amendment claims." *Nordyke*, 681 F.3d at 1044–45.  Here, the burden on Second Amendment rights is severe, and

does not leave open "reasonable alternative means" to exercise the right of self-defense on

Corps-administered public lands.  *Nordyke v. King*, 644 F.3d 776, 787 (9th Cir. 2011) (vacated).

    Applying reasonableness review to the severe burden the Corps ban places on self-

defense would be inconsistent with the Ninth Circuit's holding *"*reject[ing] rational basis review

and conclud[ing] that some sort of heightened scrutiny must apply" in Second Amendment cases.

*See Chovan,* 735 F.3d at 1137; *see also Masciandaro*, 638 F.3d at 474; *Ezell*, 651 F.3d at 708;

*Peterson v. Martinez*, 707 F.3d 1197, 1216 (10th Cir. 2013) (Lucero, J., concurring) ("I would

apply intermediate scrutiny to both claims to the extent concealed carry is protected . . . .").  As

the weight of authority demonstrates—and as the Ninth Circuit has required—the Corps firearms

ban is subject to at least intermediate scrutiny.

## V.    A NATIONWIDE INJUNCTION IS APPROPRIATE TO ENJOIN THIS UNCONSTITUTIONAL REGULATION.

    Defendants argue that they should be allowed to apply an unconstitutional regulation

against everyone except Plaintiffs.  Dkt. 52-1 at 25–26.  That argument is meritless because

Defendants have no authority to enforce an unlawful regulation.

    This Court "has considerable discretion in fashioning suitable relief and defining the

terms of an injunction.  Appellate review of those terms 'is correspondingly narrow.'"  *Lamb-*

*Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (affirming worldwide

preliminary injunction) (quotation omitted).  Moreover, "[c]lass-wide relief may be appropriate

even in an individual action."  *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987); *United*

*States v. Oregon*, 657 F.2d 1009, 1016 n.17 (9th Cir. 1981) ("When a district court has

jurisdiction over all parties involved, it may enjoin commission of acts outside of its district.").

    Here, a nationwide injunction "is compelled by the text of the Administrative Procedure

Act," because a court reviewing agency action "'shall . . . (2) hold unlawful and set aside agency

action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .'" *Earth Island Institute v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007) (quoting 5 U.S.C. § 706 to affirm nationwide injunction), affirmed in part, reversed in part on other grounds, *Summers v. Earth Island Institute*, 555 U.S. 488 (2009).

A nationwide injunction limited in the same manner as the preliminary injunction would "tailor the injunction to remedy the specific harm alleged by the actual [Plaintiffs]—an infringement of their [Second] Amendment right . . . ." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009). An injunction preventing Defendants from applying 36 C.F.R. § 327.13 against poachers violating 36 C.F.R. § 327.8, for example, would be too broad. *Stormans*, 586 F.3d at 1140. But the preliminary injunction in this case is limited to enjoining Defendants "from enforcing 36 C.F.R. § 327.13 as to law-abiding individuals possessing functional firearms on Corps-administered public lands for the purpose of self-defense." *Morris*, 2014 WL 117527 at *6. A permanent injunction of similar breadth would be equally appropriate. State laws would govern Corps-administered lands, *see* 36 C.F.R. § 327.26(a), and those laws will serve the public health and safety just as well as they currently do. *Cf. Moore*, 702 F.3d at 942 (staying mandate 180 days because decision created regulatory vacuum).

## CONCLUSION

As demonstrated by the foregoing, Plaintiffs are entitled to entry of summary judgment and declaratory and injunctive relief.

20

DATED this 19th day of June 2014.

Respectfully submitted,

/s/ James M. Manley
James M. Manley, Esq. (CO No. 40327)
(*admitted pro hac vice*)
Steven J. Lechner, Esq. (CO No. 19853)
(*admitted pro hac vice*)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

John L. Runft, Esq. (ISB No. 1059)
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

Attorneys for Plaintiffs

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of June, 2014, I filed the foregoing

electronically through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joanne P. Rodriguez
Assistant United States Attorney
District Of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, ID 83712-7788
Joanne.Rodriguez@Usdoj.gov

Daniel Riess
Trial Attorney
U.S. Department of Justice Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Daniel.Riess@usdoj.gov

/s/ James M. Manley
James M. Manley, Esq.