STUART F. DELERY
Assistant Attorney General
WENDY J. OLSON, Idaho State Bar No. 7634
United States Attorney
JOANNE P. RODRIGUEZ, Idaho State Bar No. 2996
Assistant United States Attorney
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Telephone: (202) 353-3098
Facsimile: (202) 616-8460
Daniel.Riess@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **ELIZABETH E. MORRIS and ALAN C. BAKER,**<br><br>  **Plaintiffs,**<br><br>  **v.**<br><br>**U.S. ARMY CORPS OF ENGINEERS; JOHN McHUGH, Secretary of the Army; LIEUTENANT GENERAL THOMAS BOSTICK, Commanding General and Chief of Engineers; COLONEL JOHN S. KEM, Northwestern Division Commander; and LIEUTENANT COLONEL TIMOTHY VAIL,[1] Walla Walla District Commander and District Engineer,**<br><br>  **Defendants.** | **Case No. 3:13-CV-00336-BLW**<br><br>**DEFENDANTS' COMBINED REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 52) AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NO. 54)** |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Lieutenant Colonel Timothy Vail is substituted for his predecessor, Lieutenant Colonel Andrew D. Kelly.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I. Because Public Land Managed by the Corps is a Sensitive Place Under
Heller, the Corps Regulation Does Not Burden Conduct Protected by
the Second Amendment ..............................................................................................2

II. Even if the Corps Regulation Implicates Plaintiffs' Second Amendment
Rights, It Is Constitutional .........................................................................................2

    A. The Regulation Is Permissible Because It Was Enacted by the
Corps in Its Capacity as a Proprietor ............................................................2

    B. Even if Heightened Scrutiny Were Applicable, at Most,
Intermediate Scrutiny Would Be the Appropriate Level of Review ........................5

        1. Case Law Relied on by Plaintiffs Does Not Support
Their Contention That a Standard Above Intermediate
Scrutiny Should Apply Here ..............................................................5

        2. The Regulation Does Not Affect the Use of Arms for
Self-Defense in the Home or Otherwise Substantially
Burden a Second Amendment Right ...................................................6

    C. Because the Fit Between the Corps Regulation and the Corps'
Important Objectives Is Reasonable, the Regulation Satisfies
Heightened Review .......................................................................................13

III. Plaintiffs Have Failed to Demonstrate That Any Permanent Relief
Should Apply Beyond the Two Named Plaintiffs ......................................................16

CONCLUSION.....................................................................................................................20

**INTRODUCTION**

In multiple surveys, Park Rangers on recreational facilities owned and operated by the U.S. Army Corps of Engineers ("Corps") have reported incidents of verbal abuse, physical threats, and assaults by visitors to those facilities to Rangers or other visitors. The Corps has reasonably determined that permitting armed visitors on Corps-owned recreational facilities could create a chilling effect on Rangers' enforcement of Corps regulations. In enacting a regulation restricting the carrying of loaded firearms on its property, the Corps has acted consistently with the Constitution and with its rights as a proprietor of land. Because the Corps regulation is sufficiently tailored to the government's compelling interest in preventing violent crime on property it manages, the regulation passes muster under any applicable standard. As explained below, Plaintiffs' responsive brief does virtually nothing to diminish any of these arguments. The Court should thus enter summary judgment for Defendants. Additionally, even if the Court were to grant relief in this case to the two individual plaintiffs, any such relief should extend no further than necessary to provide full relief only to the two individual plaintiffs.

**ARGUMENT**

**I.      Because Public Land Managed by the Corps Is a Sensitive Place Under <u>Heller</u>, the Corps Regulation Does Not Burden Conduct Protected by the Second Amendment.**

Defendants' opening brief demonstrated that because the Corps regulation is a "law[] forbidding the carrying of firearms in [a] sensitive place[]," <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570, 626 (2008), it is a "presumptively lawful regulatory measure" addressing conduct that falls outside the scope of the Second Amendment's protection. <u>Id.</u> at 627 n.26; <u>see</u> Mem. Supp. Def. MSJ ("Def. MSJ") at 5-11 [ECF No. 52-1]. Plaintiffs' arguments fail to undermine this point. <u>See</u> Pl. Opp.

to Def. MSJ and Cross-Mot. for Summ. J. ("Pl. Opp.") at 14-18 [ECF No. 54-1].[1]

## II. Even if the Corps Regulation Implicates Plaintiffs' Second Amendment Rights, It Is Constitutional.

### A. The Regulation Is Permissible Because It Was Enacted by the Corps in Its Capacity as a Proprietor.

 Because the Corps regulation represents action taken by the government solely in its capacity as a proprietor of lands it owns and administers, its action is valid "unless it is unreasonable, . . . arbitrary, capricious, or invidious." United States v. Kokinda, 497 U.S. 720, 726 (1990) (citation and internal punctuation omitted); see Def. MSJ at 11-15. Though Plaintiffs argue that this standard does not apply here, see Pl. Opp. at 18-19, their arguments lack merit.

As an initial matter, Plaintiffs' suggestion that the government-as-proprietor standard has only been used in First Amendment cases is incorrect. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598-600 (2008) (applying standard in case involving equal-protection claim by employee against government employer); United States v. Dorosan, 350 F. App'x 874, 875 (5th Cir. 2009) (upholding U.S. Postal Service restriction on firearms possession on postal property against Second Amendment challenge because "its restrictions on guns stemmed from its constitutional authority as the property owner"). And Plaintiffs cannot evade the fact that in Nordyke v. King, 681 F.3d 1041 (9th Cir. 2012), the Ninth Circuit, sitting en banc, pointedly cited Kokinda and Engquist in the context of a Second Amendment claim involving the regulation of firearms "only on County property." Id. at 1044-45. The fact that it was not necessary to specify the standard of scrutiny under which the Ninth Circuit upheld that particular regulation misses the larger point: namely, that the Ninth Circuit cited Kokinda and Engquist for their respective statements about the difference, for

---

[1] Because Plaintiffs' objections do not vary substantively from those Plaintiffs raised when opposing Defendants' motion to dismiss, Defendants respectfully refer the Court to the counterarguments set forth in Defendants' reply brief supporting their motion to dismiss, which are incorporated here by reference. See ECF No. 38, at 1-4.

purposes of constitutional analysis, between the government acting (i) as a lawmaker and (ii) as a proprietor of land. Had the Ninth Circuit not deemed these cases relevant in a case involving Second Amendment claims, the Court would not have cited them in the <u>Nordyke</u> decision.

And it is logical to apply the government-as-proprietor standard here because the rationale for applying the standard in First Amendment cases – namely, the fundamental difference between actions taken by government when managing facilities that it owns, and actions taken when regulating public places generally – carries over into the Second Amendment context. <u>See</u> Eugene Volokh, <u>Implementing the Right to Keep and Bear Arms for Self-Defense</u>, 56 UCLA L. Rev. 1443, 1475 (2009) ("[T]here is both precedent and reason for allowing the government acting as proprietor extra power to restrict the exercise of many constitutional rights on its property."). Thus, "even burdensome restrictions may be more restricted by the government as proprietor than by the government as sovereign, even when the government interest is the same," and "separate government-as-proprietor standards may likewise be proper for the right to keep and bear arms, whether in government buildings, by government employees, [or] *in government-owned parks. . .*" <u>Id.</u> at 1474, 1475 (emphasis added).

Moreover, the Ninth Circuit has specifically noted that "[i]n determining the appropriate level of scrutiny [for Second Amendment cases], other circuit courts have looked to the First Amendment as a guide." <u>United States v. Chovan</u>, 735 F.3d 1127, 1138 (9th Cir. 2013) (citing cases). And applying the reasonableness standard here – to a regulation enacted by the Corps in its proprietary capacity – is consistent with First Amendment levels of scrutiny; namely, if the government is acting in this capacity, its action is valid "unless it is unreasonable, . . . arbitrary, capricious, or invidious." <u>Kokinda</u>, 497 U.S. at 725-26 (citation and internal punctuation omitted); <u>see also id.</u> at 737, 740 (concluding that regulation prohibiting "[s]oliciting alms and contributions

on postal premises" "passes constitutional muster under the Court's usual test for reasonableness") (internal citations omitted). Plaintiffs are simply mistaken that applying the government-as-proprietor reasonableness standard would be inconsistent with <u>Chovan</u> and with other courts' rejection of rational basis review for Second Amendment claims in general (as opposed to the specific context of government action in its role as proprietor). <u>See</u> Pl. Opp. at 19. Applying this standard here is just as consistent as applying strict scrutiny in the First Amendment context for content-based restrictions; intermediate scrutiny for time, place, and manner restrictions; and the "unreasonable, arbitrary, capricious, or invidious" standard for regulations involving the government acting as proprietor.

Nor do arguments Plaintiffs have incorporated by reference from earlier briefs fare any better. <u>See</u> Pl. Opp. at 18 (incorporating ECF No. 33 at 10, 12; ECF No. 21 at 18, 20). First, Plaintiffs' contention that the Corps regulation does not satisfy the government-as-proprietor standard because of its scope is simply mistaken. <u>See</u> ECF No. 21 at 19; ECF No. 33 at 12. The sole case cited for this contention is not on point because the sentence Plaintiffs quote arises in the context of a First Amendment overbreadth analysis. <u>See</u> <u>Initiative & Referendum Inst. v. U.S. Postal Serv.</u>, 417 F.3d 1299, 1312-16 (D.C. Cir. 2005) (examining whether Postal Service regulation was unconstitutionally overbroad). And unlike the proprietor standard that the Ninth Circuit, sitting en banc in <u>Nordyke</u>, plainly viewed as applicable to the Second Amendment context, courts have rejected invitations to import the First Amendment overbreadth doctrine to the Second Amendment context. <u>See Hightower v. City of Boston</u>, 693 F.3d 61, 82 (1st Cir. 2012) (citing cases). Plaintiffs' contention that the Corps regulation does not satisfy the government-as-proprietor standard is thus incorrect. Second, Plaintiffs' suggestion that place limitations on the carrying of firearms are inherently absurd is flatly inconsistent with <u>Heller</u>'s designation of "laws forbidding the carrying of

firearms in sensitive places" as "presumptively lawful regulatory measures." 554 U.S. at 626-27 & n.26.

Thus, Plaintiffs present no reason why the government-as-proprietor standard should not apply when reviewing the Corps regulation, which was enacted by the Corps solely in its capacity as proprietor of land, and which applies only to possession of firearms on that land.

**B.      Even if Heightened Scrutiny Were Applicable, at Most, Intermediate Scrutiny Would Be the Appropriate Level of Review.**

In any event, even if the Court were to apply a more rigorous level of review, the Corps regulation would pass constitutional muster. Because courts examining restrictions on the possession of firearms outside the home, such as the Corps regulation, have almost uniformly declined to apply a standard above intermediate scrutiny, see Def. MSJ at 18 n.10, if the Court applies heightened scrutiny here, it should use no more than intermediate scrutiny.

**1.      Case Law Relied on by Plaintiffs Does Not Support Their Contention That a Standard Above Intermediate Scrutiny Should Apply Here.**

Plaintiffs' suggestion that a different standard of review should apply here ignores crucial differences between this case and the decisions on which they rely. See Pl. Opp. at 2-3. The per se invalidation used in Peruta v. County of San Diego, 742 F.3d 1144 (9th Cir. 2014), is not appropriate here because the policy challenged in Peruta virtually prohibited any public carrying of firearms in all of San Diego County. See id. at 1169 ("[T]he question is whether [the policy] allows the typical responsible, law-abiding citizen to bear arms *in public* for the lawful purpose of self-defense.") (emphasis added). The policy thus represented action taken by the county in its regulatory capacity, not its proprietary capacity. Had San Diego County adopted a policy affecting only land it owned and managed (as in Nordyke and the present case), per se invalidity would not have been appropriate

(as it was not in <u>Nordyke</u>, and is not here).[2]  Additionally, <u>Chovan</u> supports the application of no more than intermediate scrutiny here because there, the Ninth Circuit stated that "<u>Heller</u> tells us that the core of the Second Amendment is the right of law-abiding, responsible citizens to use arms in defense of *hearth and home*."  735 F.3d at 1138 (emphasis added) (citations and internal punctuation omitted).  That core right is not implicated here because Corps-managed land is not Plaintiffs' hearth and home; thus, <u>Chovan</u> does not support the application of strict scrutiny.

Plaintiffs also fail to characterize accurately the nature of the applicable intermediate-scrutiny analysis if the Court elects to employ heightened scrutiny.  Pl. Opp. at 3.  Additionally, the Ninth Circuit has made clear that in Second Amendment cases applying intermediate scrutiny, the government satisfies its burden if it shows "a *reasonable* fit between the challenged regulation and the asserted objective."  <u>Chovan</u>, 735 F.3d at 1139 (emphasis added); <u>accord Jackson v City & Cnty. of San Francisco</u>, 746 F.3d 953, 965 (9th Cir. 2014).  As explained below, because the Corps has satisfied this burden, the Court should uphold the regulation.[3]

**2.      The Regulation Does Not Affect the Use of Arms for Self-Defense in the Home or Otherwise Substantially Burden a Second Amendment Right.**

If a law "regulates conduct within the scope of the Second Amendment, . . . deciding what level of heightened scrutiny to apply" depends on "'how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right.'"  <u>Jackson</u>, 746 F.3d at

---

[2] Moreover, <u>Peruta</u> emphasized the outlier status of the law at issue, noting that "California has one of the most restrictive gun regulatory regimes in the nation."  <u>Id.</u> at 1169 n.17.  By contrast, the Corps regulation is similar to other federal statutes and regulations governing the carrying of firearms on government property.  <u>See</u> Def. MSJ at 23-24.

[3] Plaintiffs misplace their reliance on <u>Frisby v. Schultz</u>, 487 U.S. 474 (1988), a case involving a municipal ordinance prohibiting picketing "before or about" the residence of any individual within a city.  <u>Id.</u> at 476.  Like <u>Peruta</u>, <u>Frisby</u> involved government action taken in a regulatory capacity, not a proprietary capacity.  Moreover, contrary to Plaintiffs' suggestion, <u>Frisby</u> did not purport to be applying intermediate scrutiny.  Thus, <u>Frisby</u> is not pertinent here.

963 (quoting <u>Chovan</u>, 735 F.3d at 1138). The Supreme Court has instructed that the core of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of *hearth and home.*" <u>Heller</u>, 554 U.S. at 635 (emphasis added); <u>see also</u> <u>Jackson</u>, 746 F.3d at 963 (firearms ordinance "implicates the core [of the Second Amendment] because it applies to law-abiding citizens, and imposes restrictions on the use of handguns *within the home*") (emphasis added). Because the Corps regulation does not affect Plaintiffs' use of arms in defense of their homes, that core right is not implicated here. In any event, even if a law affects a core right, it may still be upheld under intermediate scrutiny if it does not substantially burden the right. <u>See</u> <u>Jackson</u>, 746 F.3d at 961 ("[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, we may apply intermediate scrutiny."). The Corps regulation is similar to other "place" regulations on firearms possession that have been upheld against Second Amendment challenges, including by courts in this Circuit. <u>See</u> Def. MSJ at 24; <u>see also</u> <u>Doe v. Wilmington Hous. Auth.</u>, 880 F. Supp. 2d 513, 534-35 (D. Del. 2012) (applying intermediate scrutiny to uphold provision restricting carrying of firearms by public-housing residents in common areas of housing);[4] <u>GeorgiaCarry.Org, Inc. v. Georgia</u>, 764 F. Supp. 2d 1306,

---

[4] Plaintiffs' attempt to cast doubt on the precedential value of this case, Pl. Opp. at 5, fails. The plaintiffs in <u>Doe</u> had challenged the firearms policy under both the Second Amendment and a provision in the Delaware Constitution, <u>Doe v. Wilmington Hous. Auth.</u>, __ F. App'x __, 2014 WL 2547754, at *1 (3d Cir. June 6, 2014), and the district court upheld the policy under both constitutional provisions. The plaintiffs "did not appeal the Second Amendment ruling but did appeal the ruling on the Delaware Constitution," which was certified to the Delaware Supreme Court. <u>Id.</u> Though the state court found the firearms policy to be inconsistent with the Delaware Constitution, that finding was premised on its conclusion that "[o]n its face, the Delaware provision is intentionally broader than the Second Amendment and protects the right to bear arms outside the home, including for hunting and recreation. [It] specifically provides for the defense of self and family *in addition to* the home." <u>Doe v. Wilmington Hous. Auth.</u>, 88 A.3d 654, 665 (Del. 2014) (emphasis in original). But the holding by the District of Delaware upholding the firearms policy under intermediate scrutiny against a Second Amendment challenge remains good law, as this holding was never appealed.

1316-20 (M.D. Ga. 2011) (applying intermediate scrutiny to uphold law prohibiting firearms possession in places of worship), <u>aff'd on other grounds</u>, 687 F.3d 1244 (11th Cir. 2012). Consequently, if the Court evaluates the Corps regulation under heightened scrutiny, it should apply no more than intermediate scrutiny.

Plaintiffs' contrary assertion is based on a misunderstanding of the case law they cite. <u>See</u> Pl. Opp. at 3-8. First, Plaintiffs are mistaken in their contention that the Corps regulation "directly conflicts with the central holding of <u>Heller</u>." Pl. Opp. at 4. The respondent in <u>Heller</u> did not purport to be seeking the right to possess a firearm in a temporary dwelling on property he did not own, but simply "the right to render a firearm operable and carry it about his *home* in that condition only when necessary for self-defense." 554 U.S. at 576 (emphasis added). Indeed, the Court "went to great lengths to emphasize the special place that the home – an individual's *private property* – occupies in our society." <u>GeorgiaCarry.Org, Inc. v. Georgia</u>, 687 F.3d 1244, 1259 (11th Cir. 2012) (emphasis added) (citing 554 U.S. at 628-29), <u>cert. denied</u>, 133 S. Ct. 856 (2013). Because Corps-managed recreational areas in Idaho are not Plaintiffs' private property, <u>Heller</u>'s holding does not conflict with the Corps regulation.

And though Plaintiffs attempt to downplay <u>Heller</u>'s emphasis on the special place that an individual's privately-owned home occupies in American society, as recognized in <u>GeorgiaCarry.Org</u>, Pl. Opp. at 5, their argument misses the mark. While it is correct that <u>GeorgiaCarry.Org</u> rejected a Second Amendment challenge to a specific place restriction (a state prohibition on firearms possession in a place of worship), a crucial factor underlying the Eleventh Circuit's holding was the emphasis <u>Heller</u> placed on the fact that a home was an individual's private property, where Second Amendment protection is at its zenith. Conversely, firearms regulations may be more restrictive when they do not affect this "special place." 687 F.3d at 1259. And contrary to Plaintiffs' suggestion, it is not necessary to "equate public lands with private property," Pl. Opp. at

4, to recognize an analogy between a person visiting land owned by a private third party and a visitor on land owned by a public third party. <u>See</u> Administrative Record ("AR") at 0001636 ("While the Federal Government, through the Corps of Engineers, does have the authority to regulate conduct upon its lands as it relates to the purposes for which these lands are held (e.g., recreation), it exercises no traditional police power on such lands and holds them in a manner *analogous to that of a private landowner.*") (emphasis added). In both instances, it is reasonable for the owner and manager of the property to prescribe certain conditions on access by visitors. And while there are distinctions between public and private ownership of property, the Supreme Court has "stated on several occasions, the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 46 (1983). The Corps regulation is based on the Corps' assessment that the dangers inherent in permitting visitors to Corps-managed lands to possess loaded firearms would be inconsistent with the recreational uses to which those lands are reserved. <u>See</u> Def. MSJ at 15-18. This assessment is reinforced by the fact that owners of private campgrounds and open recreational areas in Idaho may choose not to permit the carrying of firearms on their property. <u>See id.</u> at 17. Moreover, that conditions under which a property owner permits a visitor access to its lands may affect the visitor's constitutional rights does not change the analysis. <u>See</u> <u>Cornelius v. NAACP Legal Def. & Educ. Fund</u>, 473 U.S. 788, 799-800 (1985) ("Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."). As an owner of the land in question, the Corps has more leeway

in setting conditions for the use of that land than a governmental body acting in its regulatory capacity.

Additionally, that the Ninth Circuit and state courts have, in some cases, found that a reasonable expectation of privacy existed for Fourth Amendment purposes in tents on public land, Pl. Opp. at 4, 6, does not necessarily mean that a restriction on firearms possession in such tents violates the Second Amendment. Plaintiffs cite no authority supporting the proposition that the concerns at the heart of the Fourth Amendment (a citizen's legitimate expectation of privacy in his or her person, papers, and effects) relate in any significant way to the concerns at the core of the Second Amendment (self-defense). Nor do Plaintiffs cite any authority justifying the wholesale importation of substantive Fourth Amendment doctrine into Second Amendment jurisprudence. Even if these Fourth Amendment principles did apply in the Second Amendment context (a point Defendants do not concede), a finding that Fourth Amendment privacy interests apply to a particular place does not end the inquiry as to whether the search or seizure at issue was unconstitutional. Even assuming an individual has a reasonable expectation of privacy in a tent on government property, a search of that tent could nevertheless be reasonable under the Fourth Amendment. See, e.g., United States v. Rigsby, 943 F.2d 631, 637 (6th Cir. 1991) (upholding search of defendant's tent and seizure of shotgun found therein "based on the government's legitimate interests as weighed against any privacy expectation which defendant may have had in the tent"). And by analogy, even if substantive Fourth Amendment doctrine were relevant here, starting from the bare premise that the Second Amendment *applies* to a tent located on government property, it does not follow that a regulation related to firearms possession in that tent violates the Second Amendment. Plaintiffs' reliance on Fourth Amendment case law is thus unavailing.

Moreover, that a tent may provide *some* security and may deserve *some* privacy does not mean that it should be treated just like a home for constitutional purposes. The Supreme Court has "emphasized that at the very core of the Fourth Amendment stands the right of a man to retreat into *his own home*." Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992) (citations and internal punctuation omitted) (emphasis added). A person who owns his or her own private home has the right to exclude others from entering and using that property, which is "perhaps the most fundamental of all property interests." Lingle v. Chevron U.S.A., Inc., 544 U.S. 539 (2005). By contrast, a person who sets up a temporary tent on public property lacks such a right because he or she lacks a proprietary interest in the tent. Because a temporary tent on public property is not equivalent to private ownership of a home with a right to exclude, it should not be treated as equivalent to a person's home for constitutional purposes.

Finally, none of the case law Plaintiffs cite shows that restricting the carrying of firearms on Corps-managed lands is unlawful. Pl. Opp. at 6-7. As explained above, Peruta is inapposite because the policy challenged in that case was far broader than the Corps regulation. Similarly, the state law at issue in Moore v. Madigan, 702 F.3d 933 (7th Cir. 2012), prohibited every Illinois resident (with limited exceptions) from carrying a loaded and immediately-accessible firearm anywhere in the State of Illinois except for their permanent residences, fixed places of business, or on the property of someone who consented to the carrying of firearms. See id. at 934. And the Seventh Circuit expressly noted that in contrast to Illinois' law – the only one of its kind in all fifty States – "when a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state doesn't need to prove so strong a need." Id. at 940 (emphasis added). Under Moore, because the Corps has restricted the carrying of firearms only in particular places in Idaho – namely, Corps-

managed lands – that results in a "lesser burden" than the Illinois law found problematic by the

Seventh Circuit, and thus the Corps "doesn't need to prove so strong a need" to justify its regulation.

Additionally, far from supporting Plaintiffs' claim here, GeorgiaCarry.Org upheld a challenged state

law (which prohibited the possession of firearms in places of worship) under intermediate scrutiny.

764 F. Supp. 2d at 1317-20.[5]  In Bateman v. Perdue, 881 F. Supp. 2d 709 (E.D.N.C. 2012), North

Carolina had prohibited any person from possessing any firearm anywhere in the state (except the

home) in which a state of emergency had been declared.  And Bonidy v. U.S. Postal Service, 2013

WL 3448130 (D. Colo. July 9, 2013), appeals docketed, Nos. 13-1374, 13-1391 (10th Cir.) – an

unpublished district court decision outside this Circuit – did not find that the plaintiff possessed an

unlimited right to carry firearms in public or on government-owned property, but only to secure his

firearm in his vehicle while parked at a specific post office.  Moreover, even the Bonidy court limited

the scope of its relief to the individual plaintiff and specific location at issue.  See id. at *6-7 (ordering

the Postal Service to "take such action as is necessary to permit Tab Bonidy to use the public parking

lot adjacent to the Avon[, Colorado] Post Office Building with a firearm authorized by his Concealed

Carry Permit secured in his car in a reasonably prescribed manner" and denying all other claims that

the regulation was unconstitutional).

       In sum, Plaintiffs have failed to demonstrate that, if means-end scrutiny is used to evaluate

the Corps regulation, the Court should apply any standard above intermediate scrutiny.

---

[5] Moreover, Plaintiffs' truncated quotation from GeorgiaCarry.Org on page 12 of their brief incorrectly suggests that the district court upheld the statute because "[t]he statute would allow [the plaintiff] to keep a firearm in his office . . .").  Pl. Opp. at 12 (quoting 764 F. Supp. 2d at 1320). But the full passage truncated by Plaintiffs shows that the Court actually declined to reach this issue: "Before concluding the Second Amendment analysis, the Court will also briefly address Plaintiff Wilkins's contention that the statute is unconstitutional because it prevents him from keeping a firearm in his office at the Tabernacle.  As with the home worship question, the Court does not reach the issue of whether such application of the statute would be unconstitutional because the statute does not prohibit Plaintiff Wilkins from keeping a firearm in his office at the church."  764 F. Supp. 2d at 1320.

## C. Because the Fit Between the Corps Regulation and the Corps' Important Objectives Is Reasonable, the Regulation Satisfies Heightened Review.

Because a reasonable fit exists between the Corps regulation and its interest in promoting public safety on lands it owns, and in protecting visitors from the threat of firearms violence, the regulation satisfies heightened scrutiny. Plaintiffs concede that "crime prevention is an important government objective." Pl. Opp. at 8. And the fit between the regulation and its objectives of promoting public safety and preventing firearms violence on its facilities is reasonable in light of the constraints under which the Corps operates. See Def. MSJ at 15-18.

In light of the fact that Congress has not authorized Corps Park Rangers to carry weapons, the Corps has reasonably determined that permitting armed visitors access to Corps-managed lands could create a chilling effect on the enforcement of Corps regulations. Decl. of Stephen B. Austin ¶ 5.e [ECF No. 18-1] ("Austin Decl."). Contrary to Plaintiffs' contention, this determination does not rest on "speculation," Pl. Opp. at 10, but on multiple surveys in which Rangers reported repeated incidents of verbal abuse and threats of physical violence from visitors to Corps lands. See Def. MSJ at 16 n.8.[6] In one survey, 62% of Rangers reported incidents of verbal abuse from visitors, 46% reported that they had been physically threatened, and 53% had witnessed between one and ten incidents in which a visitor had verbally or physically threatened another visitor. AR at 0000558. Another survey showed that each day, on average, one Ranger was physically threatened, nearly four Rangers were verbally assaulted or verbally abused, and a Ranger was physically assaulted once

---

[6] Additionally, contrary to Plaintiffs' assertion, Pl. Opp. at 10, the fact that these surveys were administered in 1994-96 does not diminish their probative value, given that a 2010 survey revealed similar responses (79% of Rangers reported incidents of verbal abuse, and 43% reported verbal threats or physical intimidation). The 2010 survey was not included in the administrative record because it postdates the most recent (2000) amendment to the regulation.

every six days.  AR at 0000675; see also id. at 0001090.  Plaintiffs' attempt to downplay these surveys because they allegedly "did not address law-abiding individuals carrying firearms for self-defense," Pl. Opp. at 10, misses the point.  The problem of armed visitor confrontations involving a threat or use of physical violence against Rangers or other visitors is not limited to visitors with known prior criminal records, and the Constitution does not require that efforts to prevent such confrontations apply only to persons with such records.  See United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) ("That *some* categorical limits are proper is part of the original meaning, leaving to the people's elected representatives the filling in of details.") (emphasis in original).  The Corps has made a reasonable determination that the public interest is furthered by restricting the possession of loaded firearms on lands that the Corps owns and manages.  Austin Decl. ¶ 5.f.[7]

Furthermore, permitting loaded firearms for hunting or target shooting on specifically dedicated Corps-owned and -managed areas does not undermine this determination, because these activities are undertaken only in appropriate locations, and in a manner that is not likely to endanger other visitors' safety or threaten critical infrastructure.  Austin Decl. ¶ 5.d.  Moreover, Plaintiffs' reliance on City of Ladue v. Gilleo, 512 U.S. 43 (1994), a case involving "the notion that a regulation of speech may be impermissibly *underinclusive*," is misplaced.  Id. at 51 (emphasis in original).  "[A] regulation is not fatally underinclusive simply because an alternative regulation, which would restrict *more* speech or the speech of *more* people, could be more effective. . . . [W]ith regard to First Amendment *under*inclusiveness analysis, neither a perfect nor even the best available fit between means and ends is required."   Blount v. SEC, 61 F.3d 938, 946 (D.C. Cir. 1995) (emphasis in

---

[7] Moreover, Plaintiffs' focus on the cooperative agreements between the Corps and State and local law enforcement, Pl. Opp. at 9-10, ignores the fact that Congress has set a funding limit for these agreements, and that if the Corps could not enforce its regulation, the current limit might not support the cost of additional armed law enforcement officers.  See Austin Decl. § 6.c.

original).  In any event, it is well established that a challenged regulation "is not invalid under the Constitution because it might have gone farther than it did."  Buckley v. Valeo, 424 U.S. 1, 105 (1976); see also Nat'l Rifle Ass'n v. ATF, 700 F.3d 185, 211 (5th Cir. 2012) (declining to strike down restriction on handgun purchases by 18- to 20-year-olds from licensed dealers on the ground that the restriction did not completely prevent such persons from accessing handguns).[8]

Finally, Defendants' opening brief explained that the Corps regulation does not impose novel restrictions; rather, it is similar to other federal statutes and regulations that restrict the carrying of firearms on government property.  See Def. MSJ at 23-24 & n.11.  Plaintiffs' response fails to distinguish the Corps regulation from these statutes and regulations, including 18 U.S.C. §§ 930(a) and (d)(3), which prohibit most persons from possessing a "firearm or other dangerous weapon in a Federal facility," except for "lawful carrying of firearms or other dangerous weapons . . . incident to hunting or other lawful purposes."  Moreover, by truncating a quotation from United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011), which upheld a National Park Service firearms regulation prohibiting firearms possession in motor vehicles, Plaintiffs convey a mistaken impression about the Fourth Circuit's ruling in that case.  See Pl. Opp. at 11, 12.  Plaintiff's truncated quotation shows that the Fourth Circuit considered that regulation to have "le[ft] largely intact the right to 'possess and carry weapons in case of confrontation,'" but the full sentence clarifies the Court's basis for this conclusion: "By permitting park patrons to carry unloaded firearms within their

---

[8] Additionally, and contrary to Plaintiffs' assertion, upholding the Corps regulation does not depend on any argument "rejected in Heller and McDonald[ v. City of Chicago, 130 S. Ct. 3020 (2010)]."  Pl. Opp. at 11.  Initially, the District of Columbia and City of Chicago enacted the laws at issue in those cases in their regulatory capacities, not in their capacities as proprietors of land they owned and managed.  Also, both laws "banned the possession of handguns in the home." McDonald, 130 S. Ct. at 3026.  Because the Corps regulation does not regulate possession of firearms in Plaintiffs' homes, finding the regulation consistent with the Second Amendment does not depend on accepting any argument rejected in Heller or McDonald.

vehicles, [the regulation] leaves largely intact the right to 'possess and carry weapons in case of confrontation.'" 638 F.3d at 474 (quoting <u>Heller</u>, 554 U.S. at 592). Because the Corps regulation similarly permits visitors to Corps lands to carry unloaded firearms, the Park Service regulation upheld in <u>Masciandaro</u> is not distinguishable on this basis. <u>See id.</u> ("While it is true that the need to load a firearm impinges on the need for armed self-defense, intermediate scrutiny does not require that a regulation be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question.") (citation omitted).

In sum, the Corps has presented evidence of incidents of verbal abuse, physical threats, and assaults directed at Rangers from visitors to their recreational facilities. Based on this evidence, and the fact that Rangers are not authorized to carry weapons, the Corps has reasonably determined that permitting visitors to possess loaded firearms on its facilities would create a chilling effect on the Corps' ability to preserve public safety by enforcing its regulations for the safe use of those facilities. All of this information demonstrates a reasonable fit between the Corps' firearms regulation and its important interests in protecting visitors from violent crime and promoting public safety on land it owns. The regulation thus satisfies heightened scrutiny.

## III.    Plaintiffs Have Failed to Demonstrate That Any Permanent Relief Should Apply Beyond the Two Named Plaintiffs.

Finally, even if the Court were to disagree with the Corps' merits arguments, any relief awarded should apply no more broadly than necessary – that is, to the individual plaintiffs actually before the Court. <u>See</u> Def. MSJ at 25-26; <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1140 (9th Cir. 2009) ("The district court abused its discretion in enjoining the rules themselves as opposed to enjoining their enforcement as to the plaintiffs before him . . .").[9]

---

[9] The Corps has construed the preliminary injunction in this case as not imposing a nationwide injunction. <u>See</u> <u>Zepeda v. INS</u>, 753 F.2d 719, 727-30 & n.1 (9th Cir. 1984) (holding that, in the

"[A] trial court abuses its discretion by fashioning an injunction which is overly broad." Los Angeles Haven Hospice v. Sebelius, 638 F.3d 644, 654 (9th Cir. 2011) (quoting United States v. AMC Entm't, 549 F.3d 760, 768 (9th Cir. 2008)). The Supreme Court "has cautioned that 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs' before the court." Id. at 664 (quoting Califano v. Yamasaki, 442 U.S. 682, 702 (1979)). And "[t]his rule applies with special force where," as here, "there is no class certification." Id.; see also Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1501 (9th Cir. 1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification.").

Particularly relevant here is Meinhold v. U.S. Dep't of Defense, 34 F.3d 1469 (9th Cir. 1994), a single-plaintiff action in which a district court found that that a U.S. Navy regulation violated equal protection, and entered a nationwide injunction prohibiting the Navy from applying the regulation to all military personnel. Id. at 1472, 1473. In vacating the injunction except as to the plaintiff, the Ninth Circuit explained: "The Navy argues that even if the district court did not err on the constitutional issue, its nation-wide injunction cannot stand. We agree." Id. at 1480 (footnote omitted). Here, as in Meinhold, because "[t]his is not a class action," and "[e]ffective relief can be obtained by directing the [Corps] not to apply its regulation" to the two named plaintiffs, id., entry of a nationwide injunction would constitute an abuse of discretion.

Moreover, "[t]he Supreme Court has . . . suggested that nationwide injunctive relief may be inappropriate where a regulatory challenge involves important or difficult questions of law, which

---

absence of class certification, preliminary injunctive relief may cover only the named plaintiffs). During the pendency of the litigation, however, in addition to refraining from applying the regulation to the plaintiffs in this case, the Corps has not applied the challenged regulation to other individuals within the State of Idaho. The Corps informed Plaintiffs' counsel of this interpretation prior to the February 19, 2014 telephonic status conference in this case.

might benefit from development in different factual contexts and in multiple decisions by the various courts of appeals." <u>Los Angeles Haven Hospice</u>, 638 F.3d at 664. This case involves an important question of law that would benefit from development in factual contexts distinct from the one here, because the only Corps lands Plaintiffs have alleged they plan to use are in Idaho. <u>See</u> Compl. ¶¶ 29, 36, 39. Moreover, another suit challenging the constitutionality of the Corps regulation has been filed in the Northern District of Georgia. <u>See</u> <u>GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers</u>, No. 4:14-cv-139 (N.D. Ga.). The district judge in that case might ultimately agree with the arguments of the plaintiffs or the Corps. But issuing a nationwide injunction here would effectively prevent that court from making any independent assessment about the constitutionality of the Corps regulation. <u>See</u> <u>United States v. Mendoza</u>, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari."); <u>Va. Soc'y for Human Life v. Fed. Election Comm'n</u>, 263 F.3d 379, 393 (4th Cir. 2001) (nationwide injunction was an abuse of discretion where it was broader than necessary to afford relief to the plaintiff, and would "'thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue'") (quoting <u>Mendoza</u>, 464 U.S. at 160).

Plaintiffs' contrary arguments are not persuasive. Though the Court has "considerable discretion in fashioning suitable relief," nevertheless, "injunctive relief . . . must be tailored to remedy the specific harm alleged." <u>Lamb-Weston, Inc. v. McCain Foods Ltd.</u>, 941 F.2d 970, 974 (9th Cir. 1991) (citations omitted); <u>see</u> <u>also</u> <u>Bresgal v. Block</u>, 843 F.2d 1163, 1170 (9th Cir. 1988) ("Where relief *can* be structured on an individual basis, it *must* be narrowly tailored to remedy the specific harm shown.") (citation omitted) (emphasis added). "An [overbroad] injunction is an abuse of discretion." <u>Lamb-Weston</u>, 941 F.2d at 974 (citation omitted). Because the specific harm alleged

here is harm to two individual plaintiffs, and relief can be limited to applying only to them, any remedy extending beyond Plaintiffs themselves would be overbroad. And though a worldwide preliminary injunction might be appropriate in a trade-secrets case involving companies who sell to foreign markets, see id. at 972, 973-74, this case involves none of the circumstances that may have justified such broad relief in Lamb-Weston.

Additionally, the mere fact that this case was brought under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), does not, in and of itself, justify nationwide injunctive relief. Were that the rule, then any party prevailing in any APA case would be automatically entitled to a nationwide injunction. A case Plaintiffs cite for a contrary position, Earth Island Institute v. Ruthenbeck, 490 F.3d 687 (9th Cir. 2007), should not be given any precedential value because the issuance of the injunction in that case was *reversed* (albeit on the alternative grounds that the plaintiffs lacked standing). See Summers v. Earth Island Inst., 555 U.S. 488 (2009). Nor was the reasoning in that reversed decision persuasive. The APA provides that "[t]he reviewing court shall … (2) hold unlawful and set aside agency action … found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. In construing that language to require a nationwide injunction against enforcement of certain regulations, the Ruthenbeck court tacitly (and incorrectly) assumed that the relevant "agency action[s]" to be "h[e]ld unlawful" and "set aside" were the regulations themselves. But the term "agency action" in 5 U.S.C. § 706 refers back to 5 U.S.C. § 704, which authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." Where (as here) no special statutory provision "permit[s] broad regulations to serve as the 'agency action,' and thus to be the object of judicial review directly," Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 891 (1990), the final agency action that is the proper subject of judicial review (and the proper subject of

any injunction) is the agency's application of the regulation to the plaintiffs who have brought suit, not the regulation itself. Thus, if the Court were to find the Corps regulation to be unlawful as applied to Plaintiffs, the proper relief is for the Court to hold that application unlawful (i.e., to "hold unlawful" the reviewable "agency action"), not to go beyond the confines of the case and invalidate the regulation in all of its potential applications to other persons not before the Court.

Indeed, the APA's very reference to actions seeking "declaratory judgments," 5 U.S.C. § 703, makes clear that no injunction – much less a nationwide injunction – is in any sense compelled by the APA when agency action is held unlawful. Rather, equitable relief must be tailored to the particular final agency action and parties before the court and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Yamasaki, 442 U.S. at 702; cf. Gonzales v. Carhart, 550 U.S. 124, 168 (2007) ("As-applied challenges are the basic building blocks of constitutional adjudication.").

Finally, Plaintiffs are incorrect that enjoining the Corps' regulation's application as to "law-abiding individuals" presents any real limiting principle. Persons convicted of serious crimes are already barred from possessing firearms under 18 U.S.C. § 922(g)(1). Thus, even if the Court were to disagree with the Corps, the only appropriate relief would be to prevent the Corps from applying its regulation to the two plaintiffs in this case.

## CONCLUSION

Because the Corps regulation does not preclude conduct that is protected by the Second Amendment, and would pass constitutional muster in any event, the Court should enter summary judgment for Defendants. Moreover, even if the Court were to disagree, any relief awarded should extend no further than necessary to provide full relief only to the two named plaintiffs.

Dated: July 25, 2014                              Respectfully submitted,


STUART F. DELERY
Assistant Attorney General

WENDY J. OLSON
United States Attorney

JOANNE RODRIGUEZ
Assistant United States Attorney

  /s/ Daniel Riess
DIANE KELLEHER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 25th day of July 2014, I filed the foregoing Reply Supporting Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion for Summary Judgment electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James M. Manley, Attorney for Plaintiffs
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
jmanley@mountainstateslegal.com

Steven J. Lechner, Attorney for Plaintiffs
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
lechner@mountainstateslegal.com

John L. Runft, Attorney for Plaintiffs
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
jrunft@runftsteele.com


 /s/ Daniel Riess
Daniel Riess, Attorney for Defendants