James M. Manley, Esq. (CO No. 40327)
(*admitted pro hac vice*)
Steven J. Lechner, Esq. (CO No. 19853)
*(admitted pro hac vice)*
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com
lechner@mountainstateslegal.com

John L. Runft, Esq. (ISB No. 1059)
Runft and Steele Law Offices, PLLC
1020 West Main Street, Suite 400
Boise, Idaho 83702
(208) 333-8506
(208) 343-3246 (facsimile)
jrunft@runftsteele.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS and ALAN C. BAKER, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. ARMY CORPS OF ENGINEERS, *et al.*, <br><br> Defendants. | Case No. 3:13-CV-00336-BLW <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | THE CORPS FIREARMS BAN BURDENS SECOND AMENDMENT RIGHTS | 1 |
| | A. Defendants Admit That Millions Of Acres Of Corps-Managed Lands Cannot Be Sensitive | 1 |
| | B. The Corps Ban Conflicts With *Heller* | 2 |
| II. | THE CORPS BAN IS SUBJECT TO HEIGHTENED SCRUTINY | 3 |
| | A. A Ban On Constitutionally Protected Activity Is Subject To Exacting Review | 3 |
| | B. Defendants' Argument For Forum Analysis Is Fatally Incomplete | 5 |
| III. | THE CORPS BAN FAILS UNDER HEIGHTENED SCRUTINY | 8 |
| IV. | DEFENDANTS CANNOT BE ALLOWED TO ENFORCE AN UNCONSTITUTIONAL REGULATION | 10 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adderley v. Florida*,
    385 U.S. 39 (1966) ............................................................................................... 6, 7

*Boardley v. U.S. Dept. of Interior*,
    615 F.3d 508 (D.C. Cir. 2010) ............................................................................. 4, 6–8, 10

*The Cape Hatteras Access Preservation Alliance v. U.S. Dept. of Interior*,
    667 F. Supp. 2d 111 (D.D.C. 2009) ..................................................................... 9

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................................................. 1–4

*Doe v. Wilmington Housing Authority*,
    880 F. Supp. 2d 513 (D. Del. 2012) ..................................................................... 4

*Doe v. Wilmington Housing Authority*,
    2014 WL 2547754 (4th Cir. 2014) ....................................................................... 4

*Earth Island Institute v. Ruthenbeck*,
    490 F.3d 687 (9th Cir. 2007) ............................................................................... 10

*Engquist v. Oregon Dept. of Agr.*,
    553 U.S. 591 (2008) ............................................................................................. 5

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ............................................................................... 5, 9

*Frisby v. Schultz*,
    487 U.S. 474 (1988) ............................................................................................. 4

*GeorgiaCarry.Org, Inc. v. Georgia*,
    764 F. Supp. 2d 1306 (M.D. Ga. 2011) ............................................................... 4

*GeorgiaCarry.Org, Inc. v. Georgia*,
    687 F.3d 1244 (11th Cir. 2012) ........................................................................... 5

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*,
    2014 WL 4059375 (N.D.Ga. 2014) ..................................................................... 3, 8

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ........................................................................... 8

*Hightower v. City of Boston*,
    693 F.3d 61 (1st Cir. 2012) ................................................................... 7

*Initiative and Referendum Institute v. U.S. Postal Service*,
    417 F.3d 1299 (D.C. Cir. 2005) ............................................................. 7

*Kyllo v. United States*,
    533 U.S. 27 (2001) ................................................................................ 2

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .............................................................................. 10

*Minnesota v. Olson*,
    495 U.S. 91 (1990) ................................................................................ 2

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012) ................................................................. 3, 9

*Morris v. U.S. Army Corps of Engineers*,
    990 F. Supp. 2d 1082 (D. Idaho 2014) ................................................. 4

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ................................................................................ 6

*Peruta v. County of San Diego*,
    742 F.3d 1144 (9th Cir. 2014) ............................................................... 3

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) .............................................................................. 10

*United States v. Apel*,
    134 S. Ct. 1144 (2014) .......................................................................... 8

*United States v. Booker*,
    644 F.3d 12 (1st Cir. 2011) ................................................................... 1–2

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ............................................................... 1–3, 5, 8

*United States v. Dorosan*,
    350 Fed. Appx. 874 (5th Cir. 2009) ...................................................... 5

*United States v. Gooch*,
    6 F.3d 673 (9th Cir. 1993) ..................................................................... 3

*United States v. Grace*,
    461 U.S. 171 (1983) .................................................................................. 8

*United States v. Kokinda*,
    497 U.S. 720 (1990) .................................................................................. 5–7

*United States v. Masciandaro*,
    638 F.3d 458 (4th Cir. 2011) .................................................................... 4

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) .................................................................... 10

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) .................................................................................. 4

*Warden v. Nickels*,
    697 F. Supp. 2d 1221 (W.D. Wash. 2010) .............................................. 5

**Constitutional Provisions**

U.S. Const. amend. I .......................................................................................... 2, 5–7

U.S. Const. amend. II ......................................................................................... passim

U.S. Const. amend. IV ........................................................................................ 2, 3

**Statutes**

16 U.S.C. § 1a-7b ................................................................................................ 8

16 U.S.C. § 460d ................................................................................................. 8

Idaho Admin. Code § 26.01.20.600 ................................................................... 8

**Rules**

5TH CIR. R. 47.5.4 ............................................................................................. 5

**Regulations**

36 C.F.R. § 327.13 .............................................................................................. 1, 4

36 C.F.R. § 327.25 .............................................................................................. 10

**Federal Register**

30 Fed. Reg. 4610 (Apr. 9, 1965) ................................................................... 4

38 Fed. Reg. 7552 (Mar. 23, 1973) ............................................................... 4

44 Fed. Reg. 12,671 (Mar. 8, 1979) ............................................................... 4

Plaintiffs respectfully reply to Defendants' Opposition To Plaintiffs' Cross-Motion For Summary Judgment (Dkt. 59).

I.  **THE CORPS FIREARMS BAN BURDENS SECOND AMENDMENT RIGHTS.**

The Army Corps of Engineers bans firearms and ammunition possessed for self-defense on all 12 million acres of public lands that it manages. 36 C.F.R. § 327.13. Defendants' only argument that the Second Amendment is not implicated by the ban is that all this land is sensitive. Dkt. 59 at 1. Setting this argument aside—as this Court already has—there is no dispute that the Corps ban burdens Second Amendment rights. *Id*. at 2. The ban conflicts with the central insight of *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008): "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation."

   A.  **Defendants Admit That Millions Of Acres Of Corps-Managed Lands Cannot Be Sensitive.**

Defendants do not raise any new arguments in support of their sweeping sensitive places theory, nor do they respond to any arguments raised by Plaintiffs in support of their Cross-Motion For Summary Judgment. *See* Dkt. 59 at 1. Defendants admit that "Corps regulations allow for the carry and use of firearms and other weapons for hunting on a substantial portion of Corps project lands and waters, totaling millions of acres." Dkt. 52-1 at 3. That admission alone defeats Defendants' argument that Corps-managed public lands are a sensitive place.

Moreover, Defendants continue to ignore the Ninth Circuit's ruling that even if a regulation "'appears consistent with *Heller*'s reference to certain presumptively lawful regulatory measures,'" it must be justified "'by some form of 'strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective.'" *United States v. Chovan*, 735 F.3d 1127, 1135–36 (9th Cir. 2013*)* (quoting *United States v.*

*Booker*, 644 F.3d 12, 25 (1st Cir. 2011)). The *Heller* sensitive places dicta does not mention Corps-managed lands, nor recreational property. 554 U.S. at 626, 627 n.26. Even if the Corps ban "appears consistent" with the *Heller* dicta, Defendants still must make a "strong showing" of a "substantial relationship" between preventing crime and banning armed self-defense. *Chovan*, 735 F.3d at 1135–36.

### B. The Corps Ban Conflicts With *Heller*.

The central holding of *Heller* concerns the constitutionality of possessing functional firearms in a dwelling for self-defense. 554 U.S. at 628–29. *Heller* also recognizes that the right to carry is inherent in the Second Amendment. *Id*. at 584–86, 592; Dkt. 54-1 at 3–7.

Defendants take issue with Plaintiffs' claim that the Corps ban on guns in tents conflicts with *Heller*'s unequivocal rejection of a ban on firearms in the home. Dkt. 59 at 6–11. Defendants' disagreement is with the Supreme Court, not Plaintiffs. *Heller* itself suggests the analogy between the Fourth and Second Amendments that supports this claim. "The centerpiece of the Court's textual argument" is the overlap between the First, Second, and Fourth Amendments. 554 U.S. at 644 (Stevens, J., dissenting). The Court found that the source of these rights is the same and they apply to our modern world in similar ways. *Id*. at 582, 592.

The logical overlap between the Second and Fourth Amendments is also compelling, since security and privacy are similar interests: "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quotation omitted); *Heller*, 554 U.S. at 635. This freedom from intrusion exists whether or not someone retreats to his "own home," or a temporary dwelling on another's property. *Minnesota v. Olson*, 495 U.S. 91, 99 (1990) ("From the overnight guest's perspective, he seeks shelter in another's home

precisely because it provides him with privacy . . . ."); *United States v. Gooch*, 6 F.3d 673, 677–78 (9th Cir. 1993) ("[T]ents are protected under the Fourth Amendment like a more permanent structure . . . .); *contra GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 2014 WL 4059375, *6 n.6 (N.D.Ga. 2014). Defendants' unsupported assertion that the occupant of a tent on public lands has no right to exclude others is antithetical to these precedents. *See* Dkt. 59 at 11. Because a tent is a dwelling for constitutional purposes, the Corps ban conflicts with the central holding of *Heller*. Moreover, because the Corps ban is a "near-total prohibition on bearing" arms in public for self-defense, it conflicts with *Heller*'s description of the right to carry. 554 U.S. at 592; *Peruta v. County of San Diego*, 742 F.3d 1144, 1170 (9th Cir. 2014).

## II. THE CORPS BAN IS SUBJECT TO HEIGHTENED SCRUTINY.

### A. A Ban On Constitutionally Protected Activity Is Subject To Exacting Review.

The Corps prohibits all ordinary, law-abiding individuals from possessing functional firearms for self-defense. This is the sort of untailored ban rejected in *Peruta*, 742 F.3d at 1170, and *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), except that it applies to less property. But application of the Constitution does not depend on how many square miles are at issue and, as discussed below, nor does it matter that the public lands at issue are owned by the federal government. The Corps ban renders "the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense" a nullity on Corps lands. *Chovan*, 735 F.3d at 1138. Because the ban "implicate[s] the core Second Amendment right, [and] place[s] a substantial burden on the right . . . strict scrutiny is the proper standard to apply." *Id*. Moreover, a "near-total prohibition on bearing" arms is per se unconstitutional. *Peruta*, 742 F.3d at 1170.

At the very least, intermediate scrutiny applies here, which requires the Corps ban "not 'burden substantially more [conduct] than is necessary' to achieve the government's substantial

3

interests." *Boardley v. U.S. Dept. of Interior*, 615 F.3d 508, 519 (D.C. Cir. 2010) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) and citing *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)). *Boardley*'s application of intermediate scrutiny is especially useful here, since that case dealt with similar federal lands; although, the speech regulation struck down there was significantly more limited than the firearms ban here. *Id*.

Defendants tacitly concede that the intermediate scrutiny analysis in *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011), leads to the conclusion that the Corps ban is unconstitutional. *See* Dkt. 59 at 15–16. Their only response to *Masciandaro* is to suggest that the Corps ban is the same as the NPS regulation, but this is obviously false. *See id*. at 16. While the NPS regulation allowed park patrons to load firearms to use for self-defense, the Corps regulation bans both loaded firearms and ammunition. 36 C.F.R. § 327.13. The Corps ban may allow possession of unloaded firearms *without* ammunition, Dkt. 59 at 16, but "[a]n unloaded firearm is useless for self-defense purposes without its ammunition." *Morris v. U.S. Army Corps of Engineers*, 990 F. Supp. 2d 1082, 1086 (D. Idaho 2014).[1]

Perhaps because Defendants evade the real scope of the Corps ban, they rely on a number of cases and regulations that address much narrower restrictions. *See* Dkt. 59 at 7–8. For that reason alone, these authorities do not help Defendants. *See Doe v. Wilmington Housing Authority*, 880 F. Supp. 2d 513, 534 (D. Del. 2012), *rev'd in part*, 2014 WL 2547754 (4th Cir. 2014) (regulation "expressly permits some use of firearms for self-defense in the common areas . . ."); *GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1320 (M.D. Ga. 2011), *aff'd*,

---

[1] As originally promulgated in 1965, 30 Fed. Reg. 4610, 4611 (Apr. 9, 1965) (AR0002451), and amended in 1973, 38 Fed. Reg. 7552, 7553 (Mar. 23, 1973) (AR0002436), the regulation did not prohibit ammunition, thus it was still physically possible to load a firearm for self-defense. Not until 1979 did the Corps totally prohibit armed self-defense by banning both loaded firearms and ammunition. 44 Fed. Reg. 12,671, 12,674 (Mar. 8, 1979) (AR0001402). Obviously, none of these regulations took into account the Second Amendment rights defined by *Heller* in 2008.

687 F.3d 1244 (11th Cir. 2012) ("[T]he statute would allow [the plaintiff] to keep a firearm in his office if he obtained permission from security or management personnel of the Tabernacle and kept it secured or stored as directed."); *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1227 (W.D. Wash. 2010) ("Defendants narrowly tailored the Park Rule to include only those public parks and community centers where children and youth predominantly recreate."). The Corps ban is also broader than other regulations of firearms on federal property, which allow law-abiding citizens to possess firearms in some capacity. *See* Dkt. 52-1 at 23–24 (listing examples of regulations that do not prohibit storage of a firearm or ammunition).

"[J]ust as in the First Amendment context, the level of scrutiny in the Second Amendment context should depend on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Chovan*, 735 F.3d at 1138 (quotation omitted). Here, the Corps ban places "a severe burden on the core Second Amendment right of armed self-defense [and] will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011). Defendants have offered no such justification.

**B.      Defendants' Argument for Forum Analysis Is Fatally Incomplete.**

Defendants again rely on *United States v. Kokinda*, 497 U.S. 720, 725 (1990), for the proposition that the Corps ban is subject only to reasonableness review.[2] Dkt. 59 at 2; Dkt. 30-1 at 10–13. Defendants are advocating application of First Amendment public forum analysis;

---

[2] Defendants also cite *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008), but that case involves the government's authority over its own employees. In contrast to the regulatory authority at issue here, the Supreme Court has "often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Id.* at 599. Defendants' reliance on *Engquist* is severely misplaced. Also, the terse, per curium decision in *United States v. Dorosan*, 350 Fed. Appx. 874 (5th Cir. 2009), is of no precedential value, even in the Fifth Circuit. *See* 5TH CIR. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent . . . .").

5

although they never come right out and say it. Nor do they explain how forum analysis would work here. It is not that forum analysis can have no application to self-defense. Rather, there are problems with adapting that doctrine to self-defense that Defendants do not address, much less explain. *See* Dkt. 33 at 10–12; Dkt. 21 at 18–20. Defendants' error is compounded because they do not even apply *Kokinda*.[3]

Defendants ignore the most important part of the *Kokinda* analysis—the first step when analyzing speech restrictions on government property—which requires deciding if government property has been dedicated to First Amendment activity. 497 U.S. at 726–27. Defendants' chosen "reasonableness" test only applies if this first inquiry leads to the conclusion that the property is a nonpublic forum. *Id*. Without addressing this initial question, Defendants have no basis to jump ahead and assume that reasonableness review applies.

Nor do Defendants suggest how this inquiry should proceed here, because no government property is dedicated to self-defense. *Cf. Adderley v. Florida*, 385 U.S. 39, 48 (1966); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). At the very least, Corps-managed lands open to hunting and target shooting—and other lands where weapons are already lawfully possessed incident to those activities—are the Second Amendment equivalent of the sort of public lands where heightened scrutiny applies. *See Boardley*, 615 F.3d at 515–16 ("[A]t least with respect to these 'free speech areas,' the NPS regulations must be analyzed as restrictions on speech in public forums . . . ."). Even if this Court were to embark into the uncharted territory of Second Amendment forum analysis, heightened scrutiny would apply here.

---

[3] Defendants rely on the plurality opinion in *Kokinda*, Dkt. 59 at 2–4, but Justice Kennedy provided the critical fifth vote, applying intermediate scrutiny to uphold a narrowly-tailored time, place, and manner regulation. 497 U.S. at 738–39 (Kennedy, J., concurring).

After skipping the first step in the *Kokinda* analysis, Defendants next fail to explain how the Corps ban addresses conduct that is "unquestionably . . . disruptive." *Kokinda*, 497 U.S. at 733. There is no evidence that a ban on law-abiding citizens carrying firearms for self-defense is reasonably necessary to prevent disruption. *Cf. id*. at 732 ("[S]olicitation is inherently disruptive of the Postal Service's business."). Plaintiffs desire only to possess a firearm for self-defense. Dkt. 54-2 ¶¶ 23, 34. Their preference would be to carry their firearms concealed, further diminishing any chance that the exercise of the right to carry would cause any disruption. *Id*. ¶¶ 19, 33. This is not remotely like a protest on "a driveway used only for jail purposes," *Adderley*, 385 U.S. at 41, or soliciting in-person donations, *Kokinda*, 497 U.S. at 733–34, or even collecting signatures on petitions, *Initiative and Referendum Institute v. U.S. Postal Service*, 417 F.3d 1299, 1315 (D.C. Cir. 2005). Defendants provide no basis—and none exists—for equating the Corps ban with the sorts of regulations that have been upheld under forum analysis. *Cf. Kokinda*, 497 U.S. at 738–39 (Kennedy, J., concurring) ("The regulation . . . expressly permits the respondents . . . to engage in political speech on topics of their choice and to distribute literature soliciting support, including money contributions, provided there is no in-person solicitation for payments on the premises."). The Corps ban is not focused on preventing disruption and thereby preserving Corps-managed lands for the purposes to which they are dedicated; rather, the ban targets all firearms possessed for self-defense indiscriminately and without empirical foundation. That narrower speech regulations have been struck down under forum analysis further supports the claim that the Corps ban violates the Constitution. *Initiative and Referendum Institute*, 417 F.3d at 1315; *Boardley*, 615 F.3d at 519.[4]

---

[4] Because this case involves an as-applied challenge, the permissive First Amendment standing rule rejected in *Hightower v. City of Boston*, 693 F.3d 61, 82 (1st Cir. 2012), is of no moment. *Contra* Dkt. 59 at 4.

Switching tactics, Defendants also argue that Corps-managed lands should be treated like private property, drawing an analogy between private campgrounds and Corps recreational lands. Dkt. 59 at 9. Left unaddressed, however, is the more obvious analogy between Corps lands and Idaho State Parks or National Parks; in the latter category, the sort of ban imposed by the Corps has been prohibited. Idaho Admin. Code § 26.01.20.600; 16 U.S.C. § 1a-7b.

The Corps may not have to open public lands to recreation when such use would be "contrary to the public interest." 16 U.S.C. § 460d. But when it does open public lands, its regulations are constrained by the Constitution. *See United States v. Apel*, 134 S. Ct. 1144, 1154–55 (2014) (Ginsburg, J., concurring) ("When the Government permits the public onto part of its property, in either a traditional or designated public forum, its 'ability to permissibly restrict expressive conduct is very limited.'") (quoting *United States v. Grace*, 461 U.S. 171, 177 (1983)). It matters not that the Secretary of the Army supervises Corps recreational lands. *See Apel*, 134 S. Ct. at 1154–55; *but see GeorgiaCarry.Org*, 2014 WL 4059375 at *9.

## III. THE CORPS BAN FAILS UNDER HEIGHTENED SCRUTINY.

In order to survive even intermediate scrutiny, Defendants must prove that there is a reasonable fit between the challenged regulation and their asserted objective. *Chovan*, 735 F.3d at 1138. This fit is reasonable if the ban does "not burden substantially more [conduct] than is necessary to achieve the government's substantial interests." *Boardley*, 615 F.3d at 519 (quotation omitted); *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) ("[Defendants] must establish a tight 'fit' . . . .").

The dispute here centers on that "tight fit," but Defendants only argue that the fit between crime prevention and banning firearms can be appropriate because "of the constraints under which the Corps operates," i.e., the fact that Corps park rangers are not full-fledged law

8

enforcement officers. Dkt. 59 at 13. If the status of park rangers is the problem, the solution is to change their status, not to curtail constitutional rights. But there is no evidence that park rangers' limited authority is a problem or is incompatible with the Second Amendment.

Defendants' citation to outdated surveys about park rangers' self-reported interactions are irrelevant, because there is no evidence to support the supposition that law-abiding individuals carrying firearms for self-defense would have had any negative impact on these interactions. To the contrary, firearms are allowed on Corps lands incident to hunting and target shooting, but Defendants point to no evidence that those firearms have chilled enforcement of Corps regulations. Nor have Defendants offered any reason why firearms possessed for self-defense would be any different, or why more narrowly tailored regulatory measures could not address their concerns. *See Ezell*, 651 F.3d at 710. In fact, studies show that firearms carried for self-defense reduce crime. *Moore*, 702 F.3d at 938–39 ("In sum, the empirical literature on the effects of allowing the carriage of guns in public fails to establish a pragmatic defense of the Illinois law."). Defendants are correct that the Corps ban does not rest on *mere* speculation; it rests on speculation that contradicts experience.

Defendants attempt to bolster their initial reliance on decade-old surveys by pointing to other surveys that have not been disclosed, are not included in the administrative record, and did not inform the regulatory policy at issue here. Dkt. 59 at 13 n.6. Even if we knew what the surveys contained, they would nevertheless be irrelevant. *See The Cape Hatteras Access Preservation Alliance v. U.S. Dept. of Interior*, 667 F. Supp. 2d 111, 114–15 (D.D.C. 2009) ("Going beyond the administrative record presented by the deciding agency when reviewing its action is only done in exceptional cases."). But Defendants do not even argue that these newer surveys contain any information about law-abiding individuals using firearms for self-defense.

Defendants' reference to *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010), to justify their categorical ban on firearms possessed by law-abiding individuals is confusing. Dkt. 59 at 14. The category at issue in *Skoien* was domestic violence misdemeanants, a group of "people who have been convicted of violence once—toward a spouse, child, or domestic partner, no less—[and] are likely to use violence again." *Skoien*, 614 F.3d at 642. How the categorical limitation on convicted criminals upheld in *Skoien* has any relevance to the Corps' categorical ban on law-abiding individuals is left unsaid. There is simply no support for the notion that the government can ban all firearms possessed for self-defense in order to prevent criminal misuse of firearms; the Corps ban "target[s] much more than necessary." *Boardley*, 615 F.3d at 523.

## IV. DEFENDANTS CANNOT BE ALLOWED TO ENFORCE AN UNCONSTITUTIONAL REGULATION.

Defendants' position is that the preliminary injunction applies throughout Idaho. Dkt. 59 at 16–17 n.9. At a minimum, that position should lead to a permanent injunction preventing Defendants "from applying the regulation to the plaintiffs in this case" and "other individuals within the State of Idaho." *Id*. Nevertheless, broader relief is appropriate. *See Earth Island Institute v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007), *aff'd in part, rev'd in part on other grounds*, *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). Defendants argue that the Corps ban cannot be challenged directly, Dkt. 59 at 19–20, but they ignore that "[t]he major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). A regulation that exposes law-abiding individuals to fine, imprisonment, or both, 36 C.F.R. § 327.25, for exercising their constitutional rights is final action that requires decisive invalidation.

As the foregoing demonstrates, Plaintiffs are entitled to summary judgment and the requested declaratory and injunctive relief.

DATED this 21st day of August 2014.

        Respectfully submitted,

        /s/ James M. Manley
        James M. Manley, Esq. (CO No. 40327)
        (*admitted pro hac vice*)
        Steven J. Lechner, Esq. (CO No. 19853)
        *(admitted pro hac vice)*
        Mountain States Legal Foundation
        2596 South Lewis Way
        Lakewood, Colorado 80227
        (303) 292-2021
        (303) 292-1980 (facsimile)
        jmanley@mountainstateslegal.com
        lechner@mountainstateslegal.com

        John L. Runft, Esq. (ISB No. 1059)
        Runft and Steele Law Offices, PLLC
        1020 West Main Street, Suite 400
        Boise, Idaho 83702
        (208) 333-8506
        (208) 343-3246 (facsimile)
        jrunft@runftsteele.com

        Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on the 21st day of August, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Joanne P. Rodriguez  
Assistant United States Attorney  
District Of Idaho  
Washington Group Plaza IV  
800 East Park Boulevard, Suite 600  
Boise, ID 83712-7788  
Joanne.Rodriguez@usdoj.gov

Daniel Riess  
Trial Attorney  
U.S. Department of Justice Civil Division, Rm. 6122  
20 Massachusetts Avenue, NW  
Washington, D.C. 20530  
Daniel.Riess@usdoj.gov

                                        /s/ James M. Manley  
                                        James M. Manley, Esq.